1  Kenneth Baum (CA Bar No. 250719)
2  GOLDMAN ISMAIL TOMASELLI
   BRENNAN & BAUM LLP
3  429 Santa Monica Boulevard, Suite 710
   Santa Monica, CA 90401
4  Tel: (310) 576-6900
   Fax: (310) 382-9974
5  kbaum@goldmanismail.com

6  *Attorneys for Defendant Apple Inc.*
7  [Additional counsel listed on following page]

8              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
9               **SAN FRANCISCO DIVISION**

10 UNILOC USA, INC., et al.,            **Case Nos.  3:18-cv-00359-WHA;**
                                                   **3:18-cv-00360-WHA;**
11            Plaintiffs,                          **3:18-cv-00363-WHA;**
                                                   **3:18-cv-00365-WHA;**
12       v.                                        **3:18-cv-00572-WHA**

13 APPLE INC.,
                                       **DEFENDANT APPLE INC.'S NOTICE OF**
14            Defendant.                **MOTION AND MOTION TO STRIKE**
                                       **PLAINTIFFS UNILOC USA, INC. AND UNILOC**
15                                     **LUXEMBOURG, S.A.'S INFRINGEMENT**
                                       **CONTENTIONS, AND FOR PARTIAL STAY OF**
16                                     **DISCOVERY AND PROTECTIVE ORDER**

17                                     DATE: Thursday, June 28, 2018
                                       TIME: 8:00 a.m.
18                                     COURTROOM: 12, 19th Floor
                                       JUDGE: Hon. William Alsup
19
20                                     [Accompanying Papers: Appendix A, Declaration of
                                       Doug Winnard and Exhibits, [Proposed] Order]
21

22

23

24

25

26

27

28

COUNSEL CONTINUED:

Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice*)
Jennifer Greenblatt (*pro hac vice*)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (*pro hac vice*)
Emma C. Neff, M.D., J.D. (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eneff@goldmanismail.com
labendshien@goldmanismail.com


*Additional Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................iii

NOTICE OF MOTION..........................................................................................................1

STATEMENT OF RELIEF REQUESTED...........................................................................1

I.      Introduction................................................................................................................1

II.     Background ................................................................................................................2

III.    Legal Standards..........................................................................................................3

IV.     Uniloc's Contentions for Each Claim of the '127, '134, and '158 Patents are
        Deficient.....................................................................................................................4

        A.      Uniloc Failed to Comply with Rule 3-1(c) for the '127 Patent ..................4

                1)      Uniloc Failed to Articulate Where and How Each Limitation of Claim
                        1 is Allegedly Found in the Accused Products ................................5

                2)      Uniloc's Allegations for the '127 Patent's Remaining Claims Are
                        Facially Deficient..........................................................................7

        B.      Uniloc Failed to Comply with Rule 3-1(c) for the '134 Patent ..................8

                1)      Uniloc Failed to Articulate Where and How Each Limitation of Claim
                        1 is Allegedly Found in the Accused Products ................................8

                2)      Uniloc's Allegations for the Remaining Claims of the '134 Patent are
                        Facially Deficient........................................................................10

        C.      Uniloc Failed to Comply with Rule 3-1(c) for the '158 Patent ................11

V.      Uniloc Failed to comply with Rule 3-1(c) for the '018, '422, and '671 Patents ..................13

        A.      Deficiencies in Uniloc's Disclosures for the '018 Patent .........................13

        B.      Deficiencies in Uniloc's Disclosures for the '422 Patent .........................15

        C.      Deficiencies in Uniloc's Disclosures for the '671 Patent .........................16

VI.     Uniloc failed to Comply with P.R. 3-1(B), (D), and (E) ....................................16

        A.      Uniloc Failed to Identify the Accused Instrumentalities with Specificity................16

        B.      Uniloc Failed to Describe the Acts that Contribute to or are Inducing Direct
                Infringement, as Required by P.R. 3-1(d)................................................18

C.      Uniloc Failed to State Whether and How Uniloc Alleges Infringement Under the Doctrine of Equivalents as Required by P.R. 3-1(e) .......................................... 18

VII.    Uniloc's Failure to Comply with Rule 3-1 Prejudices Apple ................................. 19

VIII.   Conclusion ....................................................................................................... 21

# TABLE OF AUTHORITIES

**CASES**

*Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*,
2017 WL 2630088 (N.D. Cal. June 19, 2017) ........................................................ 17, 18

*Finjan, Inc. v. Proofpoint, Inc.*,
2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) .............................................................. passim

*France Telecom, S.A. v. Marvell Semiconductor, Inc.*,
2013 WL 1878912 (N.D. Cal. May 3, 2013) ...................................................................... 18

*Geovector Corp. v. Samsung Elecs. Co.*,
2017 WL 76950 (N.D. Cal. Jan. 9, 2017) .............................................................. 1, 3, 12

*GN Resound A/S v. Callpod, Inc.*,
2013 WL 1190651 (N.D. Cal. Mar. 21, 2013) ...................................................... 3, 4, 20

*Implicit Networks Inc. v. Hewlett-Packard Co.*,
2011 WL 3954809 (N.D. Cal. Sept. 7, 2011) .................................................................... 20

*Infineon Techs. v. Volterra Semiconductor*,
2013 WL 322570 (N.D. Cal. Jan. 28, 2013) ...................................................................... 12

*Oracle Am., Inc. v. Google Inc.*,
2011 WL 4479305 (N.D. Cal. Sept. 26, 2011) ................................................................. 17

*Shared Memory Graphics LLC v. Apple Inc.*,
2011 WL 3878388 (N.D. Cal. Sept. 2, 2011) ................................................................ 4, 20

*Shared Memory Graphics LLC v. Apple, Inc.*,
812 F. Supp. 2d 1022 (N.D. Cal. 2010) .................................................... 4, 14, 15

*Silicon Labs. Inc. v. Cresta Tech. Corp.*,
2015 WL 846679 (N.D. Cal. Feb. 25, 2015) .................................................................... 17

*Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*,
2012 WL 1253178 (N.D. Cal. Apr. 13, 2012) .................................................................... 3

*Theranos, Inc. v. Fuisz Pharma LLC*,
2012 WL 6000798 (N.D. Cal. Nov. 30, 2012) ................................................................... 4

**RULES**

N.D. Cal. P.R. 3-1 .................................................................................... 3, 13, 18

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on Thursday, June 28, 2018, in Courtroom 12 of the United States District Court located at 450 Golden Gate Avenue, San Francisco, California, 94102, before the Honorable William Alsup, Defendant Apple Inc. ("Apple") will and hereby does respectfully move this Court for an order granting Apple's Motion to Strike Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A.'s (collectively, "Uniloc") Infringement Contentions, and For Partial Stay of Discovery and Protective Order. This Motion is supported by the following Memorandum of Points and Authorities and exhibits thereto.

# STATEMENT OF RELIEF REQUESTED

Through this motion, Apple requests an order granting the following relief:

- Uniloc's deficient infringement charts as to each asserted patent should be stricken without leave to amend. Claims that should be stricken with prejudice include in particular those claims asserted based on unfounded cross-references, as identified in Apple's Motion and the Exhibits attached thereto;

- Deposition discovery of Apple should be stayed and a protective order entered barring Uniloc from deposing Apple witnesses regarding U.S. Patent Nos. 6,161,134 ("the '134 Patent"); 6,446,127 ("the '127 Patent"); and 6,216,158 ("the '158 Patent") because Uniloc's Rule 3-1(c) disclosures are deficient as to every asserted claim;

- Uniloc's deficient disclosures pursuant to Rules 3-1(b), (d), and (e) should be stricken without leave to amend; and

- Apple's obligation to comply with Rules 3-3 and 3-4 for all patents should be stayed until 21 days after Uniloc complies with Rule 3-1 in full.

# I.    INTRODUCTION[1]

Patent Local Rule 3-1 establishes clear disclosure requirements for patentees' infringement contentions for good reason. Among other requirements, a patentee must specify "where and how" each limitation of each asserted claim is found in each accused instrumentality. These requirements exist "not only so that defendants can properly respond to the claims against them, but so that the Court can make a principled decision on whether discovery will proceed." *Geovector Corp. v. Samsung Elecs. Co.*, No. 16-CV-02463-WHO, 2017 WL 76950, at *5 (N.D. Cal. Jan. 9, 2017). Uniloc's Rule 3-1 contentions, however, consist almost entirely of boilerplate recitations of claim elements, unexplained screenshots or webpage excerpts, and irrelevant cross-references. These contentions fall so far short of Rule 3-1's requirements that the Court should strike them without leave to amend.

There is no excuse for Uniloc's failure to comply with Rule 3-1. These cases have been pending since the summer of 2017. Apple's products are widely available for Uniloc to acquire, test, and inspect. Apple even offered Uniloc the opportunity to review source code over three weeks before Uniloc's contentions were due. But Uniloc did not review the code, and instead opted to serve deficient contentions that disclosed no theory of infringement at all. Given that it had every opportunity to serve compliant disclosures, Uniloc's failure to do so justifies striking its contentions with prejudice. Uniloc's contentions, particularly those relying on unfounded cross-references, are not a plausible attempt to comply with the Court's Rules.

The Court's expedited "shootout" procedure exacerbates Uniloc's disregard for Rule 3-1. Apple has been diligently preparing for the process set forth by the Court to resolve the substantive issues in this lawsuit on the Court's expedited schedule. Unfortunately, Uniloc's failure to comply with the Local Rules creates an unnecessary roadblock for both Apple and the Court by failing to identify what Uniloc's infringement theories are and what issues are in play. Uniloc would gain an unfair advantage if it could force Apple to proceed with the "shootout" after failing to disclose the theories Apple would be "shooting" at. The prejudice to Apple is particularly acute for three of the

---

[1] Apple is concurrently filing an identical copy of this motion in each of the five related cases between Uniloc and Apple that are before this Court. There are no differences between the motions or the exhibits thereto.

1  six asserted patents—the '127, '134 and '158 Patents. For these patents, Uniloc's contentions are

2  facially deficient for every single asserted claim.

3       The law in this district is clear: compliant infringement contentions must precede discovery,

4  not *vice versa*. Here, Uniloc failed to crystallize and disclose its theories of infringement as the

5  local rules require. At the same time, however, Uniloc insists that Apple produce numerous

6  engineers for deposition. Uniloc cannot demand to proceed full bore with discovery on these three

7  patents, while simultaneously refusing to disclose how it alleges Apple's products infringe. Apple is

8  prepared to duel with Uniloc in the shootout procedure, but it should not be forced to do so while

9  blindfolded. Apple's motion to strike and for a protective order on deposition discovery should be

10  granted.

11       Uniloc's disclosures under Rules 3-1(b), (d), and (e)are also non-compliant. Contrary to

12  Rule 3-1(b)'s requirement that Uniloc specify each accused instrumentality, Uniloc offers

13  inconsistent and open-ended identifications of Apple's products, and treats one product as

14  representative of dozens of others without stating any basis for doing so. And rather than describe

15  alleged acts of indirect infringement or state any theory of infringement by equivalents, as Rules 3-

16  1(d) and (e) expressly require, Uniloc offers only empty boilerplate. These deficient disclosures

17  should also be stricken.

18  **II.   BACKGROUND**

19       Five of Uniloc's cases against Apple are currently related before this Court and span six

20  patents: 6,580,422 ("the '422 Patent"); 7,092,671 ("the '671 Patent"); 6,662,018 ("the '018

21  Patent"); 6,161,134 ("the '134 Patent"); 6,446,127 ("the '127 Patent"); and 6,216,158 ("the '158

22  Patent"). Those patents cover a wide range of different technologies, including transmission of

23  graphics primitives ('422 Patent), wireless auto-dialing ('671 Patent), wireless remote control ('018

24  Patent), computer-telephone interaction ('134 and '127 Patents), and middleware network

25  architecture ('158 Patent).

26       On April 26, 2018, this Court held a case management conference for the related cases

27  between Uniloc and Apple and a related case between Uniloc and defendant Logitech. (Dkt. No.

28

85.)[2] On May 1, the Court issued its Scheduling Order, which confirmed that the Local Patent Rules ("Rules") were in effect for all seven related cases. (Dkt. No. 85 ¶ 22.) Pursuant to the Rules and the Court's order, Uniloc served its Rule 3-1 and 3-2 disclosures on May 10. Exs. A-K. Under the Court's "shootout" procedure, each side is to pick one claim of one patent by June 14, and to move for early summary judgment on that claim by June 28. (Dkt. 85, ¶¶ 4-5.)

## III.  LEGAL STANDARDS

Under Patent Rule 3-1, "a party claiming patent infringement must, among other things: (1) identify each claim that is being infringed; (2) identify each accused product for each claim; (3) provide a chart identifying specifically where each limitation of each asserted claim is found in each accused product; [and] (4) specify whether infringement is literal or based on the doctrine of equivalents for each accused product." *GN Resound A/S v. Callpod, Inc.*, No. C 11-04673 SBA, 2013 WL 1190651, at *2 (N.D. Cal. Mar. 21, 2013); N.D. Cal. P.R. 3-1(a)-(c), (e). Rule 3-1 also requires a patentee to describe the acts supporting its theories of indirect infringement, N.D. Cal. P.R. 3-1(d), and to identify the timing of the end of damages, N.D. Cal. P.R. 3-1(h). "The Patent Local Rules require plaintiffs to formulate their infringement contentions in particular ways to ensure they crystallize their theories of the case early in litigation and adhere to those theories once they have been disclosed." *Geovector Corp.*, 2017 WL 76950 at *5 (quotations omitted). "This is not only so that defendants can properly respond to the claims against them, but so that the Court can make a principled decision on whether discovery will proceed." *Id.* (quotations omitted).

"To satisfy Rule 3-1, a plaintiff must compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products . . . ." *Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*, No. C 11-04100 WHA, 2012 WL 1253178, at *2 (N.D. Cal. Apr. 13, 2012) (quotations omitted). In order to provide the requisite detail, "reverse engineering or its equivalent are required." *Id.* "[A]ll courts agree that the degree of specificity under Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F.

---

[2] Unless otherwise noted, all docket citations are to the docket for Case No. 3:18-cv-00359-WHA.

Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quotations omitted). "[The] burden [imposed by Rule 3-1] cannot be met simply by parroting claim language or referencing screenshots and/or website content." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-CV-05808-HSG, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015).

In this District, courts "routinely stay discovery until the plaintiff has met its Rule 3-1(c) obligations." *Shared Memory Graphics LLC v. Apple Inc.*, No. C-10-02475 MMC (JSC), 2011 WL 3878388, at *7 (N.D. Cal. Sept. 2, 2011) (rejecting patentee's demand for discovery prior to complying with Rule 3-1(c)); *GN Resound*, 2013 WL 1190651 at *8 (granting protective order pending service of compliant infringement contentions). Further, courts may strike a patentee's infringement contentions without leave to amend upon a showing of good cause. *See Finjan*, 2015 WL 1517920 at *12; *Theranos, Inc. v. Fuisz Pharma LLC*, No. 11-CV-05236-YGR, 2012 WL 6000798, at *7 (N.D. Cal. Nov. 30, 2012).

## IV.   UNILOC'S CONTENTIONS FOR EACH CLAIM OF THE '127, '134, AND '158 PATENTS ARE DEFICIENT

Uniloc has not complied with Rule 3-1(c) for any one of the remaining six asserted patents. For three of those patents—the '127, '134, and '158 Patents—Uniloc's disclosures for every asserted claim are so non-compliant as to effectively be no disclosure at all. For claim 1 of each of these patents, Uniloc offers a boilerplate recitation of the claim language, unexplained screenshots, and a brief statement about Apple's products that is either unrelated to the actual claim language or so internally inconsistent as to be unintelligible. And, for nearly every limitation of the remaining asserted claims, Uniloc offers only baseless cross-references to claim 1. Uniloc's contentions for these patents are improper placeholders, rather than a good-faith attempt to comply with Rule 3-1. Uniloc should not be permitted to sneak these patents into the Court's forthcoming "shootout" procedure after failing to provide Apple with reasonable notice as to what it is "shooting" at.

### A.   Uniloc Failed to Comply with Rule 3-1(c) for the '127 Patent

For claim 1 of the '127 Patent, Uniloc's "contentions" merely paste some screenshots and parrot some claim language, without offering any analysis of the accused product that is tethered to the actual claim limitations. Further, Uniloc's disclosures for all of the patent's remaining claims

are bare cross-references to claim 1, even though those claims require many additional elements not found in claim 1. These contentions are not even a colorable attempt by Uniloc to comply with its Rule 3-1(c) obligations for even a single claim of the '127 Patent.

      1)   <u>Uniloc Failed to Articulate Where and How Each Limitation of Claim 1 is Allegedly Found in the Accused Products</u>

Claim 1 of the '127 Patent is directed to a system with a particular network architecture for voice-over-data communication. The claim requires "registering" the user of a particular portable device to a "data-network telephone." Yet Uniloc's disclosures for the '127 Patent say nothing at all about these limitations. In fact, Uniloc's failures of disclosure are so pervasive that they cut across most of claim 1, across all the limitations highlighted below:

1. A system for providing user mobility services on a ***data network telephony system*** comprising:

***a data network to provide data connectivity for a plurality of data communications channels using data transport protocols***;

a plurality of data network telephones connected to the ***data network***, ***each data network telephone operable to communicate a voice signal as voice-over-data packets on a voice-over-data channel***, ***the voice over data channel being one of the plurality of data communications channels on the data network, the data network telephones each operable to convert voice-over-data packets communicated on the voice-over-data channel to voice signals***; and

a portable information device, the portable information device associated with a user and comprising a user interface and a data network telephone interface, the user interface operable to accept ***PID data*** from the user, the data network telephone interface operable to communicate ***PID data*** to ***and from a first data network telephone***, ***the PID data including user attributes***;

wherein ***the PID data*** is transmitted by the portable information device to the first data network telephone, ***the PID data used to register the user with the first data network telephone.***

At the outset, claim 1 of the '127 Patent requires "a data network to provide data connectivity for a plurality of data communications channels using data transport protocols." For this limitation, Uniloc states that Apple's Continuity feature allows users to make and receive cellular calls. Ex. H, '127 Pat. Chart at p. 4. But this vague statement comes nowhere close to stating where and how Uniloc believes any of the recited elements—the "data network," the

"plurality of data communication channels," or the "data transport protocols"—is found in the accused products.

Uniloc fares no better with respect to the next limitation of claim 1. That limitation requires "a plurality of data network telephones . . . each data network telephone operable to communicate a voice signal as voice-over-data packets on a voice-over-data channel, the voice over data channel being one of the plurality of data communications channels on the data network, the data network telephones each operable to convert voice-over-data packets communicated on the voice-over-data channel to voice signals." Ex. L, '127 Pat. at Cl. 1. For this limitation, Uniloc pastes two screenshots about making phone calls with an Apple Watch and states that Apple devices can be "connected on a network to other devices" and "are capable of sending voice signals." Ex. H, '127 Pat. Chart at p. 5. This generic allegation ignores nearly every part of the claim language. Uniloc identifies no "voice-over-data packets" or "voice-over-data channel," nor does it articulate any theory as to how and where the accused products are "operable to convert voice-over-data packets communicated on the voice-over-data channel to voice signals." Ex. L, '127 Pat. at Cl. 1.

Uniloc's contentions for the remainder of claim 1 are no better. For example, Uniloc offers internally inconsistent allegations as to how the "PID data" element is met. Uniloc first refers to information about the user of an Apple Watch (the person who would <u>make</u> the phone call) as "PID data." Ex. H, '127 Pat. Chart at p.7. But Uniloc then claims that the "PID data" comprises information about the <u>recipient</u> of a phone call, *i.e.*, the "contact number (PID) of th[at] recipient," *Id.* at p. 8. These inconsistent allegations fail to provide reasonable notice of where and how Uniloc believes the "PID data" limitation is found in the accused products. Finally, the last limitation of claim 1 states that "the PID data [is] used to register the user with the first data network telephone." Ex. L, '127 Pat. at Cl. 1. For this limitation, Uniloc pastes screenshots about making calls from an Apple Watch, but says nothing about where and how any "PID data"—or any other data—is used to "register the user with the first data network telephone." Ex. H, '127 Pat. Chart at pp. 9-12.

Uniloc's contentions ignore most of the limitations of claim 1, and thus are not a reasonable attempt to comply with Rule 3-1(c).

/ / /

2)   Uniloc's Allegations for the '127 Patent's Remaining Claims Are Facially Deficient

For nearly every limitation of the 16 other claims asserted by Uniloc,[3] Uniloc offers no more than a cross-reference to claim 1—even though claim 1 does not include the limitations required by these other claims. Relying on such cross-references is not a reasonable attempt to comply with Rule 3-1(c).[4]

As one example, claim 1 does not recite numerous limitations of claim 8, such as "a network telephony connection server" or "a request message" or a "second data network telephone" or an "encrypted data channel" or "a response message." Ex. L, '127 Pat. at Cl. 8. Yet for this limitation, Uniloc merely parrots the claim language and directs the reader to "Refer to Claim 1":

| 8d. a network telephony connection server operable to receive a request message from the second data network telephone to initiate the voice over data channel and the encrypted data channel with the first data network telephone, and to send a response message in response to the request message. | The Accused Products provide a system that includes a network telephony connection server operable to receive a request message from the second data network telephone to initiate the voice over data channel and the encrypted data channel with the first data network telephone, and to send a response message in response to the request message.<br><br>*Refer to Claim 1.* |
|---|---|

Ex. H, '127 Pat. Chart at p. 19.

As further examples, independent claims 15 and 21 recite, in part, a "user information database" for storing user attributes. They also require a "registration server" to register the user of a voice communication device in a "registration database" based on or in response to the voice communication device issuing a "register request." As with claim 8, Uniloc simply parrots the claim language and refers back to claim 1. Ex. H, '127 Pat. Chart at pp. 20-21, 24-26. But claim 1 recites no "user information database" or "registration database," nor does it recite a "register request" or taking a registration action "in response to" any such "register request." And, as shown

---

[3] Claims 2-5, 8, 15, 17, 19-24, 27, 28, and 30. Ex. H, '127 Pat. Chart at p. 1.

[4] In addition to the illustrative examples herein, Apple attaches Appendix A identifying all of the limitations of the claims of the '127 Patent left unaddressed by Uniloc's cross-references.

1   above, Uniloc's disclosures for claim 1 are completely silent as to anything related to registration.

2   Uniloc's unexplained and vacuous cross-references do not put Apple on reasonable notice of

3   Uniloc's theories as to how the accused products allegedly meet the claim.

**B.      Uniloc Failed to Comply with Rule 3-1(c) for the '134 Patent**

4

5          Uniloc's contentions for the '134 Patent are similarly devoid of substance and facially do

6   not comply with Rule 3-1(c).

7          1)   Uniloc Failed to Articulate Where and How Each Limitation of Claim 1 is Allegedly
               Found in the Accused Products
8

9          Claim 1 of the '134 Patent recites a method of connecting a telephone with a portable

10  computer. The method requires an exchange of particular elements between the devices ("telephone

11  operating parameter data" and "operating capabilities" of the telephone) in order to allow the

12  portable computer to perform a particular function ("establishing telephone operating parameters

13  for the communication session based on" the particular elements exchanged). Uniloc makes no

14  effort to show where and how these and other limitations are found in the accused products.

15          The first step of method claim 1 requires, in part, a "telephone having operating

16  capabilities." Ex. M, '134 Pat. at Cl. 1. Uniloc's disclosure for this limitation is a series of

17  unexplained screenshots and an irrelevant statement about sending "user related information" from

18  an iPad to an iPhone. Ex. I, '134 Pat. Chart at pp. 7-13. Nowhere does Uniloc state what it believes

19  corresponds to the recited "operating capabilities" of the telephone. Claim 1's second step requires,

20  in part, "supplying the portable computer with telephone operating parameter data for a

21  communications session." Ex. M, '134 Pat. at Cl. 1. Uniloc never identifies what it contends

22  corresponds to the recited "telephone operating parameter data." Instead, Uniloc asserts in

23  conclusory fashion that "the connected devices exchange operating data for allowing the

24  communication session between them." Ex. I, '134 Pat. Chart at p. 14. This assertion does not

25  identify "where and how" Uniloc believes the claimed "telephone operating parameter data" is

26  found in the accused products.[5]

27  ────────────────────

28      [5] Uniloc also points to a keypad for entering "operating call parameters." Ex. I, '134 Pat.
    Chart at p. 14. This is not the claim language, which recites "telephone operating parameter data,"
    and Uniloc makes no attempt to link the two.

The rest of claim 1 fares no better. The third step of claim 1 requires "exchanging the telephone operating parameter data and the operating capabilities with the telephone." Here, Uniloc simply states that Apple products can exchange "contact information for a requested user whom a user wishes to place a call." Ex. I, '134 Pat. Chart at p. 17. But the claim explicitly recites an exchange of two different elements, "telephone operating parameter data" and "operating capabilities," not whatever is the alleged "contact information." Apple is simply left to guess how Uniloc believes the "exchanging" step is performed, what Uniloc contends the "telephone operating parameter data" and "operating capabilities" are, and how those parameters are allegedly exchanged.

Claim 1's fourth and final step requires "the portable computer establishing telephone operating parameters for the communications session based on the telephone operating parameter data and the operating capabilities, the telephone operating parameters providing options and features for the communication session." Ex. M, '134 Pat. at Cl. 1. Uniloc provides no information at all as to what Uniloc contends corresponds to the "telephone operating parameters" or the "options and features for the communication session." Nor does it state "where and how" it believes the accused products perform the "establishing" step based on the "telephone operating parameter data and the operating capabilities." Aside from pasting a few unexplained screenshots, Uniloc states only that "a communication session is initiated with a user from the iPad using an iPhone based on the contact information transferred from the iPad to the iPhone." Ex. I, '134 Pat. Chart at p. 21. But this generic assertion says nothing about Uniloc's theory as to where or how the portable computer establishes the particular parameters recited ("telephone operating parameters") based on the particular elements exchanged (the "telephone operating parameter data" and the "operating capabilities"). And Uniloc's assertion says nothing about where and how any supposed telephone operating parameters provide "options and features for the communication session."

None of Uniloc's disclosure for claim 1 is "in any way tethered to the actual [claim] language." *Finjan*, 2015 WL 1517920 at *9. The only way Uniloc even acknowledges the claim language is with boilerplate that simply recites the language of the claims, without any explanation of how Apple's products allegedly meet that language. *See, e.g.*, Ex. I, '134 Pat. Chart at p. 17

("The Accused Products practice the step of the portable computer exchanges the telephone operating parameter data and the operating capabilities with the telephone."); *id.* ("Further, the connected devices exchange operating parameter data and the operating capabilities."). This is not adequate. *Finjan*, 2015 1517920 at *6.

> 2) Uniloc's Allegations for the Remaining Claims of the '134 Patent are Facially Deficient

In addition to claim 1, Uniloc seeks to assert 20 other claims from the '134 Patent.[6] For nearly every one of these claims, Uniloc relies solely on cross-references to claim 1. Ex. I, '134 Pat. Chart at pp. 24-59. Even a cursory review of these claims, however, shows that they recite limitations not present in claim 1, and for which Uniloc provides no disclosure.[7]

To take but one example, claims 2 and 9 recite, in part, "transforming [] values into input data formatted according to a data link layer protocol, the data link layer protocol encapsulating frames formatted according to an application layer protocol, the application layer protocol adapted for telephony functions." Ex. M, '134 Pat. at Cls. 2, 9. Uniloc's disclosure for this claim limitation is reproduced below:

| 2d. the portable computer transforming the values into | The Accused Products practice the step of the portable computer transforming the values into input data formatted according to a data link layer protocol where the data link layer protocol encapsulates frames formatted according to an application layer protocol adapted for telephony functions. |
|---|---|
| input data formatted according to a data link layer protocol, the data link layer protocol encapsulating frames formatted according to an application layer protocol, the application layer protocol adapted for telephony functions; and | *Refer to Claims 1a and 1pre.* |

---

[6] Claims 2, 5, 6, 9, 10, 11, 13, 15, 16, 25, 26, 30, 54, 55, 56, 60, 64, 65, 73. Ex. I, '134 Pat. Chart at p. 1.

[7] In addition to the illustrative examples herein, Apple attaches Appendix A identifying all of the limitations of the '134 claims left unaddressed by Uniloc's cross-references.

1    Ex. I, '134 Pat. Chart at p. 33-34; *see also id*. at p. 41. This "disclosure" does not pass the straight-

2    face test. Nothing in claim 1 refers to "transforming" or "formatting" anything, nor does it refer to

3    any "data link layer protocol," "application layer protocol," or "encapsulating frames formatted

4    according to an application layer protocol . . . adapted for telephony functions." Ex. M, '134 Pat. at

5    Cl. 1. And Uniloc's disclosures for claim 1 say nothing that even arguably identifies any such

6    transforming, formatting, frames, or protocols. Ex. I, '134 Pat. Chart at pp. 1-24.

7            As a further example, Uniloc's cross-references for independent claim 54 are similarly

8    inappropriate. Claim 54 recites a telephone that comprises, *inter alia*, a "port for connecting to the

9    portable computer," "network communication capabilities including a communication port,"

10   "portable computer companion capabilities," and "processing resources adapted to exchange data

11   with the portable computer." Ex. M, '134 Pat. at Cl. 54. Claim 54 further requires that the claimed

12   "exchange" of data enables the telephone to "discover user information and capabilities of the

13   portable computer" and to "indicate the network communication capabilities to devices connected

14   to the telephone via a network." *Id*. Not one of these limitations is found in claim 1, yet the only

15   "evidence" Uniloc's claim chart provides for these elements is unexplained cross-references to that

16   claim. Ex. I, '134 Pat. Chart at pp. 51-53. Nothing in Uniloc's disclosures for claim 1 provides

17   reasonable notice for where or how each limitation of claim 54 is alleged to be found.

18        **C.      Uniloc Failed to Comply with Rule 3-1(c) for the '158 Patent**

19           As with the '127 and '134 Patents, Uniloc fails to provide reasonable notice of its

20   infringement theory for any claim of the '158 Patent. Uniloc's allegations for claim 1 are internally

21   inconsistent and incomprehensible, and the remaining claims rely on the same deficient disclosures.

22           The first step in the body of claim 1 recites, in part, "accessing a description of ***the service***

23   from a ***directory of services***." Ex. N, '158 Pat. at Cl. 1 (emphases added). For this limitation, Uniloc

24   alleges that "the service" is the "Apple TV Remote" application downloaded to the iPhone. Uniloc

25   also alleges that the "directory of services" is the "list of applications available in the App Store."

26   Ex. K, '158 Pat. Chart at p. 6; *see also id.* at p. 1 ("Apple provides the App store for downloading

27   applications (services) from Apple servers"). The final step of claim 1 requires, in part, "sending

28   control commands ***to the service*** from the palm sized computer." Ex. N, '158 Pat. at Cl. 1

1   (emphasis added). For this limitation, however, Uniloc identifies the Apple TV device—not the

2   Apple TV Remote application on the iPhone—as the recited "service," noting that "the application

3   can send control commands *to the Apple TV* from the iPhone." Ex. K, '158 Pat. Chart at p. 12

4   (emphasis added). Then, for claim 2, Uniloc contends that the "service" refers to an application

5   registered in the App Store. *Id.* at p. 17. Uniloc's self-contradictory contentions do not provide fair

6   notice as to "where and how" Uniloc alleges each limitation is found in the accused products. *See*

7   *Infineon Techs. v. Volterra Semiconductor*, No. C 11-06239 MMC DMR, 2013 WL 322570, at *3-4

8   (N.D. Cal. Jan. 28, 2013) ("The [contentions] do not put Defendant on fair notice of the alleged

9   location of these claim[] limitations in the accused instrumentality. The Patent Local Rules do not

10  tolerate this kind of obfuscation.").

11          Uniloc's contentions are also self-contradictory, and do not provide fair notice, as to what

12  Uniloc believes is the "application that cannot be executed on the palm sized computer" as recited

13  in claim 1 of the '158 Patent. Uniloc first appears to allege that this "application" refers to either the

14  operating system or gaming applications running on the Apple TV. Ex. K, '158 Pat. Chart at p. 12.

15  But for claim 7, which requires the application to be a "desktop program," Uniloc pivots to an

16  entirely different application (the App Store App) running on a completely different Apple product

17  (MacBook). *Id.* at p. 19. Further, for claim 7, Uniloc identifies the "App Store" as the "application"

18  that cannot be executed on the palm sized computer. *Id.* But this assertion runs directly contrary to

19  Uniloc's contention for claim 1, which alleges that the palm sized computer *can* use the App Store

20  application, *id.* at p. 4. Uniloc cannot meet its burden under Rule 3-1 by offering internally

21  inconsistent theories that "mix and match" from different products. *See Geovector*, 2017 WL 76950

22  at *4 ("A plaintiff does not satisfy [Rule 3-1(c)] by mixing and matching between different accused

23  products in its claim charts, as infringement cannot be shown by a muddled hash of elements from

24  different products.") (quotations omitted).

25          Uniloc also improperly relies on unexplained cross-references in its charts for numerous

26  claims of the '158 Patent. For claim 20, for example, Uniloc relies entirely on its contentions for

27  claim 1. *See* Ex. K, '158 Pat. Chart at pp. 24-25. Unlike method claim 1, however, system claim 20

28  is drafted in means-plus-function format with four distinct "means" recited. Uniloc's cross-

reference to method claim 1 provides no disclosure at all as to what Uniloc contends corresponds to each of the "means" recited in claim 20 in Apple's products. For instance, Uniloc appears to contend that the recited "means for accessing a description of a service" requires "executing a service discovery protocol or lookup service 120, such as Jini." *Id.* at p. 25. But Uniloc makes no attempt to identify what it believes the "service discovery protocol or lookup service" in the accused products is, or where and how any accused product allegedly executes such a protocol or lookup service. Uniloc's cross-reference to claim 1 is an impermissible attempt to dodge Uniloc's obligation to provide "the identity of the structure(s), act(s), or material(s) *in the Accused Instrumentality* that performs the claimed function" for means-plus-function terms under 35 U.S.C. § 112(6). N.D. Cal. P.R. 3-1(c) (emphasis added).

## V.   UNILOC FAILED TO COMPLY WITH RULE 3-1(C) FOR THE '018, '422, AND '671 PATENTS

In addition to its deficient disclosures for all asserted claims of the '127, '134, and '158 Patents, Uniloc provided non-compliant disclosures for claims in each of the other patents-in-suit.

### A.   Deficiencies in Uniloc's Disclosures for the '018 Patent

Uniloc's disclosure for the '018 Patent suffers from at least three serious deficiencies. First, Uniloc mixes and matches multiple different products and features into a single claim chart, obfuscating its infringement allegations rather than crystallizing them as the Rules require. Second, Uniloc fails to show "where and how" the hardware limitations of a "bus" and "input device," as required by independent claims 11 and 21, are allegedly found in the accused products. Third, Uniloc's disclosures for several dependent claims are bare cross-references that do not disclose Uniloc's theories of infringement.

*First*, Uniloc's sole claim chart for the '018 Patent addresses a mash-up of dozens of different products and at least three different software applications. Ex. F, '018 Pat. Chart at p. 1. In that single chart, Uniloc mixes allegations about using (1) an Apple laptop (MacBook) in combination with an Apple TV, *id.* at p. 12; (2) an iPhone in combination with Apple AirPods, *id.* at p. 9; and (3) an iPad in combination with an Apple Pencil, *id.* at 39-40. Uniloc also combines allegations for several different software applications, including AirPlay, Apple TV Remote, Apple Home App, and others. *Id.* at 1. By mixing all of these different products and processes together,

1   Uniloc fails to provide reasonable notice as to **which** accused products, performing **which** accused

2   processes, are accused of infringing **which** claims. For example, Uniloc appears to accuse AirPlay

3   on a MacBook, but charts this product only for the preamble of claim 1 and not for any of the

4   elements in the body of that claim. *Id.* at p. 12. Similarly, Uniloc alleges that each accused product

5   infringes claim 2, but charts that claim only against the iPad. *Id.* at p. 38-40. This shotgun approach

6   is impermissible and obfuscates where and how Uniloc contends **each limitation** of **each asserted**

7   **claim** is found within **each Accused Instrumentality**. As courts in this District have noted, "[t]he

8   object of [Rule 3-1(c)] is to delineate and crystalize theories of infringement as to each accused

9   product, which is not well-served by creating charts that address multiple distinct products at once."

10   *Finjan*, 2015 WL 1517920 at *4 (compelling plaintiff to provide separate claim charts).

11        **Second**, Uniloc's disclosures for claims 11 and 21 (and their dependents) do not comply

12   with Rule 3-1(c). Independent claims 11 and 21 recite a "bus" that is coupled to each of a processor,

13   a transceiver, a display device, and an input device. Ex. O, '018 Pat. at Cls. 11, 21. For this

14   limitation, Uniloc pastes a single screenshot from a non-Apple website and asserts in conclusory

15   fashion that the screenshot "shows the connectivity between Bluetooth module, Logic board

16   (processor), and Display connected by the system bus." Ex. F, '018 Pat. Chart at p. 51-52. The

17   screenshot does nothing of the sort, and Uniloc does not even attempt to identify the mystery

18   "system bus" that it apparently contends maps to the claimed "bus." *Id*. Nor does Uniloc identify

19   the recited "input device." *Id*. "Rather than provide a meaningful description of its theories,

20   [Uniloc's] vague contentions and conclusory statements invite Defendants and the Court merely to

21   *assume* the presence of a [] bus," *Shared Memory Graphics LLC v. Apple, Inc.*, 812 F. Supp. 2d

22   1022, 1026 (N.D. Cal. 2010).

23        Uniloc's failure to articulate theories for the hardware limitations of claims 11 and 21 is

24   inexcusable. Uniloc has been in possession of hardware diagrams and schematics for the accused

25   products since Apple produced them in September 2017.[8] In this District, a plaintiff must include

26

27       [8] Apple produced these documents to Uniloc in Case No. 2:17-cv-00258, which was then
pending in the Eastern District of Texas, as were the five cases now related before this Court.

28   Pursuant to the Protective Order in the -258 case, Apple's document production was available to
Uniloc for "cross-use" in the cases here. *See* Ex. P, Dkt. No. 74 of Case No. 2:17-cv-00258 at p. 7.

all facts known to it in its infringement contentions. *See Shared Memory Graphics*, 812 F. Supp. 2d at 1024. Uniloc must comply with Rule 3-1(c) by disclosing where and how it contends each limitation in claims 11 and 21 is found.

**Third**, Uniloc once again relies improperly on bare cross-references that fail to indicate where or how the limitations of each asserted claim are allegedly found in Apple's products. For example, claims 3 and 13 recite "recognizing a ***movement*** of said stylus element . . . wherein ***a particular movement*** of said stylus element is translated into a particular command," Ex. O, '018 Pat. at Cls. 3, 13 (emphases added); *see also id.* at Cl. 22. For both claims, Uniloc simply cross-references to claim 2. Ex. F, '018 Pat. Chart at pp. 40-41, 55; 66-64. But claim 2 recites "registering a ***position*** where a stylus element makes contact." Ex. O, '018 Pat. at Cl. 2 (emphasis added). Claim 2 says nothing about recognizing or translating any particular ***movement***. As another example, claims 6-8 recite a "rendering of a mechanism for controlling said remote device" (claim 6), "contacting a particular position in said rendering" and translating the contacting into a "particular command corresponding to said particular position" (claim 7), and "imparting motion to said rendering in response to movement of a stylus element" (claim 8). Ex. O, '018 Pat. at Cls. 6-8. For each of these claims, Uniloc provides only a cross-reference to claims 1 and 2, neither of which recites a "rendering of a mechanism," contacting any position within such a rendering, or imparting motion to such a rendering. Ex. F, '018 Pat. Chart at pp. 47-49. Uniloc's reliance on vague cross-references alone fails to satisfy Patent Local Rule 3-1(c).

**B.      Deficiencies in Uniloc's Disclosures for the '422 Patent**

Uniloc's disclosures for at least claims 17, 20, and 21 of the '422 Patent are likewise deficient. For each of these claims, Uniloc merely refers to claim 1. Ex. B, '422 Pat. Chart at pp. 34-39. But there are several means-plus-function terms in claims 17, 20, and 21 that are not found in claim 1. Claim 17 recites a "converter means for converting the received signals into digital data representing the graphics primitives." Ex. Q, '422 Pat. at Cl. 17. Similarly, claims 20 and 21 recite a "means for converting the graphics primitives into digital data representing the graphics primitives." *Id.* at Cls. 20, 21. Claim 1, however, recites no "converter means" or "means for converting," and Uniloc's disclosure for claim 1 does not provide the "the identity of the

1  structure(s), act(s), or material(s)" for this means-plus-function term as Rule 3-1(c) requires, and are

2  thus deficient. *See* Ex. B, '422 Pat. Chart at p. 19 (identifying the accused Apple TV product as a

3  whole).

4  **C.      Deficiencies in Uniloc's Disclosures for the '671 Patent**

5          Uniloc's contentions for the '671 Patent are almost completely empty. For claim 1, Uniloc

6  provides scarcely more than two screenshots and an unexplained citation to a YouTube video. Ex.

7  D, '671 Pat. Chart at pp. 2-5. Uniloc's sparse allegations are directed solely to initiating a

8  "FaceTime" call by selecting a phone number on an iPad and allegedly transferring that number

9  over a Bluetooth connection to an iPhone. *Id.* at 4. But even assuming these allegations suffice for

10  claim 1, they are not enough for any of claims 5, 6, 13, and 14, which recite different limitations.

11          For example, claims 5 and 13 recite a "management program" that both maintains "the

12  information stored on the handheld computer system" and "controls the telephone via the wireless

13  communication." Ex. R, '671 Pat. at Cls. 5, 13. Uniloc's disclosure for claim 5 states only "[r]efer

14  to Claim 3," and its disclosure for claim 13, in turn, refers only to claim 5. Ex. D, '671 Pat. Chart at

15  pp. 6-7, 11-12. But claim 3 does not recite any "management program" at all, let alone one that both

16  maintains "the information stored on the handheld computer system" and "controls the telephone

17  via the wireless communication." Ex. R, '671 Pat. at Cl. 3. Similarly, claims 6 and 14 depend from

18  claims 5 and 13, respectively, and further recite that the "management program is an address book

19  program." But Uniloc provides no disclosure for these claims other than a cross-reference to

20  Uniloc's contentions for claim 5, which do not specify an address-book program or assert how any

21  alleged "management program" meets claim 5's other limitations. Uniloc's cross-references fail to

22  show "where and how" the limitations of claim 5, 6, 13, or 14 are allegedly found.

23  **VI.   UNILOC FAILED TO COMPLY WITH P.R. 3-1(B), (D), AND (E)**

24          In addition to Uniloc's failure to comply with P.R. 3-1(c) for each of the six asserted

25  patents, Uniloc also failed to comply with P.R. 3-1(b), (d), and (e) for each patent.

26  **A.      Uniloc Failed to Identify the Accused Instrumentalities with Specificity**

27          For every patent, Uniloc broadly identifies categories of devices such as "Apple

28  smartphones" as infringing, followed by a parenthetical listing of exemplary devices. Ex. B, '422

Pat. Chart; Ex. H, '127 Pat. Chart; Ex. I, '134 Pat. Chart; Ex. K, '158 Pat. Chart. Such a listing is improper. "The Patent Local Rules require[] specific identification of particular accused products [and do] not tolerate broad categorical identifications like 'mobile devices running Android,' nor [do] they permit the use of mere representative examples." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011). Uniloc's broad categorical identifications and improper use of open-ended language ("e.g.") should be stricken, and Uniloc's allegations should be limited to the products specifically identified.

Moreover, Uniloc purports to identify dozens of Apple products as the accused products for each patent. *See*, e.g., Ex. D, '671 Pat. Chart at p. 1. But Uniloc charts only a single product or pair of products as "exemplary," and asserts in conclusory fashion that the other dozens of accused products "operate in substantially the same manner with respect to the accused functionality." *Id.* at p. 1, fn. 1. This does not comply with Rule 3-1. "[I]n order to rely on a claim that one accused product represents another for purposes of Rule 3–1(c), a patentee must do more than state as much. A patentee must state how." *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 5:14-CV-03227-PSG, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015). Uniloc should be "strictly limited to accusing products that truly fit the theories described" in its infringement contentions and should not be permitted to add explanations or chart additional products. *Comcast Cable Commc'ns, LLC v. OpenTV, Inc.*, No. C 16-06180 WHA, 2017 WL 2630088, at *4 (N.D. Cal. June 19, 2017).

Furthermore, Uniloc offers inconsistent product identifications for at least some of the patents. In its cover statement for the '018 Patent, for example, Uniloc identifies models of Apple's iPhone, iPad, iPod Touch, Apple Watch, and AirPods. Ex. E, '018 Cover at pp. 1-2. But Uniloc's claim chart for the '018 Patent purports to identify additional products, including "Apple Mac computers . . . running OS X Mountain Lion v10.8 or later with the Apple TV . . . with the AirPlay application." Ex. F, '018 Pat. Chart at p. 1. Similarly, for the '158 Patent, Uniloc identifies in its cover statement models of Apple's MacBook laptops, but does not identify any model of the Apple TV. Ex. J, '158 Cover at p. 2. In its claim chart, however, Uniloc identifies models of the Apple TV but no model of the Apple MacBook. Ex. K, '158 Pat. Chart at p. 1. These inconsistent identifications fail to provide reasonable notice of which products are at issue. They should be

stricken, and Uniloc compelled to provide consistent product identifications that comply with Rule 3-1(b).

> **B.   Uniloc Failed to Describe the Acts that Contribute to or are Inducing Direct Infringement, as Required by P.R. 3-1(d)**

Rule 3-1(d) requires Uniloc to describe the acts Apple has taken that contribute to or induce direct infringement by others. N.D. Cal. P.R. 3-1(d). "Rule 3-1(d) requires facts" and is not satisfied by "a bare-bones recitation of the essential elements of a claim for indirect infringement." *France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12-CV-04967 WHA NC, 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013). But a bare-bones recitation is all that Uniloc provided:

> Apple contributes to the direct infringement by non-Apple users because it offers to sell, sells, and imports the Accused Instrumentalities for use, including for use in practicing the claimed methods. Apple induces that direct infringement by advertising the Accused Instrumentalities for use, including for practicing the claimed methods and by providing instructions to the user on how to use the Accused Instrumentalities, including how to perform the claimed methods.

*E.g.*, Ex. C, '671 Cover at pp. 2-3. This Court has previously rejected "boilerplate language that simply claims an accused infringer provided instructions on, advertised, or promoted the use of an accused product, without describing which instructions, advertisements, or promotions led to what infringing behavior" as insufficient under Rule 3-1(d). *Comcast*, 2017 WL 2630088 at *5. Uniloc's improper boilerplate should be stricken.

> **C.   Uniloc Failed to State Whether and How Uniloc Alleges Infringement Under the Doctrine of Equivalents as Required by P.R. 3-1(e)**

Uniloc failed to comply with Rule 3-1(e) because Uniloc did not explain whether or on what basis it alleges infringement by equivalents. For each patent, Uniloc merely states that it "may . . . revise these contentions to identify an element as present under the doctrine of equivalents" based on claim construction or subsequent discovery. *E.g.*, Ex. C, '671 Cover at p. 3. Uniloc's placeholder language does not comply with Rule 3-1(e). "It is improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion." *Finjan*, 2015 WL 1517920 at *10. Uniloc's disclosure for Rule 3-1(e) should be stricken. *See id.*

/ / /

## VII.   UNILOC'S FAILURE TO COMPLY WITH RULE 3-1 PREJUDICES APPLE

Uniloc's failure to provide compliant infringement contentions here warrants two separate forms of relief: (1) its non-compliant contentions should be stricken; and (2) deposition discovery of Apple regarding the patents for which its contentions on all claims are defective (the '127, '134, and '158 Patents) should be stayed, and Apple should be granted a protective order against such discovery. Further, Apple's obligations to comply with Local Rules 3-3 and 3-4 for all patents should be stayed until 21 days after Uniloc complies with this Court's local rules.

These remedies are appropriate here because Uniloc's non-compliance with Rule 3-1 is both inexcusable and prejudicial to Apple. All five cases have been pending for at least six months, and Uniloc had ample opportunity to acquire and test Apple's products, both before and after it filed suit. Further, Apple made source code available for the accused features on April 16. Ex. S, 4/16/18 Email, Pieja to Counsel. Despite having Apple's code available for over three weeks before its infringement contentions were due, Uniloc made no effort to inspect it. Uniloc cannot reasonably ask for sympathy and a chance to fix the deficiencies in its contentions.

Further, Uniloc's non-compliance prejudices Apple, especially given the schedule in effect in this case. Under the Court's Case Management Order, the parties are to engage in a patent "shootout," with each party selecting a claim to proceed on by June 14 and filing a summary-judgment motion two weeks later. (Dkt. No. 85 at pp. 1-2.) Uniloc's refusal to produce compliant contentions improperly requires Apple to make its claim selection without knowing what Uniloc's infringement theories even are for the vast majority of claims.

The law of this District provides ample remedies for Uniloc's failures. Courts in this District routinely strike non-compliant infringement contentions. Where "good cause" is shown, failure to comply with Rule 3-1 warrants striking contentions without leave to amend. *See Finjan*, 2015 WL 1517920 at *12. Here, Apple respectfully submits that the prolonged time Uniloc had to prepare its contentions, its failure to even look at the code available to it, the gross deficiencies in its contentions, and the enhanced prejudice to Apple all more than establish the required good cause. The prejudice to Apple is particularly severe with respect to the claims where Uniloc's contentions provide no disclosure at all because they rely solely on unfounded cross-references to other claims

1  that do not even mention the relevant elements.

2       Further, for those patents where Uniloc's contentions are defective for every claim, Uniloc's

3  failure to comply with Rule 3-1 justifies a protective order and stay of deposition discovery of

4  Apple until Uniloc provides compliant disclosures. *See, e.g.*, *Shared Memory Graphics*, 2011 WL

5  3878388 at *7; *GN Resound*, 2013 WL 1190651 at *8. While Apple believes a request for a

6  protective order and stay of all discovery would be warranted in view of the serious deficiencies in

7  Uniloc's contentions and the case law in this District, Apple has narrowed its request to alleviate

8  the substantial prejudice to Apple if it were forced to proceed with deposition discovery as to the

9  '127, '134, and '158 Patents before Uniloc disclosed any theory of infringement as to even a single

10 claim in those patents. *See Implicit Networks Inc. v. Hewlett-Packard Co.*, No. C 10-03746 SI, 2011

11 WL 3954809, at *4 (N.D. Cal. Sept. 7, 2011) (granting protective order and stay of discovery as to

12 particular products until thirty days after patentee provided amended infringement contentions).

13 This protective order would cover the depositions of just two witnesses—Danny Pollack and Nick

14 Fraioli—with knowledge specifically relevant to those patents.

15      Accordingly, Apple requests the following relief to keep the Court's schedule intact while

16 addressing the clear prejudice to Apple from Uniloc's failure to comply with Rule 3-1:

17
18   • Uniloc's deficient infringement charts as to each asserted patent should be
        stricken without leave to amend. Claims that should be stricken with prejudice
19      include in particular those claims asserted based on unfounded cross-references,
        as identified in Apple's Motion and the Exhibits attached thereto;

20   • Deposition discovery of Apple should be stayed and a protective order entered
        barring Uniloc from deposing Apple witnesses as to the '134 Patent, the '127
21      Patent, and the '158 Patent because Uniloc's Rule 3-1(c) disclosures are deficient
22      as to every asserted claim;

23   • Uniloc's deficient disclosures pursuant to Rules 3-1(b), (d), and (e) should be
        stricken without leave to amend; and
24
25   • Apple's obligation to comply with Rules 3-3 and 3-4 for all patents should be
        stayed until 21 days after Uniloc complies with Rule 3-1 in full.

26 / / /

27 / / /

28 / / /

1

## VIII. CONCLUSION

Uniloc's disclosures fail to satisfy its burden under Patent Local Rule 3-1. Instead, Uniloc has obfuscated its theories and used improper placeholders to assert claims without articulating a basis for doing so. Apple's Motion to Strike should be granted.


DATED:  May 23, 2018                              Respectfully submitted,


                                                  */s/ Michael T. Pieja*
                                                  Michael T. Pieja (CA Bar No. 250351)
                                                  Alan E. Littmann (*pro hac vice*)
                                                  Jennifer Greenblatt (*pro hac vice*)
                                                  Doug Winnard (CA Bar No. 275420)
                                                  Andrew J. Rima (*pro hac vice*)
                                                  Emma C. Neff, M.D., J.D. (*pro hac vice*)
                                                  Lauren Abendshien (*pro hac vice*)
                                                  GOLDMAN ISMAIL TOMASELLI
                                                  BRENNAN & BAUM LLP
                                                  564 W. Randolph St., Suite 400
                                                  Chicago, IL 60661
                                                  Tel: (312) 681-6000
                                                  Fax: (312) 881-5191
                                                  mpieja@goldmanismail.com
                                                  alittmann@goldmanismail.com
                                                  jgreenblatt@goldmanismail.com
                                                  dwinnard@goldmanismail.com
                                                  arima@goldmanismail.com
                                                  eneff@goldmanismail.com
                                                  labendshien@goldmanismail.com

                                                  Kenneth Baum (CA Bar No. 250719)
                                                  GOLDMAN ISMAIL TOMASELLI
                                                  BRENNAN & BAUM LLP
                                                  429 Santa Monica Boulevard, Suite 710
                                                  Santa Monica, CA 90401
                                                  Tel: (310) 576-6900
                                                  Fax: (310) 382-9974
                                                  kbaum@goldmanismail.com


                                                  *Attorneys for Defendant Apple Inc.*

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S NOTICE OF MOTION AND MOTION TO STRIKE UNILOC'S INFRINGEMENT CONTENTIONS, AND FOR PARTIAL STAY OF DISCOVERY AND PROTECTIVE ORDER** has been served on May 23, 2018, to all counsel of record who are deemed to have consented to electronic service.


*/s/ Michael T. Pieja*
Michael T. Pieja (CA Bar No. 250351)