James J. Foster
jfoster@princelobel.com
Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone: 617-456-8000
Facsimile: 617-456-8100

ATTORNEYS FOR THE PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNILOC USA, INC., et al., | ) Case No. 3:18-cv-00359-WHA |
| | ) Case No. 3:18-cv-00360-WHA |
| Plaintiff(s), | ) Case No. 3:18-cv-00363-WHA |
| | ) Case No. 3:18-cv-00365-WHA |
| | ) Case No. 3:18-cv-00572-WHA |
| vs. | ) |
| | ) **PLAINTIFFS' PARTIAL OPPOSITION** |
| LOGITECH, INC., | ) **TO DEFENDANT APPLE INC.'S** |
| APPLE INC., | ) **MOTION FOR ENTRY OF PROTECTIVE** |
| Defendant(s). | ) **ORDER** |
| | ) |
| | ) |
| | ) |

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     Argument ................................................................................................................... 1

      A.      The prosecution bar should be modified.................................................... 3

           1.      The prosecution bar should be edited for clarity. ....................... 4

           2.      The prosecution bar should be limited to received confidential
               information.................................................................................... 5

           3.      The prosecution bar should not extend beyond the litigation. .... 5

           4.      The prosecution bar should not apply to any IPRs. .................... 5

      B.      There is no need for an acquisition bar.................................................... 9

III.    Conclusion ............................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Ameranth, Inc. v. Pizza Hut, Inc.*,
    No. 3:11-cv-01810, 2012 WL 528248 (S.D. Cal. Feb. 17, 2012)........................... 6

*Document Generation Corp. v. Allscripts, LLC*,
    No. 6:08-cv-479, 2009 WL1766096 (E. D. Tex. June 23, 2009) ............................ 2

*Dolby Labs., Inc. v. Lucent Techs., Inc.*,
    No. 5:01-cv-20709-JR-RS, 2004 WL 2445232 (N.D. Cal. May 26, 2004) ........................... 2

*Finjan, Inc. v. ESET, LLC*,
    No. 17-cv-00183-CAB (BGS), 2017 WL 6557760 (N.D. Cal. Dec. 21, 2017)....................... 7

*In re Deutsche Bank Trust Co.*,
    605 F. 3d. 1373 (Fed. Cir. 2010)........................................................ 2, 3

*In re Terra Int'l, Inc.*, |
    134 F.3d 302 (5th Cir. 1998).......................................................... 2

*Mirror Worlds, LLC v. Apple, Inc.*,
    No. 6:08-CV-88, 2009 WL 2461808, at *2 (E.D. Tex. Aug. 11, 2009) ................... 6

*Prism Technologies, LLC v. AT&T Mobility, LLC*,
    No. 8:12CV122, 2013 WL 100390 (D. Neb. Jan. 8, 2013) ............................. 2

*Telebuyer, LLC v. Amazon.com, Inc.*,
    No. 13-CV-1677, 2014 WL 5804334 (W.D. Wash. July 7, 2014) ...................... 8

*U.S. v. Garrett*,
    571 F.2d 1323 (5th Cir. 1978).......................................................... 2

*Voice Domain Techs., LLC v. Apple, Inc.*,
    No. 13-40138-TSH, 2014 WL 5106413 (D. Mass. Oct. 8, 2014)....................... 8

**Statutes**

35 U.S.C. § 302.......................................................................... 6

35 U.S.C. § 303.......................................................................... 6

35 U.S.C. § 304.......................................................................... 6

35 U.S.C. § 305.......................................................................... 6

**Other Authorities**

*Manual of Patent Examining Procedure* § 2666.01 ....................................... 6

U.S.P.T.O., *Data Visualization Center: Patent Dashboard*,
    *available at* https://www.uspto.gov/dashboards/patents/main.dashxml
    (last visited on June 4, 2018)........................................................ 5

**Rules**

Fed. R. Civ. P. 26(c)(1)(G) ............................................................. 1

Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively "Uniloc") respectfully oppose, in part, Defendant Apple Inc.'s ("Apple") Motion for Entry of Protective Order. Case No. 3:18-cv-00359-WHA, Dkt. No. 100 ("Motion" or "Mot.").[1]

## I.    INTRODUCTION

Apple's Motion is an example of repeated incrementalism. At first, Apple sought to introduce prosecution bars into its Protective Orders. Then, once they were introduced, Apple sought to make them more and more onerous. And now, Apple seeks to add acquisition bars. Each time it succeeds in staking out new ground, it argues that the new ground is the new norm, and it then seeks to move the line further still.

The parties agree on 90% of the Protective Order. The remaining 10% relates to the prosecution and acquisition bars. As to the former, Uniloc proposes to modify the prosecution bar for the sake of clarity and to better reflect the realities of the practice of law. As to the latter, Apple seeks to introduce an acquisition bar, something that Apple already litigated for and *lost* in another case between the parties. *See* Mot. at 6. Recognizing this loss, Apple thereafter agreed to a "substantively identical" Protective Order in this case, *without* an acquisition bar, as reflected in the Protective Order that Apple argues already controls in this case. *See id.* at 3. But now, transferred to a new District, Apple has decided to give it another try.

## II.    ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure allows a court to enter a protective order for good cause, to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including requiring that confidential information not be revealed or be revealed only in a specified way. Fed. R. Civ. P. 26(c)(1)(G). But, as the Federal Circuit

---

[1]     Apple filed identical motions in all of the above-captioned cases. Unless otherwise noted, citations herein will only be to those in Case No. 3:18-cv-00359.

explained in the seminal *In re Deutsche Bank Trust Co.,* 605 F. 3d. 1373 (Fed. Cir. 2010), a court may not impose any form of prosecution bar unless the requesting party establishes, on a counsel-by-counsel basis, an unreasonable risk of harm.

The burden of establishing good cause rests with the party seeking the protective order. *Id.* at 1378.  A party seeking to include a patent prosecution bar in a protective order has the same burden.  *Id.*  "When parties to an action agree on entry of a protective order, but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating that 'good cause' exists for the protection of that information."  *Document Generation Corp. v. Allscripts, LLC*, No. 6:08-cv-479, 2009 WL1766096, at*2 (E. D. Tex. June 23, 2009) (citing *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998); *see, e.g.*, *Dolby Labs., Inc. v. Lucent Techs., Inc.*, No. 5:01-cv-20709-JR-RS, 2004 WL 2445232, at *3 (N.D. Cal. May 26, 2004) ("The burden of showing that good cause for the protective order exists is on the moving party.") (citing *In re Terra*, 134 F.3d at 306).

To show good cause, the party must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" that may support the need for a protective order.  *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978).

To decide whether to impose a restriction that would preclude Plaintiffs' litigation counsel from participating in *inter partes* review ("IPR") proceedings, the Court must first determine "whether an unacceptable opportunity for inadvertent disclosure exists," a factual inquiry determined on a counsel-by-counsel basis.  *In re Deutsche*, 605 F.3d at 1378; *see, e.g., Prism Technologies, LLC v. AT&T Mobility, LLC*, No. 8:12CV122, 2013 WL 100390, at *5 (D. Neb. Jan. 8, 2013) (denying defendant's motion for patent acquisition ban where no sufficient showing that confidential information could be used in the future to defendant's detriment).

If the Court determines that a risk of harm exists, it must "balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In Re Deutsche Bank*, 605 F.3d at 1380.  The balancing test requires "that a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381.

A.   **The prosecution bar should be modified.**

Although Apple knows that Uniloc proposed to edit the prosecution bar, Apple did not address those proposals in its Motion.  Indeed, although the document containing Uniloc's proposed edits was attached to the e-mail that is Exhibit 6 to Apple's Motion,[2] that document was not included with Apple's Motion.[3]  Those edits would modify the prosecution bar as follows (underlined text to be added; ~~struck~~ text to be removed):

> Absent the written consent of the Producing Party, any person employed by, related to, or representing Plaintiffs who is permitted to and in fact receives any of Defendant's materials designated "HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY" or "HIGHLY CONFIDENTIAL – SOURCE CODE" and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively, "HIGHLY SENSITIVE TECHNICAL MATERIAL"), in accordance with this Order, shall not, <u>on behalf of Plaintiffs or their acquirer, successor, predecessor, or other affiliate,</u> prepare, prosecute, or assist in the preparation or prosecution of any patent application ~~pertaining~~ <u>relating</u> to the subject

---

[2]     Numbered exhibits referred to herein are attached to the Declaration of Lauren Abendshien ("Abendshien Decl."), Dkt. No. 100-1, which accompanied the Motion.  Lettered exhibits referred to herein are attached to the Declaration of James J. Foster ("Foster Decl.").

[3]     The Abendshien Declaration identifies Exhibit 6 thereto as "the May 17, 2018 e-mail *from Pieja* to Counsel regarding the parties' agreement as to the existing Protective Order."  Abendshien Decl. ¶ 8 (emphasis added).  This is facially incorrect.  The attached email is *from Uniloc's counsel* to Pieja, and the "Attachments" line indicates that it includes "2018-05-17 U-HP – Draft Protective Order – Uniloc Redline.docx."  Ex. 6.

Uniloc attaches the file "2018-05-17 U-HP – Draft Protective Order – Uniloc Redline.docx" to the Foster Declaration as Exhibit A.  It shows the differences, in track changes, between Apple's proposed Protective Order and the Order as Uniloc requests.

matter of the asserted patent(s) corresponding to the received technical information, e.g., (a) controlling the charging and discharging of a battery based on temperature; (b) wirelessly sending graphics primitives or graphics commands to a remote display; (c) using a portable device to control a telephone in dialing a phone number; (d) wirelessly discovering and controlling remote devices; (e) exchanging data relating to operational parameters and/or capabilities between a portable device and telephone; (f) registering a user or a portable device with a telephone and/or providing portability of a user's telephone number between data telephones; (g) using a mobile computer to identify and access services provided on a network; (h) monitoring and evaluating periodic human activity based on inertial sensor data; (g) using inertial sensors to wake up a device due to motion; and or (i) calculating incline during step counting and using the incline in determining calorie expenditure, before any foreign or domestic agency, including the United States Patent and Trademark Office on behalf of the Plaintiffs or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after a final judgment has been entered. To ensure compliance with the purpose of this provision, each party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE TECHNICAL MATERIAL in accordance with this Order, and any individuals who, on behalf of Plaintiffs or their acquirer, successor, predecessor, or other affiliate, prepare, supervise, or assist in the preparation or prosecution of any patent application pertaining relating to the accused functionalities, e.g., providing appropriate updates to software/hardware configurations; (b) creation or use of parameters that operate as device, machine, or user identifiers to authenticate a user to access services; or (c) providing targeted information to a user's device based on a user's predicted location when location data and likelihood data satisfy pre-determined criteria. These prohibitions shall not preclude Plaintiffs' litigation counsel from participating in any *inter partes* review proceedings, provided there is no attempt to amend any claims in the proceedings by any counsel for a patent owner during the course of the proceedings. These prohibitions shall begin when access to the HIGHLY SENSITIVE TECHNICAL MATERIALS are first received by the affected individual, and shall end one (1) year after the settlement and/or dismissal of the Producing Party Defendant from this action or the final non-appealable termination of this action.

Ex. A at 5-6.  The above edits fall into four basic categories, as discussed below.

### 1.      The prosecution bar should be edited for clarity.

Uniloc's first set of proposed edits are for the sake of clarity, at least such as is possible; the first sentence of the unedited Protective Order runs on for an unfortunate 271 words.

Both versions—Apple's and Uniloc's—would preclude an individual who "in fact receives any of" Apple's Highly Sensitive Technical Material from prosecuting patents *on behalf of Uniloc* in the enumerated technical fields.  However, the version proposed by Apple separates "shall not prepare, prosecute, or assist in the preparation or prosecution of any patent application"

from "on behalf of the Plaintiffs or its acquirer, successor, predecessor, or other affiliate" by 159 words. Dkt. No. 100-37 at 5-6. Uniloc simply proposes to put those two phrases together.

Uniloc also proposes to swap the word "pertaining" for "relating." Again, this is simply for clarity. Uniloc notified Apple of these proposed edits and Apple did not respond.

### 2. The prosecution bar should be limited to received confidential information.

Uniloc further proposes to add the phrase "corresponding to the received technical information" to the first sentence, to clarify that those individuals given access to Apple's confidential documents are only barred from prosecuting in fields covered by material actually produced by Apple and reviewed by those particular individuals. For example, Apple might produce Highly Sensitive Technical Material relating to just one of the enumerated examples, but then might argue that everyone is precluded from prosecuting any patents on behalf of Uniloc as to the other eight. The proposed addition addresses any confusion that might arise as to the application of the bar in such instances.

### 3. The prosecution bar should not extend beyond the litigation.

Uniloc proposes to limit the prosecution bar to the duration of the litigation itself. Given the speed of technological change and the fact that the average patent prosecution is more than two years, *see, e.g.*, U.S.P.T.O., *Data Visualization Center: Patent Dashboard*, *available at* https://www.uspto.gov/dashboards/patents/main.dashxml (last visited on June 4, 2018), there is no good reason to further limit the livelihood of patent attorneys and agents after the close of the related litigation.

### 4. The prosecution bar should not apply to any IPRs.

The final change Uniloc proposes to make is to remove the prohibition on participation in IPRs where claims might be amended. Under the Patent Act, patent owners and third parties may initiate an IPR proceeding to confirm or challenge the validity of a previously issued patent. *See*

*generally* 35 U.S.C. §§ 302-307.  After a reexamination request is made, the Director of the PTO

determines whether the reexamination request raises a "substantial new question of patentability."

*Id.* § 303.  If not, the reexamination request is denied.  *Id.*  If it does, the Director orders a

reexamination and gives both the owner and the requestor the opportunity to weigh in on the

matter.  *Id.* § 304.  The reexamination progresses "according to the procedures established for

initial examination;" in other words, the process undertaken by the PTO to examine a new patent

application.  *Id.* § 305.  Amendments are allowed on reexamination, though they "*must not*

*enlarge the scope of a claim nor introduce new matter*.  Amended or new claims which broaden

or enlarge the scope of a claim of the patent should be rejected under 35 U.S.C. 314(a)."

*Ameranth, Inc. v. Pizza Hut, Inc.*, No. 3:11-cv-01810, 2012 WL 528248, at *6 (S.D. Cal. Feb. 17,

2012) (quoting *Manual of Patent Examining Procedure* § 2666.01) (emphasis added).

       For years, courts generally did not include reexamination proceedings within the scope of

prosecution bars.  *See id.* ("[A] review of cases directly discussing a prosecution bar applied to

reexamination finds near unanimous support *against* extending the [prosecution] bar to cover

reexamination") (emphasis in original).  After all, claims can only be narrowed, and thus there is

a limited benefit to having access to a defendant's confidential information.  Or, as one court

explained in a case involving Apple:

> Claims can only be narrowed during reexamination; they cannot be broadened.  This
> is very different from patent prosecution where claim scope is being initially
> determined.  Thus, the risk of harm to Apple is already greatly limited.  Apple
> contends that it is possible that [patentee] Mirror Worlds could narrow claims in a manner that
> captures Apple's products rather than in a way that would exclude Apple's products.
> While this may be true, *it would be very short sighted for a patentee to intentionally*
> *limit claim scope to specifically capture one defendant's products at the expense of*
> *excluding other would-be infringers' products*.  Additionally, purposefully doing so
> would violate the terms of the protective order.

*Mirror Worlds, LLC v. Apple, Inc.*, No. 6:08-CV-88, 2009 WL 2461808, at *2 (E.D. Tex. Aug.

11, 2009)  (emphasis added); *see, e.g.*, *Finjan, Inc. v. ESET, LLC*, No. 17-cv-00183-CAB (BGS),

2017 WL 6557760 (N.D. Cal. Dec. 21, 2017) (citing the italicized text of *Mirror Worlds* with approval).

Here, Apple makes no effort to "show on a counsel-by-counsel basis" what *In re Deutsche* required it to show.  Its IPR bar is not limited to "competitive decision-makers," or even patent prosecutors.  Uniloc's litigation counsel has never represented Uniloc in prosecuting any patents. *See, e.g.*, *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 775 n. 14 (D. Md. 2003) (refusing to impose prosecution bar were no showing that counsel was currently prosecuting patents on the same subject matter of the litigation).  But, Uniloc is interested in the efficiencies of having its litigation counsel handle IPRs on the same patents.  Foster Decl. ¶¶ 4-6.  Here, the Court must balance Apple's nonexistent risk of harm against the real harm to Uniloc and its counsel.   Apple's proposed bar limits the ability of a litigation counsel for Uniloc from representing Uniloc in IPRs, no matter how unrelated to the IPR the information he had learned. *Id.* ¶¶ 7-10.

The best proof that imposition of an IPR would provide no benefit to anyone is the absence of any real world examples that it ever has.  Counsel for Uniloc is unaware of a single instance anywhere in which a party was ever harmed by lack of an IPR bar.  *Id.* ¶ 11.  On the flip side, however, it is easy to understand that a patentee would want the same counsel that is already an expert on a given patent to handle the IPR with respect thereto, to avoid expensive and time-consuming duplication of efforts.

Uniloc previously agreed to Protective Orders containing this type of an IPR bar.  That turned out to be a mistake; the bar constricted Uniloc in its selection of counsel to advise it in IPR proceedings.  *Id.* ¶ 8.  Having learned from that experience, going forward Uniloc now opposes prosecution bars that include a restriction that would preclude Plaintiffs' litigation counsel from

1   participating in IPR proceedings, for the reasons explained at length above and in the Foster

2   Declaration.

3          Finally, if this Court is inclined to grant Apple's request for a blanket prohibition on

4   participation in IPRs if claims might be amended, Uniloc would propose a compromise.  In *Voice*

5   *Domain Techs., LLC v. Apple, Inc.*, No. 13-40138-TSH, 2014 WL 5106413 (D. Mass. Oct. 8,

6   2014)—yet another case involving Apple—Apple sought essentially the same bar on IPR practice

7   as it seeks here.  But, that court recognized that where the defendant is also the entity that initiates

8   the IPR, "the PTO proceeding might effectively be 'part and parcel of the litigation at issue.' . . .

9   [T]hus the prosecution bar would require the receiving party to retain separate counsel for what

10  is essentially the same dispute, 'another "front" in the litigation.'"  *Id.* at *8 (quoting *Telebuyer,*

11  *LLC v. Amazon.com, Inc.*, No. 13-CV-1677, 2014 WL 5804334, at *11-12 (W.D. Wash. July 7,

12  2014)).  As such, the *Voice Domain* court instructed the parties to redraft their proposed protective

13  order to permit, on motion, litigation counsel to participate in all manner of IPRs, including those

14  wherein the claims might be amended.  *Id.* at *9.

15         Uniloc does not believe the prosecution bar should apply to any sort of IPR proceeding,

16  irrespective of which entity petitions for review.  But, if the Court is inclined to limit Uniloc's

17  counsel's ability to participate in IPRs, Uniloc requests that the Court allow Uniloc to participate

18  in IPRs—including where the claims might be amended—brought by the producing party.[4]

---

[4]       As noted, the *Voice Domain* court did include the requirement that the patentee file a motion
to be permitted to participate in an IPR, brought by Apple, where the claims might be amended.
Uniloc does not believe that this extra procedural steps is necessary, but would accept it if the only
other alternative is to bar Uniloc's litigation counsel entirely from such IPRs.

**B.      There is no need for an acquisition bar.**

Apple's arguments in support of adding an acquisition bar to the Protective Order are built upon speculation and non sequiturs.   More to the point, Apple does not actually *need* an acquisition bar.

First, Section 1(a)—literally, the first sentence of the first section—of the Protective Order states:

> Protected Material designated under the terms of this Protective Order shall be used by a Receiving Party solely for this case or as permitted by the Cross-Use Provision herein, and *shall not be used directly or indirectly for any other purpose whatsoever*.

Proposed Order § 1(a) (emphasis added).   Section 6(a)—which immediately precedes the prosecution bar found in Section 6(b)—is even more explicit:

> All Protected Material shall be used solely for this case or any related appellate proceeding, and not for any other purpose whatsoever, including without limitation any other litigation, patent prosecution or *acquisition*, patent reexamination, reissue, *inter partes* review, covered business method review, or other post-grant review proceedings, or any business or competitive purpose or function.

*Id.* § 6(a) (first emphasis added).   As such, Uniloc's counsel are already barred from using any Protected Materials—be they designated Source Code, Highly Confidential or simply Confidential—for the purpose of determining what patents to acquire.   *See also* Foster Decl. ¶ 10.

Second, while Uniloc's litigation counsel have consulted with Uniloc with respect to patent acquisition—on topics such as patent eligibility, prior art, the written specification and publicly available information regarding products—Uniloc's litigation counsel *have not* used and *would not* use any Protected Materials in the course of such consultations.   The above-quoted provisions are clear, and Uniloc's counsel abide by them; there is simply no need to add onto them the blanket prohibition of consultation between client and counsel that Apple here seeks. Without delving into conversations that are covered by the attorney-client privilege or work-product doctrine, the undersigned officers of this Court attest that they (and their colleagues) have

never considered anything produced by Apple in evaluating whether Apple infringes a prospective patent.

Turning to some of the particulars, Apple attempted to draw connections where none exist. For example, at pages 4-5 of the Motion, Apple alleged as follows in order:

- In April 2017, Uniloc sued Apple for infringement of, *inter alia*, the '852 patent, which relates to wireless software updates.

- In January 2018, Uniloc's source code expert performed an inspection of the code relating to the '852 patent.

- In February 2018, James J. Foster accompanied Uniloc's source code expert during an inspection of Apple's source code.

- In March 2018, Mr. Foster accompanied Uniloc's source code expert during an inspection of Apple's source code.

- Mr. Foster, a partner at Prince Lobel Tye, LLP ("Prince Lobel"), represents Uniloc in a number of Uniloc's cases against Apple.

- At least two Prince Lobel attorneys consulted with Uniloc regarding acquisition of some patents.

- In January 2018, Uniloc acquired the '088 patent, which relates to wireless software updates.

- In April 2018, Uniloc sued Apple for infringement of the '088 patent.

These facts are largely unrelated.

The first fallacy of logic is as follows:  Two "Prince Lobel attorneys" consulted with Uniloc regarding acquisition of patents.  Mr. Foster is an attorney at Prince Lobel.  Mr. Foster was in the same room as Apple's source code in 2018.  Therefore, Mr. Foster must have used his knowledge of Apple's source code to assist Uniloc in deciding what patents to acquire.  There are many holes in this theory.  To start, Apple—notably—neglected to mention that the "at least two Prince Lobel attorneys" who consulted with Uniloc regarding acquisition of patents did so *before* Apple produced its source code, let alone when it was reviewed.  Indeed, the identified consultations related to the patents-in-suit, which were acquired through early 2017.  Thus, insofar

as there were no source code inspections until after the patents-in-suit were acquired, it was literally impossible for the source code inspection that happened in 2018 to have had anything to do with those conversations in 2016-2017, let alone whether Mr. Foster was involved in anything. Apple also—notably—neglected to mention that Mr. Foster was not one of the "at least two Prince Lobel attorneys" who consulted with Uniloc regarding patent acquisition.  Indeed, he has never consulted with Uniloc as to that aspect of its business.  Foster Decl. ¶ 12.

Furthermore, Mr. Foster did not attend the source code inspection to personally inspect the code.  After all, unless someone has a deep background in computer language—which does not happen to be one of Mr. Foster's specialties—the code is largely gibberish.  Rather, Mr. Foster attended to understand the expert's process and help direct the expert to key points of focus for the litigation.  *Id.* ¶ 13.  Mr. Foster *did not* ask the expert about anything having to do with any patents beyond those already asserted against Apple.

Apple's second fallacy of logic is as follows:  Uniloc asserted the '852 patent, which relates to wireless software updates.  Uniloc's expert subsequently conducted inspections of source code that relate to the '852 patent.  Uniloc thereafter purchased the '088 patent, which also relate to wireless software updates.  Therefore, Uniloc must have considered the source code in its decision to acquire the '088 patent.  But, again, nothing of the sort happened.  Indeed, the attorneys of Prince Lobel had *nothing* to do with the acquisition of the portfolio that includes the '088 patent.  *Id.* ¶ 14.  Neither did Uniloc's source code expert consult with Uniloc regarding patents to acquire, as that is not one of the services he provides.  And, frankly, it should come as no surprise to anyone that an entity with one patent covering wireless software updates would opt to buy another patent covering wireless software updates.

In another section of the Motion, Apple complains:

[T]here is reason to believe that the very same Uniloc lawyers who reviewed Apple's confidential wireless-software-updating code were involved in acquiring the alSafadi

> ['088] patent on wireless software updating.  In an effort to understand what had happened, Apple asked Uniloc whether any of its counsel who had accessed Apple's confidential discovery were involved in the alSafadi acquisition.  Uniloc would not answer, instead saying that counsel did not "use" Apple's confidential information to buy the alSafadi ['088] patent. (Ex. 6, 5/17/18 E-mail, Jacobs to Pieja.)

Mot. at 11.  Apple cited, but did not quote, the correspondence in question from Uniloc's counsel.

Uniloc hereby cures that omission:

> Uniloc neither needed nor, in fact, used *any* non-public information to decide to acquire the '088 patent and map out infringement thereof.  To put it simply, the individuals who were responsible for considering, acquiring and asserting the '088 patent did not rely upon any of information obtained from Apple in the course of any litigation with Apple.  Rather, it appears that you are seeking an excuse to impose an acquisition bar in the absence of any proof that one is appropriate.

Ex. 6 at 1-2 (emphasis in original).  This is not some "deflection" as Apple claims.  Mot. at 11.  To the extent it is not otherwise evident from the above paragraph, the undersigned counsel again reiterates:  Uniloc's litigation counsel did not consult with Uniloc about the '088 patent prior to Uniloc's acquisition of it.  And, had they been asked—which, again, they were not—Uniloc's litigation counsel would have limited themselves to addressing questions that could not possibly touch upon Apple's Protected Materials, as that counsel are well aware that the Protective Order already states that Protected Materials "shall not be used directly or indirectly for any other purpose whatsoever."

## III.    CONCLUSION

For the foregoing reasons, Uniloc respectfully requests that the Court enter the Protective Order as it accompanies this Opposition.

2969170.v1

12

1

Date:  June 7, 2018

Respectfully submitted,

2

/s/ Aaron S. Jacobs

3

James J. Foster
jfoster@princelobel.com

4

Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com

5

PRINCE LOBEL TYE LLP
One International Place, Suite 3700

6

Boston, MA 02110
617-456-8000

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2969170.v1

13