James J. Foster
jfoster@princelobel.com
Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone: 617-456-8000
Facsimile: 617-456-8100

ATTORNEYS FOR THE PLAINTIFFS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNILOC USA, INC. and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> vs. <br><br> APPLE INC., <br><br> Defendant. | Case No. 3:18-cv-00359-WHA <br> Case No. 3:18-cv-00360-WHA <br> Case No. 3:18-cv-00363-WHA <br> Case No. 3:18-cv-00365-WHA <br> Case No. 3:18-cv-00572-WHA <br><br> **PLAINTIFFS' OPPOSITION TO APPLE'S MOTION TO STRIKE PLAINTIFFS' INFRINGEMENT CONTENTIONS** <br><br> Date: Thursday, June 28, 2018 <br> Time: 8:00 a.m. <br> Courtroom: 12, 19th Floor <br> Judge: Hon. William Alsup <br><br> [Filed Concurrently with: Declaration of Brian Tollefson with Exhibits] |

**1**
**UNILOC'S OPPOSITION TO APPLE'S MOTION TO STRIKE**

2981141.v1

Plaintiffs, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively, "Uniloc"), submit this Opposition to Defendant Apple Inc.'s ("Apple") Motion to Strike Uniloc's Infringement Contentions. Leave to file this Opposition was requested by Uniloc on the same date. *See* Uniloc's Administrative Motion for Leave to File Opposition.

**I.   INTRODUCTION**

Apple had asked this Court to strike Uniloc's Patent L.R. 3-1 (a)-(e) disclosures and for relief from discovery obligations. (Dkt. No. 98[1].) The Court has already denied the request for a stay of discovery. Because Apple is adequately apprised of Uniloc's infringement theories, there is no basis for striking the contentions.

*First*, Uniloc has met the requirements of Patent L.R. 3-1. Although Apple objects to Uniloc's claim charts, the objections are merely form over function. As described below in *Section IV.A*, Uniloc's contentions show every limitation of every asserted claim is met by the accused Apple devices.

*Second*, even if Uniloc's infringement contentions were inadequate, the deficiencies appear easily curable; and because this is Apple's first motion to strike, made without any attempt to meet-and-confer, Apple's motion should instead be treated as a motion to compel amended infringement contentions, to address the deficiencies. *Comcast Cable Communications, LLC. V. OpenTV, Inc. et al.*, 2017 WL 2630088, Case No. 16-06180 WHA, Slip Op. at *6 (June 19, 2017).

Third, Apple has not been prejudiced. Apple argues that its products are widely available for Uniloc to acquire, test, and inspect. Apple knows this to be irrelevant. Apple is famously one of the most secretive companies on the planet and testing frequently cannot reveal how its highly encrypted software works. All of the infringement contentions were prepared without access to Apple's source code. As most limitations for these patents are software-based, for that reason Uniloc has told Apple that it would supplement its infringement contentions after source code review is complete (which the patent rules in Texas allow for software-based claims). But Apple did not make its source code

---

[1] For convenience, references to documents filed with the Court will be made to the docket for 3:18-cv-00359-WHA.

available on the schedule set by the court in Texas, which required the code to have been produced or made available for inspection seven months ago.  For unexplained reasons, Apple withheld the code until shortly before this Court's date for serving infringement contentions, five months after it was supposed to have been produced.  Even then, and contrary to Apple's assertions (Apple Br. at 19), Apple did not make all of its accused source code available until June 19, 2018.[2]  Therefore, Uniloc's review could not have been completed prior to service of Uniloc's infringement contentions.

For these and the additional reasons set forth below, Apple's motion to strike should be denied.

## II.   BACKGROUND

On May 26, 2017, Uniloc filed the first two of these related actions against Apple for patent infringement in the Eastern District of Texas ("E.D. Tex."). (Dkt. No. 1 in the 2:17-cv-00455 (U.S. Patent No. 6,580,422) and Dkt. No. 1 in the 2:17-cv-00457 case (U.S. Patent No. 7,092,671)).[3]  On August 22, 2017, the cases were consolidated, together with several others, for all pretrial issues (except venue) and case no. 2:17-cv-00470 was designated as the lead case.  (Dkt. No. 27.)  On September 22, 2017, Apple moved to transfer all of the consolidated cases to this District, which motion was granted on December 22, 2017.  (Dkt. No. 36.)

Prior to transfer, Uniloc served its Preliminary Infringement Contentions pursuant to the E.D. Tex. Rules of Practice for Patent Cases ("E.D. Tex. P. R.") on September 19, 2017.  Uniloc filed an amended complaint, including a revised claim chart for the '158 patent, on November 17, 2017. (Dkt. No. 64 in the 2:17-cv-00571 case.)  Apple served its invalidity contentions on November 22, 2017.  On December 13, 2017, Apple indicated that it would not oppose a motion to amend Uniloc's

---

[2] Uniloc is still not certain if Apple's source code production is complete.

[3] On July 12, 2017, Uniloc filed two additional actions in E.D. Tex. (Dkt. No. 1 in the 2:17-cv-00534 case (U.S. Patent No. 6,622,018) and Dkt. No. 1 in the 2:17-cv-00535 case (U.S. Patent Nos. 6,161,134 and 6,446,127).  On August 2, 2017 Uniloc filed the last of these related actions in E.D. Tex. (Dkt. No. 1 in the 2:17-cv-00571 case (U.S. Patent No. 6,216,158).

3
**UNILOC'S OPPOSITION TO APPLE'S MOTION TO STRIKE**
2981141.v1

1  infringement contentions to conform to the '158 patent claim chart that was attached to the amended
2  complaint. Tollefson Dec. Ex. 1.
3        The schedule the court set in Texas (Tollefson Dec., ¶6-7 and Ex. 4, E.D. Tex. P. R. 3-4),
4  required Apple to produce source code in these actions on November 16, 2017, and substantially
5  complete all document production by March 19, 2018.  Apple, however, did not offer any source
6  code in these actions until April 16, 2018, five months after the deadline, and what was produced,
7  even then, was not the complete set of source code.  On May 29, 2018, Apple notified Uniloc that it
8  would begin to collect and produce the Apple TV Remote application software code. Tollefson Dec.
9  Ex. 3.  As described below, the Apple TV Remote application is accused in connection with the '158
10 patent.
11       On May 23, 2018, Apple, without warning, filed its motion to strike and for a partial stay of
12 discovery. (Dkt. No. 98.)  The Court denied the motion in part on May 30, 2018.  (Dkt. 104.)  On
13 June 18, 2018, this Court granted Apple's motion to strike because Uniloc had not filed an
14 opposition to the motion. (Dkt. No. 115.)  Simultaneously with this Opposition, Uniloc is filing a
15 motion for relief from this Court's Order and for leave to oppose Apple's motion, explaining its
16 failure to have earlier filed an opposition to Apple's motion to strike and requesting permission to
17 file this Opposition.

18 **III.   LEGAL STANDARD**

19      **A.   The Standard of Review and Burden of Proof**

20       Patent L.R. 3-1 does not necessarily require that the patent holder produce evidence of
21 infringement. *Comcast Cable Communications, LLC. V. OpenTV, Inc. et al.*, 2017 WL 2630088,
22 Case No. 16-06180 WHA, Slip Op. at *3 (N.D. Cal. June 19, 2017).  Rather, the purpose of the rule
23 is "to further the goal of full, timely discovery and provide all parties with adequate notice of and
24 information with which to litigate their cases." *Id*.  "[A]ll courts agree that the degree of specificity
25 under Patent L.R. 3-1 must be sufficient to provide reasonable notice to the defendant why the
26 plaintiff believes it has a 'reasonable chance of proving infringement.'" *Shared Memory Graphics*
27 *LLC v. Apple, Inc.*, 812 F. Supp. 2d 1022, 1025 (N.D. Cal. 2010) (quoting *View Eng'g, Inc. v.*
28

*Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000)).  The patent local rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." *DCG Sys. v. Checkpoint Techs., LLC*, No. 11-c-03792-PSG, 20112 WL 1309161, at *2 (N.D. Cal. Apr. 16, 2012).

"Motions to strike initial infringement contentions are frequently treated as motions to compel amendment of said infringement contentions." *Comcast Cable Communications, LLC.*, Slip Op. at *6., *citing Geovector Corp.* at *7.  Striking infringement contentions with prejudice is unwarranted when it is the first time that the accused infringer has moved to strike and many of the identified issues appear to be curable with amendment.  *Id.*

## IV.   ARGUMENT

### A.   Uniloc's Contentions Adequately Put Apple on Notice of its Infringement Allegations.

#### i.   Uniloc's Contentions Demonstrate It Is Reasonable to Believe the '158 Patent Is Infringed by Apple.

Uniloc's claim charts for the '158 patent are more than adequate to put Apple on reasonable notice of Uniloc's theories as to how the accused products meet the claim.  Apple makes no serious complaints about Uniloc's '158 patent claim chart in its motion.

Apple's principal complaint appears to be with the explanation of the last element of claim 1 of the '158 patent claim chart.  But the complaint is unfounded.

Uniloc discloses that claim 1 is infringed by Apple through a number of Apple products, such as its App Store, and Apple TV Remote app executing on an Apple device (*e.g.*, an iPhone) synchronized with Apple TV.  Apple cannot seriously claim that it cannot understand Uniloc's contentions.

Apple claims that it does not know what the claimed "service" is. Apple Br. p. 11.  Claim 1 is direct to "a method of controlling a service on a network using a palm sized computer."  At page 2 of the '158 claim chart, an example of how this is performed is disclosed as "[t]he Apple TV Remote

app executing on the iPhone, controlling the media content playback on Apple TV from the iPhone." Thus, one service can be the media content playback of Apple TV. Apple knows that this involves software on the Apple TV including tvOS or an application running on tvOS.[4] The Apple TV Remote app is given as an example of the program code for controlling the service (elements 1a and 1b). This is confirmed in element 1c, which maps "the palm sized computer executing at least a portion of the program code," to "the 'Apple TV Remote' application executing on a user's device [*e.g.*, an iPhone]." (Dkt. 98-13, at 10.) Apple misreads the claim as requiring that the service itself be downloaded. Only "program code for controlling the service" needs to be downloaded.

Accordingly, the last element of claim 1 as mapped by Uniloc is completely understandable. In particular, "when 'Apple TV Remote' application is being executed, the application can send control commands to the Apple TV from the iPhone. Using the Apple TV Remote app, the user can control the Apple TV tvOS operating system and accompanying applications on the Apple TV." (Dkt. 98-13, at 12.) These are clearly examples of the "application that cannot be executed on the palm sized computer," *e.g.*, the iPhone. Uniloc's contentions include screen shots illustrating that, when executed, the Apple TV Remote app can control the Apple TV tvOS operating system and accompanying applications on the Apple TV. Uniloc's contentions give further examples of remote applications that can be controlled through the service. "The Apple TV Remote application executes on the iPhone, which is synchronized with Apple TV. The iPhone via the app, can send control commands to the Apple TV to execute the tvOS operating system and accompanying gaming applications, for example. The tvOS operating system cannot be executed on an Apple mobile device such as the iPhone or iPad, as examples of Apple mobile devices." (Dkt. 98-13, at 15.) Thus, Uniloc's contentions with respect to claim 1 of the '158 patent comply with Patent L.R. 3-1.

Regarding claim 2, Apple seems to be misreading the claim. Claim 2 merely requires "storing the description of the service in the directory of services." Apple seems to read into the claim that the service itself must be accessible in the App Store. Uniloc's claim chart discloses that when registering an application to be available on the App Store, a description is uploaded.

---

[4] As noted below, the source code for tvOS was not made available to Uniloc until June 19, 2018.

Claim 7 of the '158 patent has been dropped by Uniloc.

Regarding claim 20, Apple claims that Uniloc's claim chart provides no evidence, only matches some structure from the specification to each claim element, and then shows the text of the corresponding element of claim 1 (method claim). However, Apple is clearly on notice of what the structure is for the limitations of claim 20 and how Apple's products meet the limitations in question even in light of the identified structure. Apple makes no attempt to explain what it does not understand about claim 20.

Apple does not object to Uniloc's contentions for any other claims of the '158 patent.

### ii. Uniloc's Contentions Show It Is Reasonable to Believe the '671 Patent Is Infringed by Apple.

Apple's complaints about the '671 patent claim charts are astonishing. As Apple acknowledges, Uniloc's claim chart cites to a video for claim 1. Apple Br. 16. This video is completely self-explanatory. *See* https://www.youtube.com/watch?v=9OmxIS4f5HM&feature=youtu.be entitled "How to Make & Receive Phone Calls on Your iPad Using Your iPad and an iPhone." It is hard to understand why Apple requires an explanation of this video.

The video explains in careful detail, with the use of actual live devices, how to control the iPhone to make a call from the iPad. For example, as explained in Uniloc's contentions, "[t]he iPad (handheld computer system) has wireless capability to access the same wireless network as the iPhone (telephone having wireless port for short range wireless data transfer). A <u>contact</u> on the iPad can be selected to place a phone call to the telephone number associated with the contact via the telephone. For example, a telephone number is selected on the iPad and the iPhone places a phone call to the telephone number that was selected on the iPad." (Dkt. 98-6, at 4 (underlining added).) As the old saying goes, "a picture is worth a thousand words." Uniloc provided the video because it shows precisely what Uniloc is accusing in an informative and easy to understand way.

Namely, claim 1 of the '671 patent requires a telephone having a wireless port for short range wireless data transfer (*e.g.*, an iPhone) and a handheld computer system also having a wireless port for communication (*e.g.*, an iPad). The devices need to communicate wirelessly. This

is described in both the claim chart and the video.  For example, the claim chart states.  "The iPad (handheld computer system) has wireless capability to access the same wireless network as the iPhone (telephone having wireless port for short range wireless data transfer)." (Dkt. 98-6, at 4.)  Claim 1 further requires that a specific telephone number is selectable from a list displayed on the handheld computer system (*e.g.*, the iPad) and wherein the handheld computer system is operable to transfer the specific telephone number to the telephone using a wireless communication, and wherein the handheld computer system is configured to control the telephone via the wireless communication such that the telephone dials the specific telephone number.  This is described in the video use as an iPad and an iPhone.  Apple's complaint with respect to claim 1 cannot be taken seriously.

With respect to the dependent claims, Apple asserts that it does not understand what "an address-book program" is.  Again, it is hard to take this seriously when the evidence disclosed for claim 1 literally shows a user opening the Contacts application on the iPad and controlling (managing) the iPhone via a wireless connection.  The video also explains that a Mac similarly can be used to control the iPhone.  Uniloc's claim chart cites to https://support.apple.com/en-us/HT201728 (Dkt. 98-6, at 6) for claim 3 as another example of an address book program for the Mac.  This link explains that the Mac includes a program called "Address Book," which works similar to Contacts.  Keeping in mind that Uniloc accuses "an address book program" (*e.g.*, Contacts or Address Book), and that for claim 1, it is shown that Contacts controls the iPhone to make a call, the reference to claim 3, which depends from claim 2, which depends from claim 1, should have been perfectly clear.

      iii. **Uniloc's Contentions Show It Is Reasonable to Believe the '134 Patent Is Infringed by Apple.**

Apple's complaints regarding the '134 patent contentions are similar in kind to those made about the '671 patent contentions.  Namely, Uniloc accuses the Apple "'Continuity' feature on Apple iOS and Mac devices [which] enables access to user mobility services such as call relay/reception, application handover, message forwarding etc. from all synchronized devices over a wireless connection." (Dkt. No. 98-11, at 1.)  Uniloc also cites to a 4 minute video that explains in

detail how Continuity works in iOS 8. *See* https://www.youtube.com/watch?v=JDIoFOF8BWg. (*Id*. at 2.) This video shows how the features of Continuity are used for "transmitting data from a portable computer to a telephone," whether connected to the same WiFi network, connected with Bluetooth or via a Hotspot. As disclosed in the claim chart and the cited video, Continuity can be used for a number of telephone operating capabilities:

> Each of these features, together known as Continuity, allow your devices to work together so that you can do more. Make and receive phone calls without picking up your iPhone. Start an email, edit a document, or surf the web on one device, then pick up where you left off on another. Unlock your Mac without typing a password. Even activate your iPhone hotspot without taking your iPhone from your pocket or bag.

(Dkt. 98-11, at 2.) Apple's objection to Uniloc's claim 1 contentions can therefore be distilled to the supposed failure by Uniloc to specify the precise data corresponding to the "telephone operating parameter data." But Uniloc's claim chart states that the "devices make use of the user associated information such as the Apple ID, email etc. for synchronizing both the devices." The behind the scenes data being exchanged is not described in publicly available materials and will be only identified from source code. Apple knows this. Apple is on notice as to what is infringing the claim and its complaints about Uniloc's contentions are nothing more than form over function.

Regarding the dependent claims, Apple identifies the contentions for claims 2, 9, and 54 as being deficient. For claims 2 and 9, all the elements of claim 2 are clearly described by the evidence cited for claim 1, except the feature of "transforming values into input data formatted according to a data link layer protocol, the data link layer protocol encapsulating frames formatted according to an application layer protocol, the application layer protocol adapted for telephony functions." It would be obvious in basic computer science that this is just a long-winded way of saying that the values are used in the telephony functions (*e.g.*, at the application program layer). From the evidence cited and as shown in the videos, the devices clearly do this. However, only a review of the software will reveal the specifics of how the values are transformed. Although this was not explicitly spelled out in the chart, Apple cannot seriously claim that it does not understand the contentions with respect to claims 2 and 9.

With respect to claim 54, Apple complains that Uniloc's claim charts do not explicitly spell out where the "port for connecting to the portable computer," "network communications capabilities including a communication port," "portable computer companion capabilities," and "processing resources adapted to exchange data with the portable computer" are found. All these features are shown in the evidence cited and referenced in claims 1 and 6, which disclose that an iPhone can be synched with an iPad or Mac computer via WiFi for the purposes of performing a communication session. It should be obvious to anyone with knowledge of the accused devices that they include communication ports and processing resources for performing what is disclosed in the charts. Thus, Apple cannot seriously claim that it does not understand the contentions with respect to claim 54.

> iv. **Uniloc's Contentions Show It Is Reasonable to Believe the '127 Patent Is Infringed by Apple.**

Apple's complaints about the '127 patent claim chart are the only ones made in its motion that have any colorable basis. While the evidence disclosed and cited in Uniloc's chart is sufficient to shows that it is reasonable to believe that the '127 patent is infringed by Apple and Apple is on notice of infringement, Uniloc admits that this chart could benefit from amendments that clarify Uniloc's position.

As described above, Apple delayed producing its source code until five months after the date it was supposed to have been produced. Tollefson Decl, ¶6-8, Exs. 4-5. As a result, the code relevant to this patent was not reviewed until May 24-25 and June 18-20 and thus could not have been used to flesh out and revise the served contentions.

In addition to obtaining access to the code, on June 13, 2018, Uniloc took the deposition of Daniel Ben Pollack, a software engineer for Apple familiar with the functionality accused in connection with Uniloc's assertion of the '127 patent. Mr. Pollack's testimony appears to confirm Uniloc's belief that the combination of an Apple Watch or iPad synchronized with an iPhone infringes each of the asserted claims of the '127 patent. Once Uniloc's expert completes reviewing and analyzing Apple's source code including the source code relating to the accused Continuity

features, Uniloc intends to move for leave to serve updated infringement contentions for the '127 patent to include additional evidence including deposition testimony and source code references.

### B. Uniloc's Contentions Comply with Patent L.R. 3-1(B).

Apple's objections to Uniloc's contentions can be placed into two categories: Apple objects to Uniloc's use of exemplary products in its charts rather than charting every single accused product; and Apple objects to open ended or inconsistent language used when listing the specific models of accused Apple devices. Neither of these objections has any merit.

#### i. Uniloc's Charting of Exemplary Products Provides Adequate Notice Under the Rules.

In certain circumstances, a plaintiff may use a single chart to chart a number of representative products. *Cap Co., v. McAfee, Inc.*, No. 14-c-05068-JD, 2015 WL 4734951, at *2 (N.D. Cal. Aug. 10, 2015). Here, for each of the patents asserted, Uniloc accuses features provided by Apple that operate substantially the same way for the relevant purposes regardless of which device is accused. For example, the Apple Continuity features will work the same way in the relevant respects for any iOS version 8 device. Apple provides no reason why any particular devices should be separately charted.

#### ii. Uniloc Identified the Accused Products with Sufficient Specificity.

Each of Uniloc's claim charts includes a section called "Accused Products." In that section, Uniloc lists, with particularity, all the products that were known by Uniloc, at the time that the contentions were prepared, to infringe that particular patent. For example, for the '134 patent, the Accused Products are listed:

> Accused Products: Apple tablets (e.g., iPad 9.7, iPad Air 2, iPad mini 2, iPad Pro 10.5, iPad mini 4, iPad Air, iPad Pro 9.7, iPad Pro 12.9, iPad mini Wi-Fi, iPad 2 Wi-Fi + 3G, iPad 4 Wi-Fi + Cellular, iPad mini 3, iPad 3 Wi-Fi, iPad mini Wi-Fi + Cellular, iPad Pro 12.9, iPad 3 Wi-Fi + Cellular, iPad 4 Wi-Fi, iPad 2 Wi-Fi, iPad Wi-Fi + 3G, iPad Wi-Fi, and iPad 2 CDMA) running iOS 9 or later; Apple portable media players (e.g., iPod Touch 5th Generation or later) running iOS 9 or later; Apple Mac computers (e.g., MacBook, MacBook Air, MacBook Pro, iMac, Mac mini) running OS X El Capitan or later; and Apple smart watches (e.g., Apple Watch, Apple Watch

Series 1, Apple Watch Series 2, Apple Watch Series 3) running watchOS 1 or later, paired with Apple smartphones (e.g., iPhone 4s, iPhone 5, iPhone 5c, iPhone 5s, iPhone 6, iPhone 6 Plus, iPhone 6s, iPhone 6s Plus, iPhone 7, iPhone 7 Plus, iPhone 8, iPhone 8 Plus, iPhone SE, and iPhone X) running iOS 8 or later.

(Dkt. No. 98-11, at 1.)  The inclusion of further descriptive and open ended language in addition to listing specific products helps Apple understand what is being accused.  As in any patent case, the listing of products will have to be updated to include later identified products, such as new Apple devices that are released after contentions are served.  The descriptive language, such as "running iOS 8 or later," informs Apple what future products might also be accused of infringement.  Therefore, the inclusion of descriptive and open ended language should not be stricken.

Apple has identified a few minor inconsistencies with respect to the '158 patent.  These can be easily cured.  Indeed, that is all the relief that Apple seeks regarding this particular objection.  Apple Br. at 18.

**C.   Uniloc Complies with Patent L.R. 3-1(D).**

Apple objects to Uniloc's description of Apple's activities that constitute indirect infringement.  This is not a serious objection.  Apple knows what acts are being accused, from Uniloc's complaints.  For example, the Amended Complaint for the '158 patent includes the following:

> Apple intentionally instructs its customers to infringe through training videos, demonstrations, brochures, and installation and user guides, such as those located at:
> www.apple.com, including:
> https://www.apple.com/ios/app-store/
> https://developer.apple.com/ios/
> https://support.apple.com/en-us/HT204989
> https://support.apple.com/en-us/HT202794
> https://developer.apple.com/app-store/product-page/
> https://www.apple.com/iphone-7/specs/
> www.youtube.com
> Apple also induces infringement by failing to remove or diminish infringing features of the Accused Devices.

(Doc. 64, at 3.)

> Apple has also infringed, and continues to infringe those same claims of the '158 patent by offering to commercially distribute, commercially distributing, or importing its Accused Devices and Accused Application, which apparatuses are used in practicing the processes, or using the systems, of the '158 patent, and constitute a material part of the invention. Apple knows portions of the software contained in the Accused Devices and Accused Application to be especially made or especially adapted for use in infringement of the '158 patent, and not a staple article, and not a commodity of commerce suitable for substantial noninfringing use.

(*Id*. at 4.) Each of the complaints for the '671, '134, and '127 patents include similar averments, including facts. Uniloc could easily include the same language from the complaint, or a reference thereto, in its infringement contentions. Regardless, Apple cannot say that it is not on notice of Uniloc's indirect infringement allegations.

### D. Uniloc Complied with Patent L.R. 3-1(E).

Apple objects to the way that Uniloc has alleged infringement under the doctrine of equivalents (DOE). Apple Br. at 18. In Apple's 5-sentence argument, it cites to a single case to support its argument. But that case states only that it is improper to assert DOE "as a placeholder for future discovery." Apple Br. at 18. That is not what Uniloc has done. Uniloc has disclosed its direct infringement theories by showing that every element of every asserted claim is *literally* present in Apple's accused devices or otherwise performed by Apple. There are no elements for which an assertion of DOE is presently necessary. Moreover, Uniloc is currently unaware of Apple's claim construction theories. It would be speculation by Uniloc to propose, at this point in the litigation, possible ways this Court's claim construction might affect Uniloc's direct infringement theories in order to proposed DOE theories. Uniloc should not have to speculate on DOE at this point in the litigation.

Additionally, the complaints in these actions also include an averment of infringement under DOE. For example, in the '127 complaint, Uniloc asserts the following:

> In addition, should use of the Accused Infringing Devices be found to not literally infringe the asserted claims of the '127 Patent, use of the Accused Infringing Devices would nevertheless infringe the asserted claims of the '127 Patent. More

specifically, the Accused Infringing Devices perform substantially the same function (providing user mobility services to a portable information device, such as an iPad, iPod and Mac), in substantially the same way (using a voice communication device, such as an iPhone), to yield substantially the same result (providing telephony capability to devices such as iPads, iPods and Macs). Apple would thus be liable for direct infringement under the doctrine of equivalents.

(Doc. 1, 5-6.)  Uniloc could easily include the same language from the complaint, or a reference to that language, in its infringement contentions.

### E. Apple's Motion to Strike Should Be Treated as a Motion to Compel Amendment.

"Motions to strike initial infringement contentions are frequently treaded as motions to compel amendment of said infringement contentions." *Comcast Cable Communications, LLC.*, Slip Op. at *6., citing *Geovector Corp*. at *7.  Striking Uniloc's infringement contentions with prejudice is unwarranted here because it is the first time that Apple has moved to strike them, and the identified issues appear to be curable with amendment. *Id*.

Apple provides no good reason at this point in the case to strike Uniloc's contentions with prejudice.  Apple has only recently made its source code available and Uniloc intends to file a motion for leave to amend when that review is complete.  At that point, it would be very easy to address Apple's objections, which, even if legitimate, are minor and appear to be easily curable by amendment.

As already described above, Apple makes only minor complaints about Uniloc's '158 patent, '671 patent, or '134 patent claim charts.  The information in the claim charts for these patents show every element of the claims.  However, to the extent that Apple's objections were to require attention, the above explanations could be added to the claim charts to make them even clearer.  Thus, at least for the '158, '671, or '134 patents, Apple's objections appear to be easily curable by amendment.

As described above, having reviewed the tardily produced source code and taking the deposition of Apple's software engineer, Uniloc is in possession of new evidence that will prove

infringement of the '127 patent. Uniloc will move for leave to amend the infringement contentions to add this new evidence.

### F. Apple Has not Been Prejudiced.

With respect to the "shootout," this Court has already disagreed that Apple would be prejudiced. (Dkt. 104.) As to Uniloc's selection, Apple has been in possession of Uniloc's claim chart for the '158 patent for approximately 6 months prior to its motion. During that time, Apple made no complaints about Uniloc's claim '158 patent chart. Also, Apple made no objection to Uniloc's contentions that Apple infringes claims 8 and 9 (the latter being selected by Uniloc for this Court's "shootout" proceeding) of the '158 patent. As described above, Uniloc's contentions with respect to the '158 patent clearly satisfy Patent L.R. 3-1, and Apple's objections to Uniloc's contentions for the '158 patent appear to be very minor and easily curable.

Apple has chosen claim 21 of the '127 patent for its selection for the "shootout." Some discovery has been taken with respect to this claim and the parties are in position to proceed. As noted above, Uniloc deposed at least one Apple witness on June 13, 2018, whose testimony confirms that Apple infringes. Uniloc's expert performed code review on and performed code review on May 24-25 and June 18-20. The delay in the source code review is attributable to Apple. Apple should have produced that source code on November 16, 2017, per E.D. Texas P. R. 3-4. Tollefson Dec. ¶6-7 and Ex. 4. All document production in these cases was scheduled to be done by March 19, 2018. *Id.* But not until April 16, 2018, five months after the deadline to do so, did Apple inform Uniloc its source code for these cases was available. Tollefson Dec., Ex. 5. That notice, however, was inaccurate, as Apple did not initially produce all source code relevant to Uniloc's contentions. For example, the Apple TV source code, relevant to the shootout, was not even collected until after May 29, 2018, and was not produced until June 19, 2018. Tollefson Dec. ¶6.

Pursuant to paragraph 2 of the Case Management Order (Dkt. No. 85), Uniloc voluntarily withdrew claims of the '422 patent. The '018 patent was found to be patent ineligible in another district court and is thus no longer being asserted here.

As described above, the disclosures for the '671 and '134 patents were satisfactory, and Apple's objections to Uniloc's contentions for these patents appear to be very minor and easily curable.

## V. CONCLUSION

Uniloc asks this Court to deny Apple's Motion to Strike. As an alternative to denying the motion outright, Uniloc asks that this Court treat Apple's motion as a motion to compel Uniloc to amend its contentions to address Apple's concerns.

Date: June 25, 2018

Respectfully submitted,

*/s/ James J. Foster*
James J. Foster
jfoster@princelobel.com
Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
617-456-8000

ATTORNEYS FOR THE PLAINTIFFS