James J. Foster
Aaron S. Jacobs (CA No. 214953)
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
617-456-8000
jfoster@princelobel.com
ajacobs@princelobel.com

Matthew D. Vella (CA No. 314548)
mvella@princelobel.com
PRINCE LOBEL TYE LLP
410 Broadway Avenue, Suite 180
Laguna Beach, CA 92651

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNILOC USA, INC., and<br>UNILOC LUXEMBOURG, S.A.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>　　　　　Defendant. | Case No.: 3:18-cv-00360-WHA<br>Case No.: 3:18-cv-00363-WHA<br>Case No.: 3:18-cv-00365-WHA<br>Case No.: 3:18-cv-00572-WHA<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, AND REPLY IN SUPPORT OF RULE 25 MOTION TO ADD UNILOC 2017 AS A PARTY**<br><br>**Date: Thursday, December 20, 2018**<br>**Time: 8:00 a.m.**<br>**Courtroom: 12, 19th Floor**<br>**Judge: Hon. William Alsup** |

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  UNILOC LUXEMBOURG HAD STANDING AT THE TIME OF FILING ...................... 2

    A.  The requirements of constitutional standing. ............................................................ 2

    B.  ███████████████████████████████ as Apple argues. .............................. 3

    C.  ████████████████████████████████████████████████ would not have deprived Uniloc Luxembourg of constitutional standing. ................ 4

        1.  The background of the *Mann* case. .............................................................. 4

        2.  The *Mann* case explained that there is always a CATEGORY ONE plaintiff. ........................................................................................................ 5

III.  UNILOC 2017 OBTAINED CONSTITUTIONAL STANDING AFTER THE MAY 2018 TRANSACTIONS. ........................................................................................................ 8

IV.  APPLE'S CHALLENGES TO UNILOC 2017'S STANDING WILL BE ELIMINATED BY TERMINATION OF THE UNILOC USA LICENSE. .................................................. 10

V.  THIS CASE SHOULD NOT BE DISMISSED ..................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Alfred E. Mann Found. for Sci. v. Cochlear Corporation*,
  604 F.3d 1354 (Fed. Cir. 2010) ............................................................................... passim
*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006) ........................................................................................ 6
*AsymmetRx, Inc. v. Biocare Med., LLC*,
  582 F.3d 1314 (Fed. Cir. 2009) ........................................................................................ 3
*Azure Networks, LLC v. CSR PLC*,
  771 F.3d 1336 (Fed. Cir. 2014) ........................................................................................ 4
*Caterpillar Inc. v. Lewis*,
  519 U.S. 61 (1996) .......................................................................................................... 10
*City of Los Angeles v. County of Kern*,
  581 F.3d 841 (9th Cir. 2009) ............................................................................................ 2
*Fairchild Semiconductor Corp. v. Power Integrations, Inc.*,
  630 F.Supp. 2d 365 (D. Del. 2007) .................................................................................. 5
*In re Lone Star Silicon Innovations LLC*,
  No. C 17-03980-WHA, 2018 WL 500258 (N.D. Cal. Jan. 20, 2018) ............................. 7
*Insituform Technologies, Inc. v. Cat Contracting, Inc.*,
  385 F.3d 1360 (Fed. Cir. 2004) ...................................................................................... 10
*Keene Corp. v. United States*,
  508 U.S. 200 (1993) .......................................................................................................... 1
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 2
*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
  814 F.3d 1343 (Fed. Cir. 2016) ................................................................................ 3, 7, 8
*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
  240 F.3d 1016 (Fed. Cir. 2001) ................................................................................. 4, 11
*Morrow v. Microsoft Corp.*,
  499 F.3d 1332 (Fed. Cir. 2007) ............................................................................. 2, 3, 4, 6
*Prima Tek II, L.L.C. v. A-Roo Co.*,
  222 F.3d 1372 (Fed. Cir. 2000) ................................................................................ 2, 3, 7
*Propat Intern. Corp. v. RPost, Inc.*,
  473 F.3d 1187 (Fed. Cir. 2007) ........................................................................................ 2
*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
  402 F.3d 1198 (Fed. Cir. 2005) ............................................................................... 1, 2, 10
*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ........................................................................................ 4
*Warth v. Seldin*,
  422 U.S. 490 (1975) .......................................................................................................... 2
*WiAV Solutions LLC v. Motorola Inc.*,
  631 F.3d 1257 (Fed. Cir. 2010) ................................................................................ 3, 7, 8

**Statutes**

35 U.S.C. § 281 ..................................................................................................................... 2

**Other**

Rule 25(c) .................................................................................................................... 9, 11

## I. INTRODUCTION

Apple moves ("Mot.") to dismiss these actions[1] for lack of subject matter jurisdiction, claiming neither Uniloc Luxembourg nor Uniloc USA had constitutional standing between May 26 and August 2, 2017, when those entities filed these actions. Apple is wrong.

Indeed, Apple is not arguing these entities were the wrong plaintiffs, or that someone else was better situated to file suit. Rather, Apple is arguing that during that period *no one* could bring suit on these patents. The absurd result Apple is seeking – that no one be allowed to sue on any of Uniloc Luxembourg's patents – was foreclosed by *Alfred E. Mann Found. for Sci. v. Cochlear Corporation*, 604 F.3d 1354 (Fed. Cir. 2010) ("*Mann*"). Here, it is uncontroverted that Uniloc Luxembourg had standing at the time of filing.

Where, as here, either plaintiff had constitutional standing at filing, then the Court has jurisdiction, under the time-of-filing rules. *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (there is a "longstanding principle that the 'jurisdiction of the Court depends upon the state of things at the time of the action brought'") (internal citations omitted); *Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1202 n.3 (Fed. Cir. 2005).

Apple also seeks dismissal on alternate, albeit nonjurisdictional, grounds, that currently no one has constitutional standing to maintain these actions. As to Uniloc 2017, that argument is also foreclosed by *Mann*, and thus the Court should grant Plaintiffs' pending Rule 25 Motion, Dkt. No. 119, to substitute Uniloc 2017 for Uniloc Luxembourg. And, as to Uniloc USA, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In sum, there are no factual bases for Apple's motion, and it should be denied.

---

[1] This Opposition is being filed in all four actions. Citations in this Opposition to docket entries correspond to numbers in the -360 action.

## II. UNILOC LUXEMBOURG HAD STANDING AT THE TIME OF FILING

### A. The requirements of constitutional standing.

Bringing a patent action requires the plaintiff(s) have both constitutional and prudential[2] standing. *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-77 (Fed. Cir. 2000). Apple has limited its motion to arguing a lack of constitutional standing, which requires a party to have suffered an injury in fact from the defendant's infringement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

As to constitutional standing, those who might file an infringement action can be divided into three categories: CATEGORY ONE is a person with constitutional standing to sue in his own name alone. He is usually referred to in judicial opinions as the "owner," "effective owner," or "assignee" of the patent, or as an "exclusive licensee" who has received "all substantial rights" from the owner. His standing derives from the Patent Act, which provides a "patentee" is entitled to bring a civil action "for infringement of his patent." 35 U.S.C. § 281. "Patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). Those provisions of the Patent Act have been interpreted to require an infringement suit "ordinarily be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007). The exception would be where the party holding legal title transfers "substantially all rights" in the patent to another, in which case the transferee obtains CATEGORY ONE status. *Id.*

CATEGORY TWO is a person who has some exclusionary rights in the patent, but not enough to qualify as CATEGORY ONE. He is most often referred to in judicial opinions as an "exclusive licensee" who has not received "all substantial rights." *See, e.g.*, *Prima Tek*, 222 F.3d at 1377. He has constitutional standing, but principles of prudential standing usually require him to

---

[2] Prudential standing requires all persons having a sufficient interest in the patent be named as parties. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340 (Fed. Cir. 2007). As the requirement is not jurisdictional, a defect can be cured by adding the missing party. *See*, *e.g.*, *Schreiber Foods,* 402 F.3d at 1203. But, as Apple has not raised prudential standing, this Opposition will not discuss it further.

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION | 2 | CASE NOS. 3:18-CV-00360-WHA; -00363-WHA; -00365-WHA; -00572-WHA |
|---|---|---|

join, as a co-plaintiff, the person with CATEGORY ONE status as to that patent. *Id.*; *WiAV Solutions LLC v. Motorola Inc.*, 631 F.3d 1257, 1264-65 (Fed. Cir. 2010); *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1350 (Fed. Cir. 2016).

CATEGORY THREE is a person who does not fall into either CATEGORY ONE or TWO, and thus has no constitutional standing. *Prima Tek*, 222 F.3d at 1377.

In any given case, the language in the underlying documents describing the transaction, or in the opinion describing the parties, may not accurately reflect the distribution of rights. *See*, *e.g.*, *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1318 (Fed. Cir. 2009) (whether document was assignment or license "did not depend on the name applied to it"); *Morrow*, 499 F.3d at 1340 n.7. For example, a document titled as an "assignment" may not transfer sufficient rights to give the assignee CATEGORY ONE status; conversely, a document titled only as a "license" may transfer sufficient rights to constitute an assignment, thus conferring CATEGORY ONE status. Or, a document granting what it refers to as an "exclusive license" may contain limitations on exclusivity that preclude CATEGORY TWO status. Or, someone may be referred to in an opinion as the "owner," even after he assigned the patent, where he received a license back from the assignee.

To avoid confusion, wherever possible this Opposition will use the above CATEGORY designations to describe the parties to standing disputes.

**B.** ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Before these actions were filed, the former owners of these patents (collectively, "HPE") assigned the patents and all substantial rights under them to Uniloc Luxembourg. Dkt. Nos. 120, 135-12. Thus, as of the actions' filing dates, Uniloc Luxembourg was the legal owner of the patents and would seemingly have been a CATEGORY ONE plaintiff.[3]

Apple argues, however, Uniloc Luxembourg was not a CATEGORY ONE plaintiff, because it had given a lender ("Fortress") a security interest, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[3] Uniloc Luxembourg entered into an agreement with Uniloc USA giving the latter an exclusive license, making Uniloc USA a CATEGORY TWO plaintiff.

1. ███████████████████████████████████████
2. ███████████████████████████████████████
3. ███████████████████████████████████████
4. ██████████████ deprived Uniloc Luxembourg of CATEGORY ONE status. Not so.
5. ████████ ███████████████████████████
6. ███████████████████████████████████████
7. ███████████████████████████████████████
8. ███████████████████████████████████████
9. ███████████████████████████████████████
10. ███████████████████████████████████████
11. ████████████████████████████████████
12. ███████████████████████████████████
13. █████████████████

**C.** ███████████████████████████████████ ██████ **would not have deprived Uniloc Luxembourg of constitutional standing.**

### 1. The background of the *Mann* case.

Most patent cases in which the issue of standing is discussed at the appellate level have a familiar pattern. The person to whom the patent was issued or assigned (usually referred to as the "owner") grants an "exclusive" license to another person. The court then examines the rights the license transferred, to determine whether those rights are sufficiently exclusive to give the recipient constitutional standing, and whether the patent rights the "owner" had retained require it to be named as a co-plaintiff (the latter being a question of prudential, not constitutional, standing). *See*, *e.g.*, *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001); *see also Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245 (Fed. Cir. 2000); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1342 (Fed. Cir. 2014). But, there is generally always a CATEGORY ONE plaintiff or co-plaintiff, either already in the case or potentially to be named.

In September 2007, the Federal Circuit issued *Morrow*, which had a somewhat different fact pattern. In that case, the entity that had been the patent owner (AHC) went bankrupt and went out

of business. In the bankruptcy, the various creditor groups agreed to distribute differing portions of the rights in the patent to three separate entities. The court ruled the named plaintiff (GUCLT), the one of those three entities to which the creditors had given the right to sue, was a CATEGORY THREE plaintiff, and thus did not have constitutional standing.

Following that decision, there was a concern in the patent bar that the principles discussed in the opinion, if later extended beyond the case's holding in a bankruptcy context, might result in *no one* having constitutional standing to bring suit on a patent, depending upon how the various rights had been divided up. (Indeed, a district court seemed to have accepted that possibility. *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, 630 F.Supp. 2d 365, 371 (D. Del. 2007)). Because that result would be unsatisfactory (and presumably unintended), the bar expected the Federal Circuit to clarify that issue, in some future case. *Mann* was that case.

**2.    The *Mann* case explained that there is always a CATEGORY ONE plaintiff.**

In *Mann*, the patents, when issued, were assigned to AMF. AMF later gave certain rights to a separate entity, AB, and retained others. AMF then sued Cochlear, which moved to dismiss for lack of constitutional standing, claiming AMF had not retained sufficient rights to be a CATEGORY ONE plaintiff.

The opinion describes the relevant principles in terms of a transfer of rights from an owner/licensor who, before the transfer, had possessed all substantial rights in the patent (and thus had CATEGORY ONE status) to an "exclusive licensee." Relevant to Apple's motion, *Mann* held:

> A patent owner may transfer all substantial rights in the patent-in-suit, in which case the transfer is tantamount to an assignment of those patents to the exclusive licensee, conferring standing to sue solely on the licensee. . . . [¶] This happens when the exclusive license transfers "all substantial rights" in the patents. When this happens, the exclusive licensee has sole standing to sue those suspected of infringing the patents' claims. . . . This case presents a . . . scenario in which the patent owner seeks to bring suit, requiring us to determine whether the patent owner transferred away sufficient rights to divest it of any right to sue.
>
> * * *
>
> [A] patent may not have multiple separate owners for purposes of determining standing to sue. Either the licensor did not transfer "all substantial rights" to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer

> "all substantial rights" to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own. In either case, *the question is whether the license agreement transferred sufficient rights to the exclusive licensee to make the licensee the owner of the patents in question. If so, the licensee may sue but the licensor may not. If not, the licensor may sue, but the licensee alone may not*.

604 F.3d at 1358-60 (citations omitted) (emphasis added). This portion of *Mann* resolves the lingering issue from *Morrow*, by eliminating the scenario where *no one* has standing to sue on a given patent.

The opinion establishes a default rule: Once someone possesses sufficient rights to qualify as the sole CATEGORY ONE plaintiff, he maintains that status unless and until he transfers "all substantial rights" to another, after which that other becomes the CATEGORY ONE plaintiff. In a situation where "all substantial rights" are divided between two persons, with neither person having "all substantial rights," CATEGORY ONE status remains with whomever had it before the division.

Here, the HPE entities transferred *all* of the patent rights to Uniloc Luxembourg. That transfer gave Uniloc Luxembourg CATEGORY ONE status. At the time of filing, Uniloc Luxembourg thus had standing. Apple does not argue Uniloc Luxembourg transferred its CATEGORY ONE status ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ could not have deprived Uniloc Luxembourg of its CATEGORY ONE status.

Reinforcing *Mann* are several Federal Circuit cases that found a person with CATEGORY ONE status maintains that status, despite having transferred a right to sublicense:

In *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006), the action was filed by Contour, the original owner of the patent (and thus the original holder of CATEGORY ONE status). The court held Contour maintained its CATEGORY ONE status, despite having transferred to another person "the exclusive right to make, use, and sell" products covered by the patent and a "virtually unfettered right to sublicense all of its rights to a third-party,"

and Contour "retained 'no supervisory power or veto power'" over that person's grant of sublicenses.

In *Assymetrix*, the original owner (Harvard) was held to have CATEGORY ONE status, even though it had transferred to a licensee (Assymetrix) the right to grant sublicenses. 582 F.3d at 1316.

In *Prima Tek*, the original owner (Southpac) was held to have maintained its CATEGORY ONE status, even though another person (Prima Tek II) had a right to grant additional licenses. 222 F.3d at 1375.

And in *Mann* itself, the original owner (AMF) retained its CATEGORY ONE status, even though it had transferred to an exclusive licensee (AB) a right to grant sublicenses. 604 F.3d at 1362.

Apple bases its argument – a person cannot be a CATEGORY ONE plaintiff if another person has a right to license – on dicta from *WiAV*, 631 F.3d at 1266. Mot. at 13. But, that case did not present the issue here, which is determining what defines CATEGORY ONE status. There, WiAV had already added the CATEGORY ONE entity (referred to in that opinion as the "patent owner") as an involuntary defendant, to obviate any prudential standing issue. *Id.* at 1265 n.1. Rather, WiAV claimed standing as a CATEGORY TWO plaintiff, as the holder of an *exclusive* license to the relevant patents. Because CATEGORY TWO status requires exclusivity, the issue was whether another's right to license those patents deprived plaintiff of its exclusivity, and thus of its CATEGORY TWO status.[4]

Apple cites similar dicta from *Luminara*, 814 F.3d at 1348. Mot. at 12-13. In that case, a nonparty, Disney, owned the patent and, before granting an exclusive license to Candella, Luminara's predecessor, thus had CATEGORY ONE status. The question for the court was whether the exclusive license transferred "all substantial rights" from Disney to Candella, giving

---

[4] This Court has previously distinguished *WiAV Solutions* on the same basis, namely, that opinion was examining "the standing of *exclusive licensees* to sue based on their *exclusionary rights*, not the standing of *assignees* to sue based on receipt of *all substantial rights* in the patents-in-suit." *In re Lone Star Silicon Innovations LLC*, No. C 17-03980-WHA, 2018 WL 500258 (N.D. Cal. Jan. 20, 2018).

| PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION | 7 | CASE NOS. 3:18-CV-00360-WHA; -00363-WHA; -00365-WHA; -00572-WHA |
|---|---|---|

Candella, instead of Disney, CATEGORY ONE status. Defendant argued Disney's retention of the right to license certain of its affiliates rendered the transfer insufficient to bestow CATEGORY ONE status on Candella. In that context, the court said that if Disney were free to license "any" entity, "all substantial rights" would not have been transferred. *Id.* But the court found Disney had not retained that right.

*Luminara* actually supports Plaintiffs' position by suggesting, albeit in dicta, that where two persons simultaneously have the right to license, CATEGORY ONE status is retained by whomever had it before that situation arose. Neither *WiAV* or *Luminara* conflicts with the default rule of *Mann*, under which a person who has CATEGORY ONE status would retain that status unless and until he transfers "all substantial rights" to another.

The Federal Circuit did not arrive at this default rule arbitrarily. The rule has considerable significance to patent litigation and the law of patents generally. A holding that *no one* has standing to enforce a patent, the result for which Apple is unabashedly arguing, would have profound implications, all of which are negative. The *Mann* rule should be followed here, and Apple's argument should be rejected.[5]

### III. UNILOC 2017 OBTAINED CONSTITUTIONAL STANDING AFTER THE MAY 2018 TRANSACTIONS.

In a series of related transactions in May 2018, Uniloc Luxembourg transferred its entire interest in the patents to Uniloc 2017. Dkt. No. 135-14. Apple acknowledges the May 2018 transactions ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. at 6. By virtue of those transactions, under *Mann*, Uniloc 2017 acquired CATEGORY ONE status, and thus constitutional standing. By the same token, Uniloc Luxembourg lost its constitutional standing.

---

[5] Apple does not discuss this aspect of *Mann* in its Motion, even though the decision appears to control the issue the Motion presents. This Court expects a moving party to discuss all relevant issues in its original motion, not to hide the ball until its reply memorandum. If Apple has an argument why *Mann* does not apply (Plaintiffs see none), that argument should have been presented in the Motion, so it could have been answered. If Apple presents a responding argument in its reply brief, Plaintiffs may request leave to file a surreply.

1  As the May 2018 transaction deprived Uniloc Luxembourg of its constitutional standing,
2 Plaintiffs moved under Rule 25(c) to substitute Uniloc 2017 as a plaintiff.  Dkt. No. 119.  Apple
3 does not appear to dispute that when a CATEGORY ONE plaintiff assigns all substantial rights in a
4 patent to another person during the litigation, Rule 25(c) is the proper vehicle to add or substitute
5 the new CATEGORY ONE party.

6  Apple, however, argues Uniloc 2017 lacks constitutional standing (and thus cannot be added
7 or substituted into the action) because ▮
8 ▮
9 ▮ [6] Mot. at 18-21.  But, Apple does not argue the rights
10 Uniloc 2017 granted constituted "all substantial rights."  To the contrary, Apple argues the rights
11 were not even sufficient ▮ Mot. at 19-20.  Thus, under *Mann*,
12 because Uniloc 2017 did not transfer "all substantial rights" ▮ Uniloc 2017 maintains
13 its CATEGORY ONE status, and thus can be added or substituted into the actions as a plaintiff.[7]
14  Apple also argues Uniloc 2017's granting certain rights to ▮ impairs Uniloc 2017's
15 CATEGORY ONE status.  The granted rights were those designed to protect ▮
16 ▮
17 ▮[8].  Apple does not argue Uniloc 2017 transferred "all substantial

---

[6] ▮

[7] ▮

[8] Apple argues ▮

Apple also argues ▮

rights" to ▇▇▇▇. Thus, under *Mann*, Uniloc 2017 maintains its CATEGORY ONE status, and can be added or substituted into the action as a plaintiff.

## IV. APPLE'S CHALLENGES TO UNILOC 2017'S STANDING WILL BE ELIMINATED BY TERMINATION OF THE UNILOC USA LICENSE.

As discussed in the initial sections of this Opposition, Uniloc Luxembourg had constitutional standing as a CATEGORY ONE plaintiff (and Uniloc USA as a CATEGORY TWO plaintiff) at the time these actions were filed. As Plaintiffs had standing at the time of filing, this Court had subject matter jurisdiction then, and retains jurisdiction for the duration of the action.

As discussed in the preceding section, Uniloc 2017 obtained, and continues to maintain, constitutional standing. This Court should, therefore, reject Apple's arguments on the merits.

But if the 2018 transactions had created a constitutional standing problem, the problem would not have been jurisdictional. The problem thus could (and should) be corrected without dismissal, and refiling, of the action, but rather within the confines of the existing action. *Schreiber*, 402 F.3d at 1203; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996); *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 385 F.3d 1360, 1371-72 (Fed. Cir. 2004).

Recognizing that, and to eliminate any objection to Uniloc 2017's standing, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

When those documents are executed, Apple will have no remaining basis for objecting to the standing of Uniloc 2017 and to the substitution of Uniloc 2017 for Uniloc Luxembourg in these actions.

## V. THIS CASE SHOULD NOT BE DISMISSED

Apple asks this Court, if it dismisses the action for lack of standing, to dismiss the action with prejudice, as some sort of sanction. But, for the reasons discussed above, Uniloc 2017 has standing, and thus the Court would not dismiss the action. And even, where a court finds a problem

with the standing of a particular plaintiff, a dismissal should always be *without* prejudice if the problem is capable of correction. *Mentor H/S*, 244 F.3d at 1373.

The legal and factual merits of Plaintiffs' position on standing are amply stated in this Opposition. Plaintiffs reject Apple's allegations of "conceal[ment]," "false represent[ations]" or "false allegations," a "licensing scheme," "discovery misconduct," "plan[ning] to induce the Court," and similar invective. Mot. at 22-24. Plaintiffs will address this form of advocacy at the hearing of this motion.

Apple's jurisdictional argument is based on a factual premise – t███████████ ███████████████████████████ – that no one would have agreed with at the time, or since. *See* Palmer Decl. ███████████████████████ ███████████████████ Equally important is that under the law (discussed thoroughly above) ███████████ would not have affected Uniloc Luxembourg's standing; nor is there any evidence anyone at Uniloc Luxembourg would have harbored that belief. Until Apple filed its motion on October 25, no one at Plaintiffs (or representing Plaintiffs) would have seen any plausible argument that Uniloc Luxembourg lacked standing at the time it filed these actions.

Thus, Apple's histrionic reference to Plaintiffs' having a "licensing scheme" that divested the court of jurisdiction is wrong, for the various reasons elaborated above.

The transfer of ownership of the patents from Uniloc Luxembourg to Uniloc 2017 could not have affected the Court's jurisdiction, for the reasons described above. Nor was it concealed: the transfer was publicly recorded in the Patent Office shortly after it occurred. Further, the transfer was reported to Apple, and defendants in all of the other Uniloc Luxembourg patent litigations. But no motion was filed in these (or other) actions immediately, because Rule 25(c) provides: "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or join with the original party." It

seems that where the action is continued by the original party, the result is binding on the transferee. In any event, although perhaps not necessary to do so, Plaintiffs decided to file a motion to add Uniloc 2017, which they did.

Apple alleges Plaintiffs "misrepresented" the rights and interests in the patents, when they moved for leave to file a red-lined Second Amended Complaint on May 16 in the -359 action, without changing the named plaintiffs.  Mot. at 24.  In truth, the attorney that drafted that Second Amended Complaint had simply been unaware of the May 5 transactions.  After litigation counsel became aware of the transactions, newly filed cases identified Uniloc 2017 as a plaintiff.

Date:  November 12, 2018                    Respectfully submitted,

                                            */s/ Aaron S. Jacobs*
                                            James J. Foster
                                            Aaron S. Jacobs (CA No. 214953)
                                            **PRINCE LOBEL TYE LLP**
                                            One International Place, Suite 3700
                                            Boston, MA 02110
                                            Tel: (617) 456-8000
                                            jfoster@princelobel.com
                                            ajacobs@princelobel.com

                                            Matthew D. Vella (CA No. 314548)
                                            mvella@princelobel.com
                                            PRINCE LOBEL TYE LLP
                                            410 Broadway Avenue, Suite 180
                                            Laguna Beach, CA 92651