Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (*pro hac vice*)
Jennifer Greenblatt (*pro hac vice*)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (*pro hac vice*)
Emma C. Ross (*pro hac vice*)
Lauren Abendshien (*pro hac vice*)
Shaun Zhang (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eross@goldmanismail.com
labendshien@goldmanismail.com
szhang@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

(Additional counsel listed in signature block)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNILOC USA, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Case Nos.    3:18-cv-00360-WHA <br>               3:18-cv-00363-WHA <br>               3:18-cv-00365-WHA <br>               3:18-cv-00572-WHA <br><br> **DEFENDANT APPLE INC.'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE ORDER DENYING APPLE'S MOTION TO DISMISS** <br><br> JUDGE: Hon. William Alsup |

1    **I.      INTRODUCTION**

2          Apple's Motion to Dismiss (Dkt. No. 134) argued that Plaintiffs lacked standing to sue

3    Apple for patent infringement because they had defaulted repeatedly on a financing agreement with

4    their lender, Fortress. These defaults stripped Plaintiffs of the right to exclude Apple from

5    practicing the asserted patents. Plaintiffs never contended that they had cured these defaults; they

6    argued instead that the defaults never existed because neither they nor Fortress believed that any

7    event of default had occurred. The Order denying Apple's Motion, however, found that "Fortress's

8    conduct and representations . . . amount[ed] to a cure" of any default that may have existed. (Dkt.

9    No. 164-2, p. 7) (emphasis omitted).

10         Because Plaintiffs did not argue that there was any default to cure, the full record of facts,

11   arguments, and authority relevant to this issue were not presented to the Court or considered in the

12   Order. These facts and authorities show that:

13        •   Plaintiffs defaulted on each of March 31 and June 30, 2017. The Order relied
14            on events from on or before May 15, 2017, to conclude that all defaults had
              been cured. But, even assuming that the May 2017 events cured the preceding
15            default events, they could not have cured the subsequent June 2017 default—
              which occurred before Plaintiffs filed three of their cases—and nothing in the
16            record suggests that the June 2017 default was indeed cured;

17        •   As a matter of law, a "cure" requires action by a breaching party to fix the
18            breach. There is no evidence to support a conclusion that Plaintiffs took, or
              even tried to take, any such action here. Rather, the evidence establishes that
19            Plaintiffs never cured the revenue shortfalls that triggered their defaults; and

20        •   While the Order concludes that Fortress's continued business dealings with
21            Plaintiffs are evidence that a cure must have occurred, explicit contractual
              provisions established that Fortress's apparent acquiescence could not be used
22            as evidence that Fortress had relinquished its rights in the event of a default.

23         Plaintiffs cannot now brush off their defaults as technicalities that can be excused by an

24   after-the-fact "we didn't mean it after all." The provisions on which Plaintiffs defaulted provided

25   key protections that Fortress relied on when parting with tens of millions of dollars. Fortress kept

26   these provisions in the agreement through multiple amendments, underscoring that the provisions—

27   and breaches of them—mattered. And there is no contemporaneous evidence—no writings, no

28   emails, no agreements, nothing—that Fortress viewed these defaults as excusable or acceptable at

1   the time they occurred. That story emerged only after the loan was discharged, when there was

2   nothing to be lost, and much to be gained, from a reinterpretation of events where Plaintiffs'

3   defaults were now considered cured.

4       Apple's underlying motion goes to the threshold and dispositive constitutional issue of

5   standing. Because neither side argued that the defaults had or had not been cured, and because of

6   the importance of this issue, Apple respectfully requests leave to file a motion for reconsideration.

7   **II.    LEGAL STANDARDS**

8       In this District, a party must obtain leave to file a motion for reconsideration. Civil L.R.

9   7-9(a). Under Local Rule 7-9(b), the moving party must show reasonable diligence in bringing the

10  motion and at least one of the grounds for reconsideration as set forth in that Rule. Under Local

11  Rule 7-9(b)(1), for example, a party may show that "a material difference in fact or law exists from

12  that which was presented to the Court," provided that the party "did not know such fact or law at

13  the time of the interlocutory order." Courts in this District have granted leave on this basis where

14  the party did not know the legal relevance of a fact even if it knew of the fact itself. *Sebastian*

15  *Brown Prods., LLC v. Muzooka, Inc.*, No. 15-CV-01720-LHK, 2016 WL 8114190, at *3 (N.D. Cal.

16  July 5, 2016) (granting leave to seek reconsideration even though party "could have presented this

17  evidence" in its motion). A party may also seek leave to file a motion for reconsideration based on

18  "[a] manifest failure by the Court to consider material facts or dispositive legal arguments which

19  were presented to the Court." L.R. 7-9(b)(3). The Court is not bound by the parameters of Rule

20  7-9(b), however, and has the discretion to grant leave to seek reconsideration on other grounds.

21  *McDonald v. Indymac Mortg. Servs.*, No. C 12-4610 MMC, 2013 WL 3491051, at *2 (N.D. Cal.

22  July 11, 2013).

23  **III.   ARGUMENT**

24      The Court's January 17 Order concluded that all of Plaintiffs' defaults had been cured

25  pursuant to Section 7.3(y) of the Revenue Sharing Agreement. (Dkt. No. 164-2, pp. 6–7.) Plaintiffs,

26  however, argued that there was never a default and therefore never addressed whether a cure had

27  occurred. As a result, the true state of the relevant facts, and law applicable to them, differ

28  materially from that presented in the Order. For the same reason, the Order did not consider

relevant facts that were of record. Apple therefore seeks leave to file a motion for reconsideration of that Order. Apple has been diligent in seeking leave, as less than a month has passed since the Court issued the Order.

### A. The Order Did Not Consider Material Facts Showing That The June 2017 Event of Default Was Never Cured

In its motion to dismiss, Apple presented undisputed evidence that two Events of Default occurred, both on March 31, 2017, and on June 30, 2017. (Dkt. No. 134-4, pp. 4, 11.) Section 6.2.2 of the Revenue Sharing Agreement required Plaintiffs to realize a certain amount of income, in separate periods of time, ending on each of those dates. (Dkt. No. 134-7.) And as of each of those dates, Plaintiffs had failed to generate the required revenue amount. (*Id.* at Schedule § 4.5(a); Dkt. No. 134-13, Disclosure Schedules at -16839, -16849.) Plaintiffs thus triggered independent Events of Default on each of those dates.

Relying solely on the declaration of James Palmer, the Order concluded that *all* Events of Default had been cured. (Dkt. No. 164-2, p. 7.) But the purported evidence of cure in the Palmer declaration, as cited in the Order, concerns only events leading up to Fortress's execution of the Third Amended Agreement on May 15, 2017. (*Id.* at 6–7; Dkt. No. 141-7, ¶¶ 9–12.) The Order found, for instance, that the fact that "Fortress chose to execute a third amendment to the Revenue Sharing Agreement . . . on May 15, 2017 . . . indicates that plaintiffs cured the purported default." (Dkt. No. 164-2, p. 6; *see also id.* ("Again, the fact that Fortress executed the third amendment to the agreement [on May 15] in spite of this knowledge . . . shows that plaintiffs had cured that alleged default.").)

These pre-June 2017 events could not have cured the June 2017 default for the simple reason that it had not yet taken place. Further, the Revenue Sharing Agreement specifically forecloses any argument that curing the March 2017 default somehow prospectively cured the June 2017 one. Specifically, Section 7.3 of the Revenue Sharing Agreement states that no cure or waiver "shall prevent the occurrence of, or effect a waiver with respect to, any subsequent Event of Default or impair any rights of the parties hereto upon the occurrence thereof." (Dkt. No. 134-7, § 7.3.) Thus, even if the March 2017 default were cured based on actions taken by May 15, 2017, those

1   actions could not also have cured the yet-to-occur June 2017 default.

2          Rather, the June 2017 default could be found to have been cured only if there were evidence

3   from after June 30, 2017, showing such a cure. The record does not contain any such evidence.

4   Only once does Mr. Palmer describe events from after May 15 of that year: In paragraph 8 of his

5   declaration, he asserts that Fortress was satisfied that Plaintiffs "diligently pursue[d] monetization,"

6   "provide[d] regular updates to Fortress," and "consult[ed] with Fortress as to Uniloc's activities if

7   requested" through August 2, 2017. (Dkt. No. 141-7, ¶ 8.) But these activities were required by

8   Section 6.2.1—a covenant that is both separate from and in addition to the revenue requirement of

9   Section 6.2.2. (Dkt. No. 134-7, § 6.2.1.) Mr. Palmer's claim in paragraph 8 is simply a statement

10  that Plaintiffs did not breach Section 6.2.1 of the Revenue Sharing Agreement. His declaration is

11  conspicuously silent as to Plaintiffs' compliance with, or efforts to cure their breach of, the revenue

12  requirement of Section 6.2.2 after May 15, 2017. (Dkt. No. 141-7, ¶ 8.)

13         The separate importance of the June 2017 default was not a focus of the parties' briefing

14  because Plaintiffs uniformly argued that they were unaware of a default having occurred at all, not

15  that a default had occurred but had ultimately been cured. Plaintiffs' Rule 30(b)(6) witness did not

16  identify any cure of any Event of Default under Section 7.3(y) or (z) at any time:

17         Q. Are you aware of any instance where an event of default was cured to the
18         reasonable satisfaction of the major purchasers?

19         A. I am not aware of an event of default.

20         Q. Are you aware of any instance where an event of default was in existence but
21         then ceased to exist?

22         A. I am not aware of any such event.

23         Q. Clause (Z) refers to an amendment to the agreement that cures an event of
           default. Do you see that?

24         A. I do.

25         Q. Are you aware of any amendment to this agreement that cures an event of
26         default?

27         A. No.

28  (Dkt. No. 134-10, Levy Dep. at 90:2–15.).

1    Similarly, in opposition to Apple's motion, Plaintiffs never argued that the March 2017
2    default had been cured. Instead, Plaintiffs argued only that no party believed or realized a default
3    had occurred: "At the time these actions were filed, however, Fortress did not view or treat Uniloc
4    as having defaulted, and did not believe it had a right to sublicense any Uniloc's patents." (Dkt. No.
5    141-6, p. 4.) Thus, rather than argue that any default had been cured to Fortress's satisfaction,
6    Plaintiffs' opposition argued that Fortress did not think there *was* a default.

7    The Order adopted an argument Plaintiffs did not brief. In particular, the Order assumed that
8    Fortress viewed Plaintiffs as having defaulted, and found that the default(s) had been cured. (Dkt.
9    No. 164-2, p. 6.) Because Plaintiffs did not argue that the March 2017 default had ever been cured,
10   Apple had no reason to explain to the Court how that argument was both contrary to Plaintiffs'
11   30(b)(6) testimony and foreclosed by the provisions of the Revenue Sharing Agreement cited
12   above.

13   The existence of the June 2017 default is relevant because it independently deprived
14   Plaintiffs of standing to bring three of the pending suits, each of which was filed in the five weeks
15   after June 30, 2017. *See* Case No. 3:18-cv-00363-WHA, Dkt. No. 1 (filed July 12, 2017); Case No.
16   3:18-cv-572, Dkt. No. 1 (filed July 12, 2017); Case No. 3:18-cv-365, Dkt. No. 1 (filed August 2,
17   2017). When those actions were filed, Fortress was still vested with an unfettered right to grant
18   sublicenses to the patents-in-suit. The Order's conclusion that "no relevant event of default existed
19   at the time plaintiffs filed the suits" (Dkt. No. 164-2, p. 7) is therefore incorrect, and the Court
20   should grant Apple leave to file a motion for reconsideration on this ground.

21   **B.     The Events At Issue Were Not a Cure By Definition**

22   Because Plaintiffs never argued that a cure had taken place, Apple had no reason to provide
23   the Court with the relevant facts, and applicable law, governing what could or could not constitute a
24   cure. The relevant law and facts here differ materially from what was presented to the Court, and
25   they show that the events described in the Order cannot constitute a cure as a matter of law.

26   / / /
27   / / /
28   / / /

1)  <u>Plaintiffs Did Not Cure Any Event Of Default Under The Meaning Of That Term</u>

The Revenue Sharing Agreement uses the term "cure" but does not define it. The term is therefore given its plain meaning. *Bank of New York Mellon Trust Co., Nat. Ass'n v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629, 649 (S.D.N.Y. 2012). "Curing a default commonly means taking care of the triggering event and returning to pre-default conditions." *In re Taddeo*, 685 F.2d 24, 26–27 (2d Cir. 1982); *see also Bank of New York*, 910 F. Supp. 2d at 649 ("Cure is defined as '[t]o remove legal defects or correct legal errors.'" (citing Black's Law Dictionary 439 (9th ed.2009)) (alteration in original). The Revenue Sharing Agreement uses cure consistently with its plain meaning. Specifically, the agreement refers to an Event of Default that is "cured . . . or otherwise ceases to exist." (Dkt. No. 1347, § 7.3(y).) Thus, in order to have cured an Event of Default, Plaintiffs must have taken action to fix each of their revenue shortfalls such that those shortfalls no longer existed.

Here, Plaintiffs submitted no evidence that they fixed either of the March or June 2017 defaults. There is no evidence that Plaintiffs ever generated the required quarterly revenue amounts or took any steps at any time to remedy their events of default. Indeed, Plaintiffs claim that they did not even realize that they had defaulted: whether an Event of Default had occurred did not "even cross[] the mind of anyone at Fortress or Uniloc Luxembourg." (Dkt. No. 141-6, p. 11.) Because Plaintiffs took no action to eliminate their defaults, those defaults cannot have been cured.

The Court's Order relies entirely on the declaration of James Palmer as evidence of a cure. (Dkt. No. 164-2, pp. 6–7.) But while the declaration uses that word, it does not describe any actions that could qualify as a cure as a matter of law. Nowhere in his declaration does Mr. Palmer describe any actions that ***Plaintiffs*** took to fix an Event of Default, let alone how or when ***Plaintiffs*** in fact eliminated any of their revenue shortfalls. To the contrary, Mr. Palmer speaks solely to ***Fortress's*** conduct and state of mind. (*E.g.*, Dkt. No. 141-7, ¶ 11 (stating that "[F]ortress did not regard Uniloc as in default . . . , and Fortress did not consider it or treat it as a default"); *id.* ¶ 12 (stating that "[F]ortress did not view" the shortfall as "an Event of Default") (internal quotation marks omitted).) According to Mr. Palmer, Fortress was "satisfied" not because Plaintiffs had fixed their revenue shortfalls, but because Fortress no longer minded if Uniloc missed the revenue targets. (*Id.* ¶ 10

1    ("[T]he earlier minimums [were] no longer of significance to Fortress.").) But this is not evidence

2    that Plaintiffs cured the default such that it ceased to exist.

3         What Mr. Palmer describes is, at most, an argument that Fortress impliedly waived of a

4    default. But section 9.4.2 of the Revenue Sharing Agreement expressly forbids implied waivers of

5    any default. (*See* Dkt. No. 164-2, p. 7.) Indeed, if Fortress's being "satisfied" were interpreted as a

6    "cure" of a default—absent any remedial action by Plaintiffs—then both Section 7.3(x) (requiring

7    waivers of Event of Default to be in writing) and Section 9.4.2 (barring implied waivers) of the

8    Revenue Sharing Agreement would be superfluous.[1] Under Mr. Palmer's logic, if Fortress tried to

9    waive a default orally by stating that it was happy with Plaintiffs, that would automatically evidence

10   a cure. That, in turn, would render Section 7.3 of the Revenue Sharing Agreement's requirement of

11   a written waiver a nullity—a result that is wrong as a matter of law. *Bank of New York*, 910 F.

12   Supp. 2d at 649 ("[A] contract should be construed so as to give full meaning and effect to all of its

13   provisions.") (citation and internal quotation marks omitted). On the other hand, under the correct

14   meaning of cure, all of the contract's provisions have full meaning and effect. A "cure" requires

15   action by Plaintiffs to remove the event that triggered a default; it cannot operate as an unwritten

16   waiver. The Order thus erred by adopting Mr. Palmer's erroneous definition of cure. The Court

17   should grant Apple leave to file a motion for reconsideration for this reason, as well.

18        2)   Portions Of The Revenue Sharing Agreement That Are Not Of Record Are
             Inconsistent With The Order's Determination that Plaintiffs' Defaults Were Cured
19

20        The Court's Order concluded that, because Fortress knew about the revenue numbers giving

21   rise to a default at the time it signed the Third Amended Revenue Sharing Agreement, Plaintiffs

22   must have cured their Events of Default. (Dkt. No. 164-2, p. 6.) Even assuming that Plaintiffs took

23   action to cure their default, however, the Order's conclusion based on Fortress's knowledge and

24   conduct is foreclosed by at least two provisions of the Revenue Sharing Agreement that were not

25   before the Court.

26        [1] Mr. Palmer also appears to suggest that the act of executing the Third Amended Revenue
     Sharing Agreement effected a cure. (Dkt. No. 141-7, ¶ 12.) This interpretation is foreclosed by the
27   express language of Section 7.3(z), which states that an amendment must explicitly indicate that it
     is curing defaults in order to do so, and is contrary to Plaintiffs' 30(b)(6) testimony. (Dkt. No. 134-
28   10, Levy Dep. 89:24–90:15.)

First, Section 8.4.4 of the agreement provides that Fortress was not "obligated to ascertain or inquire as to the performance or observance of any of the terms of this Agreement or any other Document." (Ex. A, § 8.4.4.) Thus, the assumption that Fortress must have ascertained that Plaintiffs had defaulted at the time they entered the May 15 amendment to the agreement, and that the amendment shows that Fortress was nonetheless satisfied, is squarely foreclosed by Section 8.4.4. Even if Fortress knew how much revenue Plaintiffs had generated each quarter, it was not required to determine whether that amount had triggered an Event of Default. (*Id.*) And Fortress's Rule 30(b)(6) testimony indicates that it never did determine whether Plaintiffs had defaulted. (Dkt. No. 134-10, Levy Dep. at 89:24–90:15.)

Second, Section 7.4.2 of the Revenue Sharing Agreement absolves Fortress of "any requirement of diligence or promptness . . . in the enforcement of its rights." (Dkt. No. 134-7, § 7.4.2.) Even if Fortress knew that Plaintiffs had defaulted, the contract expressly permitted Fortress to agree to the May 2017 amendment without giving up any rights that it had not yet exercised or had not yet realized that it had. In combination with the express-waiver requirement of Section 7.3(x) and the bar on implicit waivers from Section 9.4.2, these provisions demonstrate that Fortress's signing of the Third Amended Agreement is not evidence that Fortress relinquished or waived its rights. For this additional reason, Apple's request for leave to seek reconsideration should be granted.

      3)   <u>The Order Prematurely Resolved Credibility Issues Regarding The Purported Cure</u>

Finally, the Order improperly resolved against Apple credibility issues regarding Mr. Palmer's testimony. The Order read Mr. Palmer's testimony as uncontroverted evidence that a cure had occurred. However, Mr. Erez Levy testified as a 30(b)(6) witness that he was not aware of such a cure. (Dkt. No. 134-10, Levy Dep. at 89:24–90:15.) In addition, Mr. Palmer provided his declaration only after Fortress saw Apple's motion and after Plaintiffs had provided contrary 30(b)(6) testimony. Further, his testimony comes six months after the Revenue Sharing Agreement had been terminated, at a time when Fortress and Plaintiffs had every incentive to reinterpret that agreement to disavow the rights they had held. Further still, Plaintiffs refused to produce Mr. Palmer for deposition. (Ex. B, 11/16/18 Foster to Winnard.) Nor did Plaintiffs produce any

1    contemporaneous evidence that corroborates Mr. Palmer's hindsight declaration. Even if Mr.

2    Palmer's testimony were legally adequate to save Plaintiffs—which it is not—there are, at a

3    minimum, serious factual disputes as to whether it is credible. These credibility disputes are not

4    ones that can properly be resolved against Apple at this stage.

5    **IV.    CONCLUSION**

6           For the reasons stated above, Apple respectfully requests leave to file a motion for

7    reconsideration of the Court's January 17 Order denying Apple's motion to dismiss.

8

9

10   DATED:  February 14, 2019                    Respectfully submitted,

11                                                 /s/ Michael T. Pieja

12                                                Michael T. Pieja (CA Bar No. 250351)
                                                  Alan E. Littmann (*pro hac vice*)
13                                                Jennifer Greenblatt (*pro hac vice*)
                                                  Doug Winnard (CA Bar No. 275420)
14                                                Andrew J. Rima (*pro hac vice*)
                                                  Emma C. Ross (*pro hac vice*)
15                                                Lauren Abendshien (*pro hac vice*)
                                                  Shaun Zhang (*pro hac vice*)
16                                                GOLDMAN ISMAIL TOMASELLI
17                                                BRENNAN & BAUM LLP
                                                  564 W. Randolph St., Suite 400
18                                                Chicago, IL 60661
                                                  Tel: (312) 681-6000
19                                                Fax: (312) 881-5191
                                                  mpieja@goldmanismail.com
20                                                alittmann@goldmanismail.com
                                                  jgreenblatt@goldmanismail.com
21                                                dwinnard@goldmanismail.com
                                                  arima@goldmanismail.com
22                                                eross@goldmanismail.com
23                                                labendshien@goldmanismail.com
                                                  szhang@goldmanismail.com
24

25                                                Kenneth Baum (CA Bar No. 250719)
                                                  GOLDMAN ISMAIL TOMASELLI
26                                                BRENNAN & BAUM LLP
                                                  429 Santa Monica Boulevard, Suite 710
27                                                Santa Monica, CA 90401
                                                  Tel: (310) 576-6900
28

Fax: (310) 382-9974
kbaum@goldmanismail.com

*Attorneys for Defendant Apple Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

The undersigned hereby certifies that a true and correct copy of **DEFENDANT APPLE INC.'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE ORDER DENYING APPLE'S MOTION TO DISMISS** has been served on February 14, 2019, to all counsel of record who are deemed to have consented to electronic service.



*/s/ Michael T. Pieja*
Michael T. Pieja (CA Bar No. 250351)