James J. Foster
jfoster@princelobel.com
Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone: 617-456-8000
Facsimile: 617-456-8100

Matthew D. Vella (CA No. 314548)
mvella@princelobel.com
PRINCE LOBEL TYE LLP
410 Broadway Avenue, Suite 180
Laguna Beach, CA 92651

ATTORNEYS FOR THE PLAINTIFFS

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNILOC 2017 LLC, UNILOC USA, INC., and UNILOC LUXEMBOURG, S.A., | Case Nos.  **3:18-cv-00360-WHA** **3:18-cv-00358-WHA** **3:18-cv-00363-WHA** **3:18-cv-00365-WHA** **3:18-cv-00572-WHA** |
| Plaintiffs, | |
| v. | |
| APPLE INC., | **PLAINTIFFS' OPPOSITION TO THIRD-PARTY ELECTRONIC FRONTIER FOUNDATION'S THIRD MOTION TO INTERVENE** |
| Defendant. | |

**TABLE OF CONTENTS**

I.   Background ...................................................................................................................1

     A.   This Court rejected Apple's motion to dismiss........................................................1

     B.   The parties submitted motions to seal Uniloc's confidential information in
          the course of Apple's motions to dismiss. ..............................................................2

     C.   EFF moved to intervene, the Court denied the parties' motions to seal and the
          Court and denied EFF's motion to intervene in this Court. ....................................2

     D.   The Court denied Uniloc's motion for leave to file a motion for
          reconsideration. .......................................................................................................3

     E.   The Federal Circuit affirmed-in-part, vacated-in-part and remanded for
          further action. ..........................................................................................................3

     F.   The parties conferred regarding what materials should be unsealed. ......................4

     G.   The unsealed and less-redacted documents have been publicly available for
          months in this Court, the Federal Circuit and District of Delaware. ......................5

II.  LAW .............................................................................................................................5

III. DISCUSSION ..............................................................................................................13

     A.   EFF is not entitled and should not be permitted to intervene. ...............................13

     B.   Uniloc already placed the relevant materials on the public record; Uniloc
          cannot refile Apple's pleadings for Apple. ..........................................................14

     C.   The few materials that Uniloc and Apple asked this Court to seal qualify as
          trade secrets and should remain under seal............................................................14

          1.   References to third-party licensees and their licensing information
               should remain under seal. ..........................................................................15

          2.   The Fortress Memorandum and references to it should remain under
               seal. ............................................................................................................18

IV.  CONCLUSION............................................................................................................20

1

**TABLE OF AUTHORITIES**

2

**CASES**

3
*Abbvie Inc. v. Novartis Vaccines & Diagnostics, Inc.*,
   No. 17-cv-1815-EMC, Dkt. No. 64 (July 11, 2017) ................................................9

4
*Am. Standard Inc. v. Pfizer Inc.*,
   828 F.2d 734 (Fed. Cir. 1987)...............................................................................8

5
*Ankele v. Johnson*,
   No. C-04-04811 JW, 2005 WL 1459553 (N.D. Cal. June 21, 2005) .....................13

6

7
*Apple Inc. v. Psystar Corp.*,
   658 F.3d 1150 (9th Cir. 2011) ...............................................................................7

8
*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   727 F.3d 1214 (Fed. Cir. 2013)...........................................................................7, 8

9
*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 11-cv-01846-LHK,
10
   2012 WL 3283478 (N.D. Cal. Aug. 9, 2012) ........................................................10

11
*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 11-CV-01846-LHK,
12
   2012 WL 4933287 (N.D. Cal. Oct. 16, 2012) .........................................................9

13
*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   No. 11-cv-01846-LHK,
   2012 WL 5988570 (N.D. Cal. Nov. 29, 2012) ....................................................9, 17

14
*Arista Networks, Inc. v. Cisco Sys., Inc.*,
   No. 16-cv-00923-BLF,
15
   2018 WL 2010622 (N.D. Cal. Apr. 30, 2018) .....................................................8, 19

16
*Aronson v. Quick Point Pencil Co.*,
   440 U.S. 257 (1979)...............................................................................................8

17
*Autodesk, Inc. v. Alter*,
   No. 3:16-cv-04722-WHO (N.D. Cal. July 19, 2018)............................................10

18

19
*Autodesk, Inc. v. Alter*,
   No. 3:16-cv-04722-WHO, Dkt. No. 108 (N.D. Cal. Sept. 5, 2017) ......................10

20
*Bluestone Innovations LLC v. Nichia Corp.*,
   No. 3:12-cv-00059-SI, Dkt. No. 285 (N.D. Cal. Apr. 15, 2013) .............................9

21
*Center for Auto Safety v. Chrysler Group, LLC*,
   809 F.3d 1092 (9th Cir. 2016) .......................................................................6, 7, 19

22
*ChriMar Sys. Inc. v. Cisco Sys. Inc.*,
   No. 4:13-cv-01300-JSW, Dkt. No. 413 (Aug. 12, 2016).......................................10

23

24
*Digital Reg of Texas, LLC v. Adobe Sys., Inc.*,
   No. C 12-1971 CW,
   2014 WL 6986068 (N.D. Cal. Dec. 10, 2014) ......................................................10

25
*Dodocase VR, Inc. v. MerchSource, LLC*,
   No. 17-cv-07088,
26
   2018 WL 5619799 (N.D. Cal. May 22, 2018) ......................................................10

27
*Edgerly v. City & County of San Francisco*,
   No. C 03-02169 WHA, 2005 WL 106790 (N.D. Cal. Jan. 13, 2005).....................13

28
*Finjan v. Blue Coat Sys., LLC*,
   No. 5:15-cv-03295-BLF, Dkt. No. 398 (N.D. Cal. Oct. 31, 2017)..........................9

*Finjan, Inc. v. Juniper Networks, Inc.*,
No. 17-cv-05659-WHA, Dkt. No. 570 (TSH) (N.D. Cal. July 1, 2019)....................................9

*Finjan, Inc. v. Juniper Networks, Inc.*,
No. 3:17-cv-05659-WHA, Dkt. No. 485 (N.D. Cal. May 29, 2019) ...........................11, 15, 17

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
331 F.3d 1122 (9th Cir. 2003) ...........................................................................................7

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
457 U.S. 596 (1982)...........................................................................................................6

*GoDaddy.com, LLC v. RPost Commc'ns Ltd.*,
No. CV-14-00126-PHX-JAT,
2016 WL 3068638 (D. AZ June 1, 2016) .............................................................................7

*Hagestad v. Tragesser*,
49 F.3d 1430 (9th Cir. 1995) ............................................................................................6

*Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 3:16-cv-02787-WHO,
2018 WL 1784065 (N.D. Cal. Apr. 13, 2018) ...................................................................10

*Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*,
No. 12-cv-3844-JST, Dkt. No. 217 (Mar. 4, 2015) ...........................................................10

*In re Casewell*,
18 R.I. 835, 29 A. 259 (1893) ...........................................................................................7

*In re Elec. Arts, Inc.*,
298 Fed. App'x 568 (9th Cir. 2008) ..............................................................8, 9, 11, 17

*Juicero, Inc. v. iTaste Co.*,
No. 17-cv-01921-BLF,
2017 WL 8294276 (N.D. Cal. Jun. 28, 2017)..............................................................8, 19

*Kamakana v. City & Cty. of Honolulu*,
447 F.3d 1172 (9th Cir. 2006) ......................................................................................7, 20

*Liao v. Quidachay*,
No. C 05-1888 CW, 2007 WL 196672 (N.D. Cal. 2007) .....................................................13

*Lone Star Silicon Innovations LLC v. Nana Technology Corp.*,
925 F.3d 1125 (Fed. Cir. 2019)...........................................................................................7

*McDonnell v. Southwest Airlines Co.*,
292 F. App'x 679 (9th Cir. 2008) .......................................................................................9

*Nixon v. Warner Commnc'ns, Inc.*,
435 U.S. 589 (1978)........................................................................................................6, 7

*North Atl. Instruments, Inc. v. Haber*,
188 F.3d 38 (2d Cir. 1999)..................................................................................................8

*Oliver v. City & Cty. of San Francisco*,
No. C 07-2460 JL, 2009 WL 10736489 (N.D. Cal. Mar. 23, 2009)........................................13

*Oracle Am., Inc. v. Google Inc.*,
No. 3:10-cv-03561-WHA, Dkt. No. 687 (N.D. Cal. Jan. 10, 2012)...........................10, 15, 18

*PersonalWeb Techs LLC v. IBM Corp.*,
No. 5:16-cv-01226-EJD, Dkt. No. 347 (N.D. Cal. July 27, 2017) ...........................................9

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ...........................................................................................6

*Pintos v. Pac. Creditors Ass'n,*
    605 F.3d 665 (9th Cir. 2010) ...................................................................6

*Platronics, Inc. v. Aliph, Inc.,*
    No. C 09-01714 (WHA) (N.D. Cal. Dec. 5, 2013) ....................................12, 15, 17

*Powertech Tech., Inc., v. Tessera, Inc.,*
    No. C 11-6121-CW,
    2012 WL 1969039 (N.D. Cal. May 31, 2012) .............................................10

*Rembrandt Patent Innovations, LLC v. Apple Inc.,*
    No. C 14-05094 WHA (N.D. Cal. Jan. 12, 2016) ..................................12, 15, 17, 19

*Rodman v. Safeway, Inc.,*
    No. 11-cv-03003,
    2014 WL 12787874 (N.D. Cal. Aug. 22, 2014) ...........................................8

*Synchronoss Techs., Inc. v. Dropbox, Inc.,*
    No. 16-cv-00119-HSG,
    2018 WL 6002319 (N.D. Cal. Nov. 15, 2018) ...........................................9

*Tessera, Inc. v. Advanced Micro Devices, Inc.,*
    No. 4:05-cv-04063-CW, Dkt. No. 1036 (N.D. Cal. Aug. 10, 2012)......................10

*Transperfect Global, Inc. v. MotionPoint Corp.,*
    No. C 10-2590-CW,
    2014 WL 4950082 (N.D. Cal. Sept. 25, 2014) .........................................9, 19

*U.S. Ethernet Innovations, LLC v. Acer, Inc.,*
    No. 10-cv-3724-CW,
    2013 WL 4426507 (N.D. Cal. Aug. 14, 2013) ...........................................9

*United States v. Amodeo,*
    71 F.3d 1044 (2d Cir.1995).................................................................6

*Van v. Language Line Servs., Inc.,*
    No. 14-CV-03791-LHK,
    2016 WL 3566980 (N.D. Cal. Jun. 6, 2016) ..............................................8

**RULES**

Civil L.R. 7-9 ...........................................................................13, 14

Fed. R. of Civ. P. 26(c)(1) .................................................................7

1    Plaintiffs, Uniloc 2017 LLC, Uniloc USA, Inc., and Uniloc Luxembourg, S.A.,

2  (collectively, "Uniloc"), respectfully oppose third-party Electronic Frontier Foundation's ("EFF")

3  Third Motion to Intervene, Dkt. No. 177.[1, 2]

4    Procedurally, EFF's third motion to intervene should be denied, just as were EFF's first

5  and second motions to intervene.  Substantively, Uniloc already complied with the Federal Circuit's

6  remand; Uniloc already agreed to unseal all materials associated with Apple's opposition to

7  Uniloc's renewed motion to add a party; and Uniloc already agreed to unseal nearly all of the

8  materials Apple submitted with its motions to dismiss.  As such, EFF's motion is without grounds

9  and without merit.

10  **I.    BACKGROUND**

11    The following (extensive) background is provided to assist the Court's understanding.

12    **A.    This Court rejected Apple's motion to dismiss.**

13    Uniloc USA and Uniloc Luxembourg sued Apple for patent infringement in five separate

14  cases in the Eastern District of Texas.  Apple moved to transfer these cases—along with several

15  others between the parties—to the Northern District of California, which motion was granted in

16  December 2017.  These five cases transferred in January 2018 and were assigned this Court.

17    In mid-2018, several Uniloc-related entities entered a series of corporate transactions which

18  resulted in a new entity, Uniloc 2017, as the assignee of the patents-in-suit.  So, the Uniloc parties

19  in the -360, -363, -365 and -572 Cases filed a Rule 25 motion to join Uniloc 2017 as the patent

20  owner on August 23, 2018.  Dkt. No. 119.  Separately, on September 14, 2018, this Court stayed

21  these cases pending IPRs, but agreed to allow Apple to file a motion challenging Uniloc's standing

22  and as to subject matter issues.  Dkt. No. 131.  On October 25, 2018, Apple moved to dismiss these

---

[1]    Unless otherwise noted, docket citations herein are to Case No. 3:18-cv-00360-WHA.  Also, all cases will be referred to by their last three digits, *e.g.*, "the -360 Case."

[2]    The -363 Case requires an extra bit of background.  On June 15, 2018, the claims of the patent-at-issue in the -363 Case were held to be drawn to patent-intelligible subject matter in *Uniloc USA, Inc. v. HTC Am., Inc.*, No. C17-JRL, Dkt. No. 48 (W.D. WA June 15, 2018).  Uniloc appealed that order to the Federal Circuit on July 13, 2018.  *See Uniloc USA, Inc. v. HTC AM., Inc.*, No. 18-2185 (Fed. Cir.).  To avoid staying the -363 Case pending the process of that appeal, Uniloc moved to dismiss the -363 Case without prejudice on September 5, 2018, before Apple filed its motion regarding standing.  *See* -363 Case, Dkt. No. 118.  This Court granted Uniloc's motion on August 7, 2019, after it had already granted Apple's motion regarding standing.  *See* -363 Case, Dkt. No. 193.

1    four cases for lack of subject matter jurisdiction.  Dkt. No. 135.  On January 17, 2019, this Court

2    denied Apple's motion and added Uniloc 2017 as a plaintiff.  *See* Dkt. No. 164-2.

3           The -358 Case took a slightly different path.  On May 18, 2018, the Court concluded that the

4    patent-at-issue was directed to patent-ineligible subject matter and so granted Apple's motion for

5    judgment on the pleadings.  -358 Case, Dkt. No. 99.  Uniloc appealed but, during the appeal, Apple

6    raised the question of standing.  The Federal Circuit then remanded to this Court to address the

7    standing issue.  *Id.*, Dkt. No. 118.  Apple recently filed a motion to dismiss on standing grounds in

8    the -358 Case, citing mostly the same documents, along with a few new ones.  *Id.*, Dkt. No. 165.

9          **B.    The parties submitted motions to seal Uniloc's confidential information in the
                   course of Apple's motions to dismiss.**

10

11          On Friday, October 25, 2018, concurrent with its motion to dismiss in the -360 *et seq.*

12   Cases, Apple filed an administrative motion to seal its redacted 25-page memorandum, its redacted

13   four-page declaration in support, a two-page appendix, and more than 100 pages of documents that

14   Uniloc had designated as confidential pursuant to the Protective Order.  Four days later, on

15   Tuesday, October 29, 2018, Uniloc filed a declaration in support of Apple's administrative motion

16   to seal.  Dkt. No. 137.  Uniloc's opposition to Apple's substantive motion was accompanied by an

17   administrative motion to seal portions of its redacted memorandum, a redacted declaration and an

18   exhibit.  Dkt. No. 141.  Apple's reply included a redacted 15-page memorandum, a redacted

19   declaration and another 13 pages of sealed exhibits.  Dkt. No. 147.  Again, Apple filed an

20   administrative motion to seal, Dkt. No. 146, for which Uniloc submitted a declaration in support

21   three days later, Dkt. No. 148.

22          **C.    EFF moved to intervene, the Court denied the parties' motions to seal and the
                   Court and denied EFF's motion to intervene in this Court.**

23          On January 9, 2019, just one day before oral arguments on Apple's motion to dismiss, third-

24   party Electronic Frontier Foundation ("EFF") moved to intervene to oppose the parties' motions to

25   seal.  Dkt. No. 152.

26          On January 17, 2019, four days before Uniloc's deadline to respond to EFF's motion to

27   intervene, the Court denied Apple's motion to dismiss and granted Uniloc's motion to join Uniloc

28   2017 as a party.  However, the Court denied Uniloc and Apple's motions to seal with respect to the

1  motion to dismiss.  Relatedly, the Court denied EFF's motion to intervene, except as to appellate

2  review of the motions to seal, should that occur.  Dkt. No. 159.

3      **D.      The Court denied Uniloc's motion for leave to file a motion for reconsideration.**

4          On February 15, 2019, Uniloc filed a motion for leave to file a motion for reconsideration.

5  Dkt. No. 168.   The substantive motion for reconsideration that Uniloc proposed to file was

6  included as an exhibit.  Dkt. No. 168-1.  Therein, Uniloc retrenched the proposed redactions and

7  documents to be filed under seal, such that upwards of 90% of the previously confidential materials

8  would be made public.

9          Uniloc's motion for leave was accompanied by a fifteen-page, 5000-plus-word declaration

10 that detailed, on an item-by-item basis, the individual grounds for redacting or sealing the

11 remaining 10%.  *See* Dkt. No. 168-2.  Some of the exhibits accompanying Uniloc's motion for

12 leave were the subject of one last motion to file under seal.  Dkt. 167.  These sealed exhibits

13 included, *inter alia*, declarations from more than one-dozen third-parties, Dkt. No. 167-6 to 167-16

14 & Dkt. No. 168-26, and statements from another twenty-four third-parties who had asked Uniloc to

15 relay specific, sealed statements or requests to the court.  Dkt. No. 168-2, ¶¶ 8-10.w.i.

16         Apple did not oppose Uniloc's motions.

17         On March 11, 2019, rather than comply with Civil L.R. 7-9, EFF filed a "Second Motion to

18 Intervene for Limited Purpose of Opposing Uniloc's Motion for Reconsideration."  Dkt. No. 177.

19         On May 7, 2019, the Court denied Uniloc's motion for reconsideration and again denied

20 EFF permission to intervene other than as to an appeal, should one occur.  Dkt. No. 187.

21     **E.      The Federal Circuit affirmed-in-part, vacated-in-part and remanded for**
                **further action.**
22
           Uniloc filed a timely interlocutory appeal.  EFF intervened.  The Federal Circuit heard oral
23
   arguments on April 8, 2020, and issued its opinion on August 9, 2020.  Dkt. No. 213.[3]
24
           First, the Federal Circuit concluded that this Court did not abuse its discretion in denying
25
   "Uniloc's requests to seal its purportedly confidential information and that of its related entities."
26
   *Id.* at 19.
27

28
   ---
   [3]       The opinion was published at 964 F.3d 1351 (Fed. Cir. 2020).

Second, though, the Federal Circuit concluded that the confidential information belonging to Uniloc's licensees and other third-parties was entitled to a closer look by this Court:

> Such third-parties were not responsible for Uniloc's filing of an overbroad sealing request. Their information calls for an analysis not dependent on the overbreadth rationale just discussed.
>
> The district court rejected Uniloc's attempt to prevent disclosure of information related to its third-party licensees, including the licensees' names, the duration of their licenses, and the specific royalty rate each licensee paid. Uniloc asserts that almost all of its third-party license agreements included a confidentiality provision, indicating that the information in the agreements was "proprietary and confidential," and that "the vast majority of these agreements were entered into under the auspices of protective orders signed by district court judges." Significantly, moreover, many of Uniloc's licensees have submitted declarations stating that they wish their licensing information to remain confidential and that the disclosure of such in-formation would cause them material competitive injury.
>
> As to these third-party materials, we conclude that the district court failed to make findings sufficient to allow us to adequately assess whether it properly balanced the public's right of access against the interests of the third-parties in shielding their financial and licensing information from public view. In this regard, there is no indication in the record that the court assessed whether any of the third-party information was "protectable as a trade secret or otherwise entitled to protection under the law." We therefore vacate those portions of the district court's orders which denied sealing or redaction of the purportedly confidential information of third-parties and remand so that the court may make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public.

*Id.* at 19-21 (citations omitted).

Finally, the Federal Circuit recognized that Fortress Credit Co. LLC ("Fortress") presented an intermediate situation between Uniloc (on the one hand) and the third-parties (on the other). So, the Federal Circuit left to this Court's discretion the question of whether Fortress's materials should be kept under seal. *Id.* at 19 n.8.

## F. The parties conferred regarding what materials should be unsealed.

Following issuance of the Federal Circuit's mandate, Dkt. No. 215, counsel for Uniloc and Apple immediately began conferring by email and telephone regarding treatment of the materials at issue. As a (perhaps misplaced) courtesy, the initial correspondence included counsel for non-party EFF, given EFF's intervention in the appeal. Within two weeks of the Federal Circuit's mandate, Uniloc identified and agreed to place all unilaterally Uniloc materials into the public record. And,

1   rather than drag out the issue, Uniloc and Fortress agreed to submit the Uniloc/Fortress materials

2   into the public record as well.  *See* Dkt. No. 220.  Uniloc also identified the materials and discrete

3   places within them that contain confidential information of the more than one-hundred third-parties

4   for this Court's consideration.  *See* Dkt. No. 222.

5      Through October and early November, Uniloc and Apple continued their discussions

6   regarding the logistical and procedural issues involved with putting these materials into the public

7   record.  EFF was dropped from these communications because EFF was not a party.  Uniloc

8   notified EFF on November 16, 2020—before this Court's order setting a telephonic hearing—that

9   Uniloc intended to file the motions by November 19, 2020, which Uniloc did in Dkt. Nos. 220 and

10   222.  Uniloc regrets that it took an additional month-and-a-half to finalize matters, but given the

11   procedural background and complexities involved, it was important to get everything right.

12      **G.    The unsealed and less-redacted documents have been publicly available for
            months in this Court, the Federal Circuit and District of Delaware.**

13      Finally, it is also worth noting that the majority of the materials at issue in Apple's original

14   motion to dismiss—as well as those in in Apple's latest motion in the -358 Case—were made

15   publicly available through Uniloc's motion for leave to file a motion for reconsideration, *see* Dkt.

16   Nos. 168-1 *et seq.*; the Joint Appendix to Uniloc's appeal, *see Uniloc 2017 LLC v. Apple, Inc.*, No.

17   2019-1922 (Fed. Cir. Oct. 22, 2019), Dkt. No. 28-1 *et seq.*; and in revised associated with

18   Motorola's copy-cat motion to dismiss in the District of Delaware, *see Uniloc USA, Inc. v.*

19   *Motorola Mobility, LLC*, No. 1:17-cv-01658-CFC (D. Del. July 2, 2020), Dkt. No. 90-1 *et seq.*[4]

20   **II.    LAW**

21      Documents filed with courts are presumed to be accessible to the public to allow the public

22   to hold courts accountable for their reasoning.  In short, the public should presumptively be able to

23   confirm in the given case that the court came to the right conclusion as to the particular decision.

24

25   _____

[4]   Motorola filed a motion to dismiss in the District of Delaware based almost entirely upon
Apple's motions before this Court.  Motorola's exhibits and appendices were subsets of those filed

26   by Apple.  Indeed, Motorola's brief even cited to the production number of a document as it had
been produced to Apple, rather than the identical document as it had been produced to Motorola.  In

27   short, Motorola literally copied-and-pasted the text of Apple's motion, including a citation to the
document beginning at UNILOC_APPLE_2017_16650.  But, Motorola forgot to change the cited

28   production number from "UNILOC_APPLE_2017_16650" to "UNILOC_MOTO_1658_002642,"
even though the MOTO version was submitted as the exhibit.

1  There is, however, no generalized right to access documents just because the information contained

2  in them is interesting.

3          Access to judicial records is adjunct to several foundational principles of the American

4  justice system, including open courts, public trials, and judicial accountability.  *See Globe*

5  *Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606 (1982) ("Public scrutiny . . .

6  enhances the quality and safeguards the integrity of the factfinding process, with benefits to . . .

7  society as a whole.  Moreover, public access . . . fosters an appearance of fairness, thereby

8  heightening public respect for the judicial process.  And in the broadest terms, public access . . .

9  permits the public to participate in and serve as a check upon the judicial process—an essential

10  component in our structure of self-government.").  As the Ninth Circuit explained in *Center for*

11  *Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016):

12          "It is clear that the courts of this country recognize a general right to inspect and
13          copy public records and documents, including judicial records and documents."
          *Nixon v. Warner Commnc'ns, Inc.,* 435 U.S. 589, 597 (1978).  Following the
14          Supreme Court's lead, "we start with a strong presumption in favor of access to
          court records."  *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th
15          Cir.2003).

16  Continuing—and this is key—the Ninth Circuit explained the touchstone of the public's interest:

17  "The presumption of access is 'based on the need for federal courts, although independent—indeed,

18  particularly because they are independent—to have a measure of accountability and for the public

19  to have confidence in the administration of justice.'"  *Id.* (quoting *U.S. v. Amodeo*, 71 F.3d 1044,

20  1048 (2d Cir.1995)); *see also, e.g.*, *Pintos v. Pac. Creditors Ass'n,* 605 F.3d 665, 679 (9th Cir.

21  2010) ("[The] relevant factors" include the "public interest in understanding the judicial process and

22  whether disclosure of the material could result in improper use of the material for scandalous or

23  libelous purposes or infringement upon trade secrets.") (quoting  *Hagestad v. Tragesser*, 49 F.3d

24  1430, 1434 (9th Cir. 1995)); *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206,

25  1213 (9th Cir. 2002) ("[T]he public policy reasons behind a presumption of access to judicial

26  documents [are] judicial accountability [and] education about the judicial process . . . .").

27          Of course, "the right to inspect and copy judicial records is not absolute."  *Nixon*, 435 U.S.

28  at 598.  Rather, "'the common-law right of inspection has bowed before the power of a court to

insure that its records' are not . . . sources of business information that might harm a litigant's competitive standing." *Id.* (quoting *In re Casewell*, 18 R.I. 835, 836, 29 A. 259 (1893)). In the Ninth Circuit, the question is whether there are "compelling reasons" to maintain the documents under seal. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Even if the public has a legally cognizable interest in access to a given document, the presumption of public access is rebutted where the document's owner establishes a compelling reason to keep it sealed.[5]

The Ninth Circuit recognizes that there are compelling reasons to seal where the release of particular "'court files *might have become* a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or *release trade secrets.*" *Id.* at 1179 (quoting *Nixon*, 435 U.S. at 598) (emphasis added); *see also, Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214 (Fed. Cir. 2013) ("*Apple v. Samsung* (Fed. Cir.)") (applying Ninth Circuit law) (reversing the district court; ordering sealed "market research reports [that] contain information that Apple's competitors could not obtain anywhere else"); *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("publication of materials that could result in infringement upon trade secrets has long been a factor that would overcome" public access).

---

[5]    For decades, the compelling reasons standard applied only to information accompanying "dispositive" motions. *See, e.g., Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). For non-dispositive motions, courts applied the "good cause" standard of Federal Rule of Civil Procedure 26(c)(1). *See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). This arguably changed in 2016, when a divided panel of the Ninth Circuit redefined the boundary from "dispositive" to the not-at-all-indefinite "more than tangentially related to the merits of the case" standard. *See Center for Auto Safety*, 809 F.3d at 1096.

As some courts have noted, "because *Auto Safety* was only a panel decision and not *en banc*, prior Ninth Circuit precedent centralizing the inquiry on whether the record is dispositive or non-dispositive was not overruled." *GoDaddy.com, LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 3068638, at *3 n.2 (D. AZ June 1, 2016). Courts within this District sometimes cite *Center for Auto Safety* and the "tangentially related" standard. At other times, courts within this District cite to *Kamakana*—and do not mention *Center for Auto Safety* at all—and the "dispositive motion" standard. *See, e.g., Ortiz v. City & Cty. of San Francisco*, No. 18-CV-07727-HSG, 2020 WL 2793615, at *8 (N.D. Cal. May 29, 2020) ("Because Defendants move to file exhibits attached to a dispositive motion, the Court will apply the compelling reasons standard.") (extensively citing *Kamakana* and not mentioning *Center for Auto Safety*).

Whether Apple's motions to dismiss were "dispositive" or "more than tangentially related to the merits of the case" is debatable. Apple argued that Uniloc did not have the complete right to exclude. But, under the intervening Federal Circuit opinion of *Lone Star Silicon Innovations LLC v. Nana Technology Corp.*, 925 F.3d 1125 (Fed. Cir. 2019), the most Apple could obtain would be the addition of a party. So, the motion was neither "dispositive" nor "more than tangentially related to the merits of the case." Still, because Uniloc and the third-parties do have a compelling interest in keeping the information at issue under seal, Uniloc addresses that standard herein.

1  "The most commonly accepted definition of trade secrets," *Aronson v. Quick Point Pencil*

2  *Co.*, 440 U.S. 257, 266 (1979) is found in comment (b) to section 757 of the first Restatement of

3  Torts.  *See, e.g.*, *In re Elec. Arts, Inc.*, 298 Fed. App'x 568, 569 (9th Cir. 2008).  It defines "trade

4  secret" as "any formula, pattern, device or compilation of information which is used in one's

5  business, and which gives him *an opportunity* to obtain an advantage over competitors who do not

6  know or use it."  Rest. of Torts § 757, cmt. b (1939) (emphasis added); *see also id.* (listing factors).

7         The irreparable harm that would result from disclosure of trade secrets is as undeniable as it

8  is obvious.  *See, e.g.*, *Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987)

9  (recognizing harms of disclosure of confidential business information to competitors and collecting

10  cases).  "A trade secret once lost is, of course, lost forever."  *North Atl. Instruments, Inc. v. Haber*,

11  188 F.3d 38, 49 (2d Cir. 1999) (quotation omitted).

12         Courts within the Ninth Circuit regularly find compelling reasons to seal documents

13  containing valuable, competitive business information, because they are trade secrets.  For example,

14  in *In re Electronic Arts*, the Ninth Circuit reversed a district court's denial of a request to seal

15  "pricing terms, royalty rates, and guaranteed minimum payment terms found in a license agreement

16  which were plainly within the definition of 'trade secrets.'"  *In re Elec. Arts*, 298 Fed. App'x. at

17  569-70; *see also, e.g.*, *Apple v. Samsung* (Fed. Cir.), 727 F.3d at 1222.

18         Other non-public information regarding pricing strategy, business decision-making and

19  financial records also constitute trade secrets that may be sealed.  *Rodman v. Safeway, Inc.*, No. 11-

20  cv-03003, 2014 WL 12787874, at *2 (N.D. Cal. Aug. 22, 2014); *see, e.g.*, *Arista Networks, Inc. v.*

21  *Cisco Sys., Inc.*, No. 16-cv-00923-BLF, 2018 WL 2010622, at *2-3 (N.D. Cal. Apr. 30, 2018)

22  (sealing, *inter alia*, "highly confidential and sensitive information relating to Cisco's financial

23  information and internal development strategies," "highly confidential and sensitive information

24  relating to Arista's financial and customer information," and "confidential settlement terms between

25  Cisco and third-party, Huawei Technologies"); *Juicero, Inc. v. iTaste Co.*, No. 17-cv-01921-BLF,

26  2017 WL 8294276, at *2 (N.D. Cal. Jun. 28, 2017) (sealing, *inter alia*, "confidential financial and

27  business information"); *Van v. Language Line Servs., Inc.*, No. 14-CV-03791-LHK, 2016 WL

28  3566980, at *2 (N.D. Cal. Jun. 6, 2016) (ordering sealed "the identities of Defendants' clients,

1   billing rates, billing amounts, and the subject matter of calls"); *Transperfect Global, Inc. v.*

2   *MotionPoint Corp.*, No. C 10-2590-CW, 2014 WL 4950082, at *1 (N.D. Cal. Sept. 25, 2014)

3   (sealing, *inter alia*, "confidential financial and marketing information"); *see also, e.g.*, *McDonnell*

4   *v. Southwest Airlines Co.*, 292 F. App'x 679, 680 (9th Cir. 2008) (affirming finding that

5   "compelling reasons" supported denying public access to "documents contain[ing] trade secrets and

6   confidential procedures and communications").

7          Licensing information in patent cases is routinely sealed in this District "because disclosure

8   could create an asymmetry of information in the negotiation of future licensing deals."  *Apple Inc.*

9   *v. Samsung Elecs. Co., Ltd.*, No. 11-CV-01846-LHK, 2012 WL 4933287, at *2 (N.D. Cal. Oct. 16,

10   2012) ("*Apple v. Samsung* (N.D. Cal. October Order)").  Indeed, licensing information is almost a

11   *per se* basis upon which to seal.  *See, e.g.*, *In re Elec. Arts*, 298 F. App'x at 569-570; *Apple Inc. v.*

12   *Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 5988570, at *4 (N.D. Cal. Nov. 29,

13   2012) ("*Apple v. Samsung* (N.D. Cal. November Order)") ("The Ninth Circuit has held, and [the

14   Northern District of California] has previously ruled, that pricing terms, royalty rates, and minimum

15   payment terms of licensing agreements *plainly constitute trade secrets and thus are sealable.*")

16   (emphasis added).  So, it should come as no surprise that the judges of the Northern District of

17   California, including, *inter alia*, Judges Chen,[6] Davila,[7] Freeman,[8] Gilliam,[9] Hixson,[10] Illston,[11]

18

---

19   [6]    *See, e.g.*, *Abbvie Inc. v. Novartis Vaccines & Diagnostics, Inc.*, No. 17-cv-1815-EMC, Dkt. No. 64 at 1 (July 11, 2017).

20   [7]    *See, e.g., PersonalWeb Techs LLC v. IBM Corp.*, No. 5:16-cv-01226-EJD, Dkt. No. 347 at 4 (N.D. Cal. July 27, 2017) (sealing pleadings and exhibits that "contain[] confidential business information, confidential financial information related to [the defendant] and third-parties, and confidential settlement and license terms relating to third-parties").

22   [8]    *See, e.g.*, *Finjan v. Blue Coat Sys., LLC*, No. 5:15-cv-03295-BLF, Dkt. No. 398 at 2 (N.D. Cal. Oct. 31, 2017) (sealing "information relating to [plaintiff's] confidential business and licensing practices").

24   [9]    *See, e.g.*, *Synchronoss Techs., Inc. v. Dropbox, Inc.*, No. 16-cv-00119-HSG, 2018 WL 6002319, at *3 (N.D. Cal. Nov. 15, 2018) (sealing documents that "contain highly confidential, trade secret, and sensitive business information and practices of [plaintiff] and third-parties . . . including specific terms of confidential license and settlement agreements between [plaintiff] and third-party entities").

27   [10]    *See, e.g.*, *Finjan, Inc. v. Juniper Networks, Inc.*, No. 17-cv-05659-WHA (TSH), Dkt. No. 570 (N.D. Cal. July 1, 2019) (granting redactions regarding licenses) ("*Juniper Networks*").

28   [11]    *See, e.g.*, *Bluestone Innovations LLC v. Nichia Corp.*, No. 3:12-cv-00059-SI, Dkt. No. 285 at 2 (N.D. Cal. Apr. 15, 2013) (sealing "documents [that] discuss confidential information, such as

PLAINTIFFS' OPPOSITION TO THIRD-PARTY EFF'S         9        CASE NOS. 3:18-CV-00360-WHA, -00358-WHA
THIRD MOTION TO INTERVENE                                   -00363-WHA, -00365-WHA & -00572-WHA
iManageDB1\107378\000068\3593095.v1-12/1/20

Koh,[12] LaPorte,[13] Orrick,[14] Tigar,[15] White,[16] and Wilken,[17] routinely seal licenses and licensing information.

This Court, too, has recognized that that disclosure of patent licensing information "would cause great and undue harm" to the both litigants and third-parties. *Oracle Am., Inc. v. Google Inc.*, No. 3:10-cv-03561-WHA, Dkt. No. 687, Dkt. No. 687 at 2 (N.D. Cal. Jan. 10, 2012). For example, this Court acknowledged as much when it ordered sealed a license in another patent case just one week after denying Uniloc's motion for reconsideration:

> [Plaintiff Finjan sought to seal Exhibit 7. Defendant] Juniper declares that Exhibit 7, which consists of a confidential license agreement, constitutes a trade secret (*id.* ¶

---

explicit details regarding negotiations in licencing [sic] agreements and internal decision-making processes").

[12]    *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 3283478, at *6 (N.D. Cal. Aug. 9, 2012) ("*Apple v. Samsung* (N.D. Cal. August Order)") ("[T]he Court will follow the Ninth Circuit's guidance and seal all information related to the payment terms of Apple's licensing agreements.").

[13]    *See, e.g.*, *Dodocase VR, Inc. v. MerchSource, LLC*, No. 17-cv-07088, 2018 WL 5619799, at *1 n.1 (N.D. Cal. May 22, 2018) (sealing documents "containing confidential settlement information in the form of sensitive pricing information that could be used to Plaintiff's disadvantage by existing or potential licensees").

[14]    *See, e.g.*, *Huawei Techs., Co., Ltd. v. Samsung Elecs. Co., Ltd.*, No. 3:16-cv-02787-WHO, 2018 WL 1784065, at *12 (N.D. Cal. Apr. 13, 2018) (sealing pleadings and exhibits related to licensing); *Autodesk, Inc. v. Alter*, No. 3:16-cv-04722-WHO, Dkt. No. 108 at 2 (N.D. Cal. Sept. 5, 2017) (sealing in its entirety a license agreement between plaintiff and Walt Disney Pictures ("WDP") because "publication of these terms would put WDP at a notable negotiating disadvantage in future licensing negotiations. In addition, WDP is not a party."); *see also, generally, id.*, (July 19, 2018) (sealing licensing information).

[15]    *See, e.g.*, *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-cv-3844-JST, Dkt. No. 217 at 5 (Mar. 4, 2015) ("This exhibit contains information about assignments, and consulting and license agreements between a third-party consultant and Specialized. The Court is satisfied that release of this information would result in an invasion of the third-party's privacy, that Specialized would suffer competitive harm if this material were made public, and that there are therefore compelling reasons to file this exhibit in its entirety under seal. . . . More specifically, the Court is satisfied that disclosing the terms of these agreements would put Specialized at a disadvantage in future negotiations for similar agreements.") (citations omitted).

[16]    *See, e.g.*, *ChriMar Sys. Inc. v. Cisco Sys. Inc.*, No. 4:13-cv-01300-JSW, Dkt. No. 413 at 3 (Aug. 12, 2016) (sealing entire license agreement).

[17]    *See, e.g.*, *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. C 12-1971 CW, 2014 WL 6986068, at *1 (N.D. Cal. Dec. 10, 2014) ("[T]he redacted portions disclose details of Digital Reg's patent licenses and that public disclosure of this information would harm Digital Reg by placing it at a disadvantage in future licensing negotiations. The Court finds good cause to grant the motion."); *Tessera, Inc. v. Advanced Micro Devices, Inc.*, No. 4:05-cv-04063-CW, Dkt. No. 1036 at 2 (N.D. Cal. Aug. 10, 2012) (sealing "royalty reports with financial information about payments"); *Powertech Tech., Inc., v. Tessera, Inc.*, No. C 11-6121-CW, 2012 WL 1969039, at *1-2 (N.D. Cal. May 31, 2012) (granting motion to seal details of license agreement).

10).  *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). . . .
Compelling reasons having been shown, Finjan's motion to seal Exhibit 7 in its
entirety . . . is GRANTED.

*Finjan, Inc. v. Juniper Networks, Inc.*, No. 3:17-cv-05659-WHA, Dkt. No. 485 at 2 (N.D. Cal. May 22, 2019).

During the appeal, EFF suggested that Uniloc's declarations could not support the motions to seal because they were just "declarations from counsel."  But, declarations from counsel are the standard evidence used to support motions to seal in this District.  The orders cited above at footnotes 6-17 were based upon attorney declarations.  For a further example from this Court, in *Juniper Networks*, a partner at Juniper Networks' outside counsel submitted a declaration in support of the motion to seal.  The following are the *only* references to Exhibit 7 in that declaration:

| Document | Finjan's Designations of Portions to Be Sealed | Juniper's Designations of Portions to Be Sealed | Juniper's Basis for Sealing |
|---|---|---|---|
| * * * | | | |
| Exhibit 7 to Kastens Declaration | Entire Exhibit | Entire Exhibit | Confidential License Agreement |
| * * * | | | |

10.  Additionally, I am informed and believe that Exhibit 7 is a full, unredacted confidential license agreement between Juniper and a third party, which is information that falls within the definition of a "trade secret." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008).

*Juniper Networks*, No. 3:17-cv-05659-WHA, Dkt. No. 418 (N.D. Cal. Apr. 5, 2019) (highlighting added).  As noted above, this Court stated that this constituted "[c]ompelling reasons having been shown," and so sealed the document.  *Juniper Networks*, No. 3:17-cv-05659-WHA, Dkt. No. 485 at 2.

So too from this Court, in *Oracle*, an associate at Google's outside counsel submitted a declaration in support of the motion to seal to this Court.  The following shows the *only* discussion of licensing information in that declaration:

> 3.       Exhibit J to the Dearborn Decl. (Dkt. No. 573) is an excerpt from the Expert Report of Dr. Gregory K. Leonard ("the Leonard Report").  The Court previously has granted a request to file the Leonard Report under seal (Dkt. No. 583).  The Leonard Report contains information that has been designated HIGHLY CONFIDENTIAL – ATTORNEY'S EYES ONLY pursuant to the stipulated protective order in this case.  The report and the underlying documents contain Google's sensitive, non-public financial data, such as costs, revenues, and profits associated with Android.  The report and underlying documents also contain non-public information about Google's consideration of and potential financial impact from alternatives to the intellectual property at issue in this lawsuit.  Additionally, the report contains non-public information about licensing arrangements with third-parties, which are protected by confidentiality clauses with those third-parties.  Google does not make this information available to the public.  Public disclosure of this confidential information would cause great and undue harm to Google, and place it at a competitive disadvantage.

*Oracle*, No. 3:10-cv-03561-WHA, Dkt. No. 600 (N.D. Cal. Jan. 10, 2012), (highlighting added). This Court concluded that Google's counsel's declaration identified compelling reasons to seal the entire exhibit and, in fact, this Court's order quoted verbatim the highlighted text from that declaration as the basis upon which to seal that document:

> [Exhibit J] contains non-public information about licensing arrangements with third-parties, which are protected by confidentiality clauses with those third-parties. Google does not make this information available to the public.  Public disclosure of this confidential information would cause great and undue harm to Google, and place it at a competitive disadvantage.

*Oracle*, No. 3:10-cv-03561-WHA, Dkt. No. 687 at 2.

Similarly, in *Platronics, Inc. v. Aliph, Inc.*, No. C 09-01714 (WHA) (N.D. Cal. Dec. 5, 2013), Dkt. No. 295 at 2, this Court granted plaintiff's motion to seal an entire license agreement. *Id.*  The Court did so even though the document was produced by defendant (not the moving plaintiff) and even though defendant apparently did not file a declaration in support of sealing it. *Id.*, Dkt. No. 287-1, ¶ 7.  And, in *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. C 14-05094 WHA (N.D. Cal. Jan. 12, 2016), Dkt. No. 144 at 2, on defendant Apple's motion, this Court ordered sealed information from plaintiff Rembrandt "such as the personal addresses of the inventors of the patents-in-suit, deposition testimony describing Rembrandt's business model, and the amounts of royalty payments negotiated in licenses for the patents-in-suit."

## III.   DISCUSSION

### A.   EFF is not entitled and should not be permitted to intervene.

EFF first moved to intervene in January of 2019.  Dkt. No. 152.  This Court *denied* EFF's motion except as to an appeal.  Dkt. No. 159.  Undeterred, EFF filed a second motion to intervene. Dkt. No. 177.  This Court again *denied* EFF's motion except as to an appeal.  Dkt. No. 187 at 4:

> A prior order granted EFF's first motion to intervene only to the extent that EFF be allowed to oppose plaintiffs should the prior order on the parties' motions to seal be appealed (Dkt. No. 159 at 2).  EFF now moves to intervene to oppose plaintiffs' motion for leave to file a motion for reconsideration.  Again, the motion is **GRANTED** only for the purpose of opposing plaintiffs if they appeal the instant order.  EFF's motion is otherwise **DENIED**.

EFF now files a *third* motion to intervene.  This motion is uncalled for both procedurally and practically.  Indeed, it is in violation of the Court's Local Rules and subjects EFF to sanctions.

To repeat:  EFF moved to intervene in this Court twice, and twice such motion has been denied, other than as to appeals.  The proper procedural mechanism to request reconsideration of this Court's two orders denying intervention would have been a motion by way of Civil L.R. 7-9(b). Civil L.R. 7-9 permits one to seek leave of court to file a motion to reconsider an interlocutory order.  Civil L. R. 7-9(a).  However, Civil L.R. 7-9(a) prohibits motions for reconsideration without first seeking and obtaining leave of court to file such motions.  *Id.*  The Local Rules do not permit any deviation.  *See* Civil L.R. 7-9(b) ("A motion for leave to file a motion for reconsideration *must* be made in accordance with the requirements of Civil L.R. 7-9.") (emphasis added).  EFF choose not to follow this Rule.  Rather, it bypassed the correct—and harder—path, and simply refiled its third, iterative motion.  This was inappropriate and is sufficient ground on its own to deny EFF's motion.  *Oliver v. City & Cty. of San Francisco*, No. C 07-2460 JL, 2009 WL 10736489, at *2 (N.D. Cal. Mar. 23, 2009); *see, e.g., Liao v. Quidachay*, No. C 05-1888 CW, 2007 WL 196672, at *3 (N.D. Cal. 2007) (holding that a motion for reconsideration which fails to satisfy the requirements of Local Rule 7-9 must be denied); *Ankele v. Johnson*, No. C-04-04811 JW, 2005 WL 1459553, at *2 (N.D. Cal. June 21, 2005) (finding that a failure to obtain leave of court before filing a motion to reconsider under Local Rule 7-9 "alone warrants dismissal" of the motion); *Edgerly v. City & County of San Francisco*, No. C 03-02169 WHA, 2005 WL 106790, at *2 (N.D. Cal. Jan. 13, 2005) (denying a motion for reconsideration under Local Rule 7-9 where the plaintiff failed to

1   obtain prior leave of court).  Indeed, EFF's actions are grounds for sanctions.  Civil L.R. 7-9(c)

2   ("Any party who violates this restriction shall be subject to appropriate sanctions.").

3          Beyond EFF's repeated failure to abide by this Court's orders denying it intervention, EFF

4   does not *need* to intervene.  After all, this Court has shown itself to be quite willing to address and

5   outright deny Apple and Uniloc's motions to seal.  This Court is already positioned to and does

6   "vindicate the public's right of access."  Mot. at 1.  EFF's intervention is therefore unneeded.

**B.      Uniloc already placed the relevant materials on the public record; Uniloc cannot refile Apple's pleadings for Apple.**

7

8          Turning to the materials under seal, for all of the *sturm und drang* of EFF's motion, most of

9   it relates to documents and information that have already been made public.  Uniloc already refiled

10  the documents at issue in the -360 *et seq*. cases, *see* Dkt. Nos. 220 *et seq.* & 222 *et seq.*; agreed to

11  disclose all the documents and information accompanying Apple's opposition to Uniloc's renewed

12  motion to add Uniloc 2017 LLC, *see* -358 Case, Dkt. No. 172; and agreed to disclose nearly all of

13  the documents and information accompany Apple's motion to dismiss, *see* -358 Case, Dkt. No. 173.

14         Regarding the -358 Case materials, Apple did not provide Uniloc with advanced notice of

15  what Apple would file, and so Uniloc had no idea that those documents and information would be

16  at issue.  Had Apple done so, most of it could have been filed in the clear.  In any event, after

17  reviewing those materials, Uniloc filed declarations identifying what it asked to keep under seal and

18  what could be made public.  But, Uniloc cannot simply put the revised filings on the public record

19  for Apple.  Once Apple does so, most of EFF's complaints will fall by the wayside.

20

21  **C.      The few materials that Uniloc and Apple asked this Court to seal qualify as trade secrets and should remain under seal.**

22         EFF seems to agree that the financial information from the Uniloc-Microsoft agreement may

23  be maintained under seal, along with references to it in the pleadings.  Mot. at 4.  EFF also does not

24  mention the sealed third-party declarations which asked this Court to seal licensing information.

25  All that remains in dispute, then, is two categories of information.  First, information related to

26  third-party licensees, including their names, the amounts paid and dates of those payments.  And,

27  second, the Fortress Memorandum.  These will be discussed in turn.

28

### 1. References to third-party licensees and their licensing information should remain under seal.

There are (primarily) two documents that list between 55 to 109 individual licensees, the dates they paid and the amounts they paid for their licenses.  *See* -358 Case, Dkt. No. 164-10 at UNILOC_APPLE_358_1089; -360 Case, Dkt. No. 135-2 at UNILOC_APPLE_2017_18337 through 18339.[18]  Other materials also refer to some of the licensees, such as -360 Case, Dkt. No. 165-2 at 119:14-16.  EFF's suggestion that "Uniloc has not and cannot show that the[] basic facts about patent licenses are sealable trade secrets," Mot. at 6, is frankly baffling.  Uniloc is at a loss for what more Uniloc—or anyone—could possibly provide.  Thirty-five-hundred words of Uniloc's declaration detail, on an item-by-item basis, the individual grounds for redacting or sealing the licensing information.  *See* Dkt. No. 168-2 ¶¶ 8-10.  Uniloc also submitted declarations from more than one-dozen third-parties, Dkt. No. 167-6 to 167-16 & Dkt. No. 168-26, and statements from another twenty-four third-parties who asked Uniloc to relay specific, sealed statements or requests to the court.  Dkt. No. 168-2, ¶¶ 8-10.w.i.

If the Court will forgive the rhetorical questions, how can EFF maintain that the declarations this Court considered in *Oracle*, *Juniper Networks* and *Rembrandt* were sufficient, *see supra* at 11-12, but Uniloc's submissions are not?  And, how can EFF maintain that the license in *Platronics* could be filed under seal in its entirety, even though there was no declaration filed by the party asserting confidentiality, *see supra* at 12, but Uniloc's submissions were not sufficient?

Starting with the older (and earlier-filed) document, -360 Case, Dkt. No. 135-2 is the Conformed Revenue Sharing and Note and Warrant Purchase Agreement, which relates to the financial relationship between Uniloc and its lender, non-party Fortress.  The pages labeled UNILOC_APPLE_2017_18337 through 18339 include a table listing 109 of Uniloc's licenses.  Each row discloses the licensee's name, the date of the license and the amount paid for the license.  Each such set of information is covered by a separate license agreement.  Nearly all of these license agreements include express confidentiality provisions.  Dkt. No. 168-2, ¶ 4.  And, these confidentiality provisions are in almost every instance founded upon court-issued protective orders.

---

[18]   Uniloc (re)filed the document from the -360 *et seq.* Cases with retrenched redactions at -360 Case, Dkt. No. 222-3.

Uniloc's counsel attempted to reach out to the licensees to ask for their positions as to publication of this information.  Dkt. No. 168-2 ¶ 5.  Just two of the more than 100 licensees agreed to the disclosure of their information.  *Id.* ¶¶ 7-7.b.

Eight of the licensees offered to disclose their identities, but asked to maintain the confidentiality of their license payments and described their reasons in the accompanying declarations.  *See Id.* ¶¶ 8-8.h; *see also* Dkt. Nos. 168-5 through 168-8 (declarations from Allscripts Healthcare Solutions, Inc., Avid Technology, Inc., Cerner Health Services, Inc., and NEC Corporation of America); Dkt. No. 168-26 (declaration from Microsoft Corp.).

Twenty-four of the licensees asked that *all* information about them remain confidential and described their reasons in the accompanying declarations.  Dkt. No. 168-2 ¶¶ 9-9.w.i; Dkt. No. 168-9 (sealed declaration); Dkt. No. 168-10 (sealed declaration); Dkt. No. 168-11 (redacted declaration); Dkt. No. 168-12 (sealed declaration); Dkt. No. 168-13 (sealed letter); Dkt. No. 168-14 (sealed declaration); Dkt. No. 168-15 (sealed declaration); Dkt. No. 168-16 (sealed declaration).

The entities that responded explained that confidentiality, including of their identities, was important to the license negotiations.  They further asserted that the disclosure of their identities and the existence and terms of the licenses would cause competitive harm.  Dkt. No. 168-2 ¶¶ 9-9.w.i.

Uniloc is obliged to similarly redact the information of any entity that did not respond or whose response was not sufficiently definite.  *Id.* ¶ 6.  That some licensees did not respond does not mean they do not care, nor does it vitiate Uniloc's obligation to abide by those third-parties' previously expressed wishes.  Rather, it could be that the licensees moved from the addresses identified in the agreements, and so the physical letters did not make it to the intended recipients; or, the in-house or outside counsel no longer receive email at the addresses identified in the agreements; or, any number of other alternatives.  Silence cannot be taken as assent for disclosure.

EFF's statement that "[t]his Court previously concluded that Uniloc 'has not sufficiently shown that the information constitutes trade secrets,'" Mot. at 6, disregards the fact that this Court did not consider the many third-party declarations and explicit requests, which in turn led to the Federal Circuit's reversal on this issue.  So, EFF asks this Court to outright ignore the Federal Circuit's order on remand.

1    EFF's statement that "[t]he basic information in the summary table—licensee names, license

2  dates, and license rates—does not have independent economic value," Mot. at 7, flies in the face of

3  any number of Ninth Circuit orders, such as *In re Elec. Arts*.  *See*  298 Fed. App'x. at 569-70

4  (reversing district court's refusal to seal "pricing terms, royalty rates, and guaranteed minimum

5  payment terms found in a license agreement [because they] plainly [fall] within the definition of

6  'trade secrets'").  It also ignores hundreds of orders from this District, such as those cited *supra* at

7  nn.6-17.[19]  *See also, e.g.*, *Apple v. Samsung* (N.D. Cal. November Order), 2012 WL 5988570, at *4

8  ("The Ninth Circuit has held, and [the Northern District of California] has previously ruled, that

9  pricing terms, royalty rates, and minimum payment terms of licensing *agreements plainly constitute*

10  *trade secrets* and thus are sealable.") (emphasis added).  There is a reason that EFF does not

11  provide a single citation for its overreaching statement on page 7:  It does not because cannot.

12    Rather, and simply as examples, this Court in *Juniper Networks* sealed the "confidential

13  license agreement between Juniper and a third-party, which is information that falls within the

14  definition of 'trade secret.'"  This Court in *Oracle* sealed "non-public information about licensing

15  arrangements with third-parties, which are protected by confidentiality clauses with those third-

16  parties."  This Court in *Platronics* sealed an entire license agreement, even without a declaration

17  from the party in support.  And, this Court in *Rembrandt* sealed "the amounts of royalty payments

18  negotiated in licenses."  Despite EFF's suggestion to the contrary, as Judge Koh recognized in

19  *Apple v. Samsung* (N.D. Cal. August Order), pricing and royalty terms are, in fact, subject to

20  sealing:  "[T]he Court will follow the Ninth Circuit's guidance and seal all information related to

21  the payment terms of Apple's licensing agreements."  And, as Judge Orrick recognized in *Finjan v.*

22  *Sophos, Inc.*, licensees' names too can be protectable information.  *See* No. 14-CV-01197-WHO,

23  2016 WL 7911365, at *1 (N.D. Cal. Aug. 30, 2016) (granting the patentee's request to protect the

24  identity of its licensees during trial by using codenames when referring to those licensees and

25  redacting the licensee's name from the license agreements submitted as evidence in the trial); *see*

26  *also, e.g.*, *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 1004 (N.D. Cal.

27

28  [19]    EFF's statement is also incongruous with its tacit acknowledgement that the licensing
     information related to Microsoft may be filed under seal.

2018) ("Percentages of royalties sought or secured in negotiations or resulting licensing agreements may remain under seal at this juncture, if those terms are not otherwise publicly known. *This includes references to the identities of third-parties to those agreements, assuming the existence of the agreement itself is not otherwise publicly known*.") (emphasis added).

Finally, it is worth noting that the information EFF seeks to unseal—individual licensees names, license dates and licensing rates—is information that this Court has already acknowledged is irrelevant to the substance of Apple's motions to dismiss:

> Apple's motion to dismiss for lack of standing did not directly depend upon information regarding the specific dollar amounts, financial terms, and names of the licensees in the various agreements (with Fortress or third-party licensees) . . . .

Dkt. No. 187 at 3.  So, EFF's argument that "the public has a powerful interest in learning facts relevant to Uniloc's ownership of the patents-in-suit and thus its right to assert those patents," Mot. at 9, misses the mark.  Whether Uniloc licensed a patent or portfolio to a given third-party for a peppercorn or $100,000,000 is irrelevant to Apple's motion.  The issue behind Apple's motion is whether, *in the aggregate*, Uniloc's licenses hit a certain threshold.

In sum, these pages "contain[] non-public information about licensing arrangements with third-parties, which are protected by confidentiality clauses with those third-parties.  [Uniloc and the third-parties] do[] not make this information available to the public.  Public disclosure of this confidential information would cause great and undue harm to [those third-parties], and place [them] at a competitive disadvantage."  *Oracle*, No. 3:10-cv-03561-WHA, Dkt. No. 687 at 2; *compare id. with* Dkt. No. 168-2 ¶¶ 8-10 & Dkt. Nos. 168-5 through 168-16.  In light of the thirteen third-party declarations and the more than 3500 words of the Uniloc declaration which address this document in particular, Uniloc respectfully requests that this Court recognize that Uniloc and the third-parties identified more than simple, "generalized assertions of potential competitive harm" and seal the identified third-party information.

## 2. The Fortress Memorandum and references to it should remain under seal.

As an initial matter, EFF complains that Uniloc's counsel provided assertions regarding the sealing of the Fortress Memorandum, but that Uniloc's counsel is "not competent to discuss the document."  Mot. at 12.  Mr. Foster—one of the undersigned counsel—also represents Fortress in

1    these cases with respect to certain matters, including with respect to the confidentiality of its

2    documents.  As such, the declarant spoke with Mr. Foster (among others) regarding the import of

3    the Fortress Memorandum.

4          Turning to the substance, Dkt. No. 165-10 from the -358 Case is a dense, detailed analysis

5    of Uniloc created by Fortress.  As noted in the Jacobs Declaration, -358 Case, Dkt. No. 173, the

6    first two pages of the Fortress Memorandum summarizes Fortress's prior interactions and business

7    dealings with Uniloc; analyzes Uniloc in depth; and proposes additional investments in Uniloc,

8    based upon Fortress's internal, proprietary analyses of Uniloc.  This information has not been

9    shared outside of Fortress; indeed, no one at Uniloc has seen it.  Fortress's proposal includes terms

10   which are not publicly available and which are considered proprietary to Fortress.  Disclosure of the

11   information contained in the Fortress Memorandum would harm Fortress's ability to negotiate and

12   further deal with Uniloc—which, again, has not seen the information—as well as other third-parties

13   with whom Fortress might seek to deal.  Fortress considers its investment criteria among the most

14   valuable—and thus confidential—information available to it.  *See Rembrandt*, No. C 14-05094

15   WHA (N.D. Cal. Jan. 12, 2016), Dkt. No. 144 at 2 (sealing "business model" information); *see*

16   *also, e.g.*, *Arista Networks*, 2018 WL 2010622, at *2-3 (sealing, *inter alia*, "highly confidential and

17   sensitive information relating to Cisco's financial information and internal development strategies,"

18   "highly confidential and sensitive information relating to Arista's financial and customer

19   information," and "confidential settlement terms between Cisco and third-party, Huawei

20   Technologies"); *Juicero*, 2017 WL 8294276, at *2 (sealing, *inter alia*, "confidential financial and

21   business information"); *Transperfect Global*, 2014 WL 4950082, at *1 (sealing, *inter alia*,

22   "confidential financial and marketing information").

23         Moreover, disclosure of this information would not aid the public in determining whether

24   this Court's decision as to Uniloc's standing is correct.  Whatever personal interest EFF—or anyone

25   else—might have in reading non-party Fortress's analyses of its existing and potential investments,

26   the particulars of it will play no part in verifying whether the Court comes to the right conclusion in

27   this case.  *Center for Auto Safety*, 809 F.3d at 1096 ("The presumption of access is 'based on the

28   need for federal courts, although independent—indeed, particularly because they are independent—

1  to have a measure of accountability and for the public to have confidence in the administration of

2  justice.'").  As such, the public's interest in it is *de minimis.  See also, e.g.*, *Kamakana*, 447 F.3d at

3  1179 (recognizing that there are compelling reasons to seal "court files might have become a

4  vehicle for improper purposes, such as the use of records to gratify private spite, promote public

5  scandal, circulate libelous statements, or release trade secrets") (quotation marks omitted).

6      Turning to the third page of the exhibit, this document includes a list of 55 individual

7  licenses, as discussed above at § III.C.1.  For the reasons discussed therein, the licensing

8  information of those third-parties should remain under seal.

9      Finally, for the same reasons discussed above, the information from the Fortress

10 Memorandum disclosed in Apple's memorandum of law should be redacted.

11 **IV.    CONCLUSION**

12     For the foregoing reasons, Uniloc respectfully requests that the Court deny EFF's third

13 motion to intervene and seal the documents as Uniloc previously indicated.

14

15   Date: December 1, 2020                    Respectfully submitted,

16
                                              */s/ Aaron S. Jacobs*
17                                            James J. Foster
                                              jfoster@princelobel.com
18                                            Aaron S. Jacobs (CA No. 214953)
                                              ajacobs@princelobel.com
19                                            PRINCE LOBEL TYE LLP
                                              One International Place, Suite 3700
20                                            Boston, MA 02110
                                              617-456-8000
21
                                              Matthew D. Vella (CA No. 314548)
22                                            mvella@princelobel.com
                                              PRINCE LOBEL TYE LLP
23                                            410 Broadway Avenue, Suite 180
                                              Laguna Beach, CA 92651
24
                                              ATTORNEYS FOR THE PLAINTIFFS
25

26

27

28