James J. Foster
jfoster@princelobel.com
Aaron S. Jacobs (CA No. 214953)
ajacobs@princelobel.com
PRINCE LOBEL TYE LLP
One International Place, Suite 3700
Boston, MA 02110
Telephone: 617-456-8000
Facsimile: 617-456-8100

Matthew D. Vella (CA No. 314548)
mvella@princelobel.com
PRINCE LOBEL TYE LLP
410 Broadway Avenue, Suite 180
Laguna Beach, CA 92651

Attorneys for Plaintiffs

Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (pro hac vice)
Jennifer Greenblatt (pro hac vice)
Doug Winnard (CA Bar No. 275420)
Andrew J. Rima (pro hac vice)
Emma C. Ross (pro hac vice)
Lauren Abendshien (pro hac vice)
GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP
200 South Wacker Dr., 22nd Floor
Chicago, IL 60606
Tel: (312) 681-6000
Fax: (312) 881-5191
mpieja@goldmanismail.com
alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com
dwinnard@goldmanismail.com
arima@goldmanismail.com
eross@goldmanismail.com
labendshien@goldmanismail.com

Attorneys for Defendant Apple Inc.

Additional counsel listed in the signature block

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNILOC 2017 LLC, UNILOC USA, INC., and UNILOC LUXEMBOURG, S.A., <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., <br><br> Defendant, <br><br> and <br><br> ELECTRONIC FRONTIER FOUNDATION, <br><br> Intervenor. | Case Nos.   3:18-cv-00358-WHA <br> 3:18-cv-00360-WHA <br> 3:18-cv-00363-WHA <br> 3:18-cv-00365-WHA <br> 3:18-cv-00572-WHA <br><br><br> **JOINT MOTION TO SEAL** |

# TABLE OF CONTENTS

I.     Introduction ................................................................................................1

II.    Background ..................................................................................................2

    A.     The -360 *et seq.* cases and the first appeal. .........................................2

    B.     The -358 Case. ...................................................................................3

    C.     The Court's December 2020 order on sealing. ......................................4

    D.     The second appeal and remand. ..........................................................5

    E.     The parties' settlement and dismissal. .................................................7

III.   Law ............................................................................................................7

    A.     The Ninth Circuit's balancing test. .....................................................7

    B.     Business information may constitute sealable trade secrets. ...................9

    C.     Pricing terms, royalty rates and licensing information invariably constitute
          sealable trade secrets. .........................................................................9

    D.     Courts routinely seal licensing information even when sealing is contested or
          not "rubber-stamped." ......................................................................10

IV.    Discussion .................................................................................................14

    A.     There are compelling reasons to redact the references to third-party licensees
          and their licensing information. .........................................................15

          1.     The excerpts of the Settlement and License Agreement between
                Microsoft and Uniloc should be redacted, as should the references to
                it in Apple's Reply. .................................................................15

          2.     The Conformed Revenue Agreement should be redacted. .......................16

          3.     The Jacobs Revised Redactions Declaration should be redacted. .............20

          4.     The sealed declarations should be under seal. ...........................................20

          5.     The Palmer deposition excerpts should be redacted. ................................21

    B.     There are compelling reasons to seal the Fortress Memorandum and redact
          Apple's Motion to Dismiss in the -358 Case. .......................................21

V.     Conclusion ................................................................................................23

1

# TABLE OF AUTHORITIES

2

**CASES**

3

*Apple Inc. v. Psystar Corp.*,
  658 F.3d 1150 (9th Cir. 2011) ......................................................................................8

4

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  727 F.3d 1214 (Fed. Cir. 2013)..................................................................................7, 8

5

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 5:11-cv-01846-LHK,

6

  2012 WL 3283478 (N.D. Cal. Aug. 9, 2012) ...............................................................11

7

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 5:11-cv-01846-LHK,

8

  Dkt. No. 1256 (N.D. Cal. July 17, 2012) .....................................................................11

9

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 5:11-cv-01846-LHK,

10

  Dkt. No. 1257 (N.D. Cal. July 17, 2012) .....................................................................10

11

*Arista Networks, Inc. v. Cisco Sys., Inc.*,
  No. 5:16-cv-00923-BLF,
  2018 WL 2010622 (N.D. Cal. Apr. 30, 2018) ..........................................................9, 22

12

*Center for Auto Safety v. Chrysler Group, LLC*,
  809 F.3d 1092 (9th Cir. 2016) ...............................................................................7, 8, 22

13

*Cinpres Gas Injection Ltd. v. Volkswagen Grp. of Am. Inc.*,
  No. 12-cv-13000,

14

  2013 WL 11319319 (E.D. Mich. Feb. 14, 2013) ..........................................................10

15

*Droplets, Inc. v. Yahoo! Inc.*,
  No. 12-cv-03733-JST,

16

  Dkt. No. 876 (N.D. Cal. Sept. 2, 2021).......................................................................10

17

*Droplets, Inc. v. Yahoo!, Inc.*,
  No. 4:12-cv-03733-JST,

18

  Dkt. No. 638 (N.D. Cal. Jan. 28, 2021) ......................................................................10

19

*Finjan, Inc. v. Juniper Networks, Inc.*,
  No. 3:17-cv-05659-WHA,

20

  Dkt. No. 485 (N.D. Cal. May 22, 2019) ......................................................................13

21

*Finjan, Inc. v. Sophos, Inc.*,
  No. 14-cv-01197-WHO,
  2016 WL 7911365 (N.D. Cal. Aug. 30, 2016) ............................................................19

22

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
  331 F.3d 1122 (9th Cir. 2003) ......................................................................................7

23

*Hagestad v. Tragesser*,
  49 F.3d 1430 (9th Cir. 1995) ........................................................................................8

24

*Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) .........................................................................19

25

*Illumina, Inc. v. BGI Genomics Co.*,
  No. 3:20-cv-01465-WHO,

26

  Dkt. No. 449 (N.D. Cal. July 23, 2021).......................................................................10

27

*Illumina, Inc. v. BGI Genomics Co.*,
  No. 3:20-cv-01465-WHO,
  Dkt. No.471 (N.D. Cal. Sept. 9, 2021) ........................................................................10

28

ii

*In re Casewell*,
   18 R.I. 835, 29 A. 259 (1893) ................................................................................8

*In re Elec. Arts, Inc.*,
   298 F. App'x 568 (9th Cir. 2009) ...............................................................9, 11, 13

*In re Koninklijke Philips Patent Litig.*,
   No. 4:18-cv-01885-HSG,
   2020 WL 1865294 (N.D. Cal. Apr. 13, 2020) .....................................................22

*In re: Xyrem (Sodium Oxybate) Antitrust Litig.*,
   No. 20-md-02966-LHK,
   Dkt. No. 139 (N.D. Cal. Aug. 13, 2021) ..............................................................10

*Intel Corp. v. Tela Innovations, Inc.*,
   No. 3:18-cv-02848-WHO,
   2021 WL 783560 (N.D. Cal. Mar. 1, 2021) ..........................................................10

*Juicero, Inc. v. iTaste Co.*,
   No. 5:17-cv-01921-BLF,
   2017 WL 8294276 (N.D. Cal. Jun. 28, 2017) ................................................9, 22

*Kamakana v. City & Cty. of Honolulu*,
   447 F.3d 1172 (9th Cir. 2006) ........................................................................8, 23

*McDonnell v. Southwest Airlines Co.*,
   292 F. App'x 679 (9th Cir. 2008) ...........................................................................9

*Nixon v. Warner Commnc'ns, Inc.*,
   435 U.S. 589 (1978) .....................................................................................8, 15

*Oracle Am., Inc. v. Google, Inc.*,
   No. 10-CV-03561-WHA,
   Dkt. No. 540 (N.D. Cal. Oct. 16, 2011) ...............................................................11

*Oracle Am., Inc. v. Google, Inc.*,
   No. 3:10-cv-03561-WHA,
   Dkt. No. 687 (N.D. Cal. Jan. 10, 2012) .........................................................12, 20

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
   307 F.3d 1206 (9th Cir. 2002) ................................................................................7

*Rembrandt Patent Innovations, LLC v. Apple Inc.*,
   No. 3:14-cv-05094 WHA,
   Dkt. No. 144  (N.D. Cal. Jan. 12, 2016) ...............................................................13

*Rodman v. Safeway, Inc.*,
   No. 3:11-cv-03003-JST,
   2014 WL 12787874 (N.D. Cal. Aug. 22, 2014) ......................................................9

*Transperfect Global, Inc. v. MotionPoint Corp.*,
   No. 4:10-cv-02590-CW,
   2014 WL 4950082 (N.D. Cal. Sept. 25, 2014) ................................................9, 22

*Uniloc 2017 LLC v. Apple, Inc.*,
   964 F.3d 1351 (Fed. Cir. 2020)...............................................................................3

*Uniloc USA, Inc. v. Apple Inc.*,
   25 F.4th 1018 (Fed. Cir. 2022) ..........................................................5, 8, 14, 17

*United States v. Amodeo*,
   71 F.3d 1044 (2d Cir.1995)......................................................................................7

*Valley Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*,
   798 F.2d 1289 (9th Cir. 1986) ................................................................................7

*Van v. Language Line Servs., Inc.*,
   No. 5:14-cv-03791-LHK,
   2016 WL 3566980 (N.D. Cal. Jun. 6, 2016)...............................................................................9

Pursuant to the Court's Minute Entry, Dkt. No. 252, Plaintiffs Uniloc 2017 LLC, Uniloc USA, Inc. and Uniloc Luxembourg, S.A. (collectively "Uniloc")[1] and Defendant Apple Inc. ("Apple") (collectively "the parties") hereby submit this joint supplemental brief regarding sealing. The parties respectfully request that the Court seal the few remaining documents at issue as identified in the concurrently filed Administrative Motion to Seal.

## I.    INTRODUCTION

This case is on remand to address a narrow set of documents and issues with respect to sealing. In particular, the Federal Circuit directed this Court to make "particularized determinations," based upon the existing record, that balance the public's right of access against the competitive injury that third parties would suffer from release of their confidential information. The Federal Circuit also provided guidance to explain that the public's right of access stems from an interest in understanding the judicial process, not to an interest in, or curiosity about, documents (including patent licenses) generally.

Applying the Federal Circuit's guidance, and Ninth Circuit law, this Court should seal the remaining materials in dispute. The public already has the information needed to understand the substantive motions and Court rulings that give rise to this sealing dispute. Specifically, the public already knows that Uniloc generated only about $14 million of $20 million set by the Agreement. And, there is sworn testimony in the public record confirming the accuracy of that $14 million calculation. Because the public already has the information needed to understand Apple's motions and this Court's rulings, no public interest would be served by unveiling the specific amounts paid by scores of third parties, most of which does not even factor into the $14 million total.

On the other hand, these scores of third parties would risk competitive injury if their information were disclosed. Disclosure of that information would create information asymmetry in future licensing negotiations, as declarants from many of the third parties attested. Because this competitive harm outweighs the public's curiosity about which licensees paid which amounts, this Court should seal the remaining information at issue.

---

[1]    Uniloc 2017 LLC was added as a plaintiff to the -360, -363, -365 and -572 Cases (collectively "the -360 *et seq.* cases"), but not to the -358 Case.

## II.    BACKGROUND

The parties provide the following summary of the relevant events over the past three years. Given the Court's comments regarding the difficulty of accessing documents from years past across the various dockets, significant documents referenced herein are attached the instant Motion.[2]

### A.    The -360 *et seq.* cases and the first appeal.

Apple moved to dismiss the -360 *et seq.* cases in October 2018 for lack of standing.  In short, Apple argued that the Uniloc entities had granted their creditor, Fortress Credit Co. LLC ("Fortress"), a license to Uniloc's patents, with the right to sublicense in the event of a default. Apple further argued Uniloc had defaulted because the agreements between them required Uniloc to obtain at least $20 million in total licensing revenue between April 1, 2016, and March 31, 2017, during which time it obtained about $14 million. So, Apple concluded, Uniloc lacked the right to exclude Apple from practicing the patents.  This Court denied this iteration of Apple's motion.  Ex. 16 (-360 Case, Dkt. No. 220-26 (Order)).

Apple's motion attached materials that disclosed, *inter alia*, licensing details of more than 100 third-parties.  The parties moved to seal this and other information submitted with the briefing.

EFF moved to intervene to oppose the parties' motions to seal.

In January 2019, the Court denied the parties' motions to seal and denied EFF's motion to intervene. Ex. 17 (-360 Case, Dkt. No. 159 (Order)).  Shortly thereafter, Uniloc put about 90% of the disputed materials into the public record and filed a motion for leave to file a motion for reconsideration as to the rest.  *See generally* Dkt. No. 168 *et seq.*  EFF then filed its second motion to intervene.

In May 2019, the Court denied Uniloc's motion for reconsideration and denied EFF's second motion to intervene, other than as to an appeal.  Ex. 18 (-360 Case, Dkt. No. 187 (Order)).

---

[2]      The exhibit numbering in both this Motion and the accompanying Administrative Motion are identical.  Exhibits 1-15 are the to-be-sealed documents, with the sealed or redacted versions filed with this Motion and the unsealed documents filed with the Administrative Motion.  Exhibits 16 and up include prior pleadings, unpublished cases and the like, and are attached hereto to make it easier for the Court to access them.

To avoid redundant citations to multiple records, citations to the record from the -360 *et seq.* cases will be to the -360 Case docket.

Uniloc filed an interlocutory appeal in which EFF intervened.  *See generally*, Appeal No. 19-1922 (Fed. Cir.).  In its August 2020 opinion, the Federal Circuit concluded, first, that this Court did not abuse its discretion by strictly applying the local rules to deny "Uniloc's requests to seal its purportedly confidential information" due to originally overbroad requests.  *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1063 (Fed. Cir. 2020) ("*Uniloc I*") (a copy is included herewith as Ex. 19).  Second, though, the Federal Circuit found that the third parties' requests were nonetheless entitled to consideration and so vacated that part of the order:

> Such third parties were not responsible for Uniloc's filing of an overbroad sealing request.  Their information calls for an analysis not dependent on the [local rules] overbreadth rationale just discussed.
>
> Significantly, . . . many of Uniloc's licensees have submitted declarations stating that they wish their licensing information to remain confidential and that the disclosure of such in-formation would cause them material competitive injury.
>
> [W]e conclude that the district court failed to make findings sufficient to allow us to adequately assess whether it properly balanced the public's right of access against the interests of the third parties in shielding their financial and licensing information from public view.

*Id.* at 1363-64 (citations omitted).  The court also recognized that third-party Fortress, as Uniloc's lender, presented an intermediate situation, and so left to this Court's discretion the question of whether Fortress's materials should be kept under seal.  *Id.* at 1364 n.8.

Following remand, in November 2020, Uniloc put its information on the record.  And, rather than drag out the issue, Fortress published its confidential information from the -360 *et seq.* cases. Ex. 20 (-360 Case, Dkt. No. 220 (Mot. to Place Documents in the Public Record)).  Uniloc then filed a motion to seal the remaining third-party information.  *See generally* Dkt. No. 222 *et seq.*

**B.    The -358 Case.**

Apple filed a similar motion to dismiss the -358 Case in October 2020.  The Court granted that motion on December 4, 2020.  Ex. 21 (-358 Case, Dkt. No. 186 (Order)).

Apple's motion to dismiss the -358 Case relied upon a few additional confidential documents, including the "Fortress Memorandum," which were subject to another motion to seal. *See generally* -358 Case, Dkt. No. 164.  Uniloc and Fortress filed a declaration with respect to that motion, stating that some documents could be put into the public record and asking that others be redacted or sealed.  Ex. 22 (-358 Case, Dkt. No. 172 (Jacobs Decl.)).

**C.     The Court's December 2020 order on sealing.**

The motion to seal in the -358 Case lined up in time and basic underlying substance with the motion in the -360 *et seq.* cases following remand.  EFF filed its third motion to intervene.

The Court heard the parties' arguments on December 17, 2020, and issued its Order on December 22, 2020.  To start, the Court quoted its earlier (reversed-in-part Order) to emphasize its theory that the public has a distinct, heightened interest in knowing the details of patent licenses:

> [T]he public in turn has a strong interest in knowing the full extent of the terms and conditions involved in [the patentee's] exercise of its patent rights and in seeing the extent to which [the patentee's] exercise of the government grant affects commerce.

Ex. 23 (-360 Case, Dkt. No. 233 (Order)) at 2-3.  And further still:

> [A] patent is a *public* grant of rights.  A patent owner is a tenant on a plot within the realm of public knowledge, and a licensee is her sub-tenant.  The public has every right to account for all its tenants, all its sub-tenants, and (more broadly) anyone holding even a slice of the public grant.

*Id.* at 5 (emphasis by the Court).

The Court acknowledged that twenty-three licensees asked the Court to keep their information under seal, and that they provided reasons for their requests by way of Uniloc's declaration.  But, the Court discarded this evidence because "[a]ll of this is hearsay."  *Id.* at 4.  The Court also rejected, *inter alia*, the thirteen (not hearsay) declarations filed by third-parties because they were submitted before—and not after—the Federal Circuit's first remand:

> Given the Federal Circuit's public remand to more carefully consider their interests, the third parties' silence speaks volumes.  We are left to balance the public interest against either stale declarations from nearly two years ago (for those eight [sic.[3]] who provided them) or Uniloc's hearsay.

*Id.* at 5.

Next, the Court found that it was "[c]onclusive" that "the dates and dollar amounts involved in Uniloc's patent licenses 'go to the heart of' the primary dispute, that of Uniloc's standing (or lack thereof) to sue."  And finally, the Court concluded that Fortress had not filed a declaration in support of sealing the Fortress Memorandum, so it would be made public.  *Id.* at 6.

---

[3]     In addition to eight third-party declarations filed under seal, another five were filed in the public record.

In light of the Court's position with respect to the weight afforded patent licenses; the Court's conclusion that none of the existing evidence would be considered; and the importance the Court placed upon the individual licensing details, the Court denied the parties' motions to seal and allowed EFF to intervene.  *Id.* at 7.

**D.      The second appeal and remand.**

Uniloc appealed the Court's December 22, 2020, Order.  *See generally* Appeal No. 21-1568 (Fed. Cir.).  The Federal Circuit held oral arguments on December 6, 2021, and on February 9, 2022, a divided panel reversed and remanded the Court's Order.  *Uniloc USA, Inc. v. Apple Inc.*, 25 F.4th 1018 (Fed. Cir. 2022) ("*Uniloc II*) (a copy is included herewith as Ex. 24).

The Federal Circuit first concluded that the Court abused its discretion by "failing to follow our remand instructions to make particularized determinations as to whether the third-party licensing information sought to be sealed should be made public."  *Id.* at 1023.

> The first time this case appeared before us, "the district court failed to make findings sufficient to allow us to adequately assess whether it properly balanced the public's right of access against the interests of the third parties in shielding their financial and licensing information from public view."  We explained that "there is no indication in the record that the court assessed whether any of the third-party information was protectable as a trade secret or otherwise entitled to protection under the law."  We thus remanded and instructed that the district court "make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public."  Yet, on remand, the district court again neglected to make sufficient findings.  Nowhere in the record does the district court discuss whether any of the third-party materials constitute protectable trade secrets.

*Id.*  In short, the Federal Circuit found that the Court should have consider the evidence already in the record, evidence that Federal Circuit instructed the Court to consider in *Uniloc I*, but which this Court thereafter concluded was hearsay or filed too long ago.

The Federal Circuit also rejected the notion that the "public's right of access" is greater for patent licenses than other types of public records:

> We also disagree with the district court's statements purportedly supporting its decision concerning the public's right of access to information relating to patent licenses. . . .
>
> \* \* \*
>
> The district court stated that the public has a strong interest in knowing the full extent of the terms and conditions involved in the exercise of its patent rights and in seeing the extent to which the patentee's exercise of the government grant

5

> affects commerce.  But this is not an antitrust case or an FTC investigation involving unlawful restraint of trade or monopolization.  It is a suit for patent infringement.  Absent an issue raised by the parties concerning license rights and provisions, there is no public interest or entitlement to information concerning consideration for the grant of licenses. . . . But we have seen no citation of a rule of law providing a presumption of access in a patent infringement suit to information concerning consideration for the licensing of a patent.

*Id.* at 1024.  At oral argument, the panel questioned EFF on whether any case held "that the public has an interest in how much people license a patent for."  Oral Arg. at 23:45-24:40, *available at* https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1568_12062021.mp3.  EFF identified none.  *Id.*  Nor did it defend on appeal this Court's suggestion that patents were similar to plots of public land and were thus entitled to a greater presumption of public access.  *Id.* (admitting to "misgivings" with that analogy); *see also* Ex. 25 (Appeal No. 21-1568, Dkt. No. 76).

The Federal Circuit then addressed the information that the parties sought to seal, including the individual licenses and the Fortress Memorandum:

> The district court did note that a key issue in this case was whether Uniloc had received at least $20 million in royalties needed under licensing agreements to provide it with standing to sue.  But that fact can be proved without opening up all the licenses that the court granted access to.
>
> Lastly, for the Fortress investment memorandum, any procedural failings of Uniloc and Fortress cannot justify unsealing the information of third parties.  The district court should have considered whether the interests of the implicated third parties outweigh the public's interest in seeing individual licensing details that are not necessary for resolving this case.

*Id.*  The court thus reversed and remanded the matter for a second time.

On March 11, 2022, EFF petitioned for rehearing and rehearing *en banc*.  The petition began:  "The public's right of access to judicial records is 'sacrosanct.'"  Ex. 25 at 2 (Appeal No. 21-1568, Dkt. No. 76 (quoting the dissent)).  Continuing EFF asserted:

> The panel majority turned the presumption of public access on its head:  instead of treating the public's right to access dispositive filings as sacrosanct, it sanctified the secrecy of patent licensing information.  The majority created a patent-specific exemption from the general presumption of public access—an error which conflicts with binding precedents of the Supreme Court, this Court, and the Ninth Circuit.

*Id.*  And, further still:  "The panel majority drastically cabined the presumption of public access to judicial records by creating a categorical exemption for records containing information about patent licenses."  *Id.* at 4.  This bears repeating:  EFF asserted in its petition to the Federal Circuit that

1   *Uniloc II* imposed a categorical exemption to the right of public access for patent license

2   information.  This suggests EFF believes that the outcome on remand here—sealing of patent

3   license information—would be a foregone conclusion.

4          The court invited the parties to respond, *see* Appeal No. 21-1568, Dkt. No. 85, which they

5   did on April 13, 2022, *see id.*, Dkt. Nos. 89-90.  The Federal Circuit denied EFF's petition without

6   dissent on April 28, 2022, Ex. 26 (-360 Case, Dkt. No. 249 (Order)).  The mandate issued on May

7   5, 2022, Ex. 27 (-360 Case, Dkt. No. 250 (Mandate)).

8          **E.     The parties' settlement and dismissal.**

9          Uniloc separately appealed this Court's order dismissing the -358 Case.  *See* -358 Case, Dkt.

10  No. 191.  However, during the pendency of that appeal, Uniloc and Apple agreed to settle the cases

11  between them and so, in June of 2021, the parties dismissed the substantive appeal of the -358 Case.

12  *See* -358 Case, Dkt. No. 200.

13  **III.    LAW**

14         Documents filed with courts are presumed to be accessible to the public to allow the public

15  to hold courts accountable for their reasoning.  This presumption can be rebutted for dispositive

16  motions, however, by a showing of "compelling reasons" to seal, such as protection of trade secrets.

17  The burden to overcome the presumption of public access rests on the proponent of sealing.

18         **A.     The Ninth Circuit's balancing test.**

19         The Ninth Circuit "start[s] with a strong presumption in favor of access to court records."

20  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Foltz*

21  *v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).  The touchstone of this

22  "presumption of access is 'based on the need for federal courts, although independent—indeed,

23  particularly because they are independent—to have a measure of accountability and for the public

24  to have confidence in the administration of justice.'"  *Id.* (quoting *U.S. v. Amodeo*, 71 F.3d 1044,

25  1048 (2d Cir. 1995)); *see, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir.

26  2013))  ("The presumption in favor of public access to court documents is based on 'promoting the

27  public's understanding of the judicial process and of significant public events.'") (quoting *Valley*

28  *Broad. Co. v. U.S. Dist. Court for Dist. of Nev.*, 798 F.2d 1289, 1294 (9th Cir. 1986)).

1      This said, "the right to inspect and copy judicial records is not absolute." *Nixon v. Warner*

2  *Commnc'ns, Inc.*, 435 U.S. 589, 598 (1978).  As the Supreme Court explained, "'the common-law

3  right of inspection has bowed before the power of a court to insure that its records' are not . . .

4  sources of business information that might harm a litigant's competitive standing." *Id.* (quoting *In*

5  *re Casewell*, 18 R.I. 835, 836, 29 A. 259 (1893)).  The Ninth Circuit asks whether there are

6  "compelling reasons" to seal information filed with a motion that is "more than tangentially related

7  to the merits of the case," *e.g.*, a dispositive motion.  *Center for Auto Safety*, 809 F.3d at 1096.  If

8  so, the presumption of public access may be overcome, even for outcome-determinative documents.

9      As is currently relevant, the Ninth Circuit recognizes "compelling reasons" to seal

10  documents where their release "'*might have become* a vehicle for improper purposes,' such as the

11  use of records to gratify private spite, promote public scandal, circulate libelous statements, or

12  *release trade secrets*." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)

13  (quoting *Nixon*, 435 U.S. at 598) (emphasis added); *see, e.g.*, *Apple v. Samsung*, 727 F.3d at 1228

14  (applying Ninth Circuit law) (reversing the district court; ordering sealed "market research reports

15  [that] contain information that Apple's competitors could not obtain anywhere else"); *Apple Inc. v.*

16  *Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011) ("publication of materials that could result in

17  infringement upon trade secrets has long been a factor that would overcome" public access).

18      The Ninth Circuit thus applies a uniform balancing test when considering whether to seal

19  documents accompanying dispositive motions.  On one side is the public's general interest in

20  understanding the bases for the outcome in the given case.  There are no categories of information

21  for which this side of the scale is weighed more (or less) heavily; patent licensing information is

22  weighed the same as any other type of information. *Uniloc II*, 25 F.4th at 1024.  On the other side

23  of the scale are private parties' interests in avoiding competitive harm caused by release of their

24  sensitive information, such as trade secrets.  If there are compelling reasons to protect that

25  information, it may be sealed, even if the sealed information is dispositive. *Hagestad v. Tragesser*,

26  49 F.3d 1430, 1434 (9th Cir. 1995) ("The factors relevant to a determination of whether the strong

27  presumption of access is overcome include the public interest in understanding the judicial process

28

1  and whether disclosure of the material could result in improper use of the material for scandalous or

2  libelous purposes or infringement upon trade secrets.") (cleaned up).

3        **B.    Business information may constitute sealable trade secrets.**

4        Non-public information regarding pricing strategy, business decision-making and financial

5  records may constitute trade secrets that may be —and, in this District, is routinely—sealed.

6  *Rodman v. Safeway, Inc.*, No. 3:11-cv-03003-JST, 2014 WL 12787874, at *2 (N.D. Cal. Aug. 22,

7  2014); *see, e.g.*, *Arista Networks, Inc. v. Cisco Sys., Inc.*, No. 5:16-cv-00923-BLF, 2018 WL

8  2010622, at *2-3 (N.D. Cal. Apr. 30, 2018) (sealing, *inter alia*, "highly confidential and sensitive

9  information relating to Cisco's financial information and internal development strategies," "highly

10 confidential and sensitive information relating to Arista's financial and customer information," and

11 "confidential settlement terms between Cisco and third-party, Huawei Technologies"); *Juicero, Inc.*

12 *v. iTaste Co.*, No. 5:17-cv-01921-BLF, 2017 WL 8294276, at *2 (N.D. Cal. Jun. 28, 2017) (sealing,

13 *inter alia*, "confidential financial and business information"); *Van v. Language Line Servs., Inc.*,

14 No. 5:14-cv-03791-LHK, 2016 WL 3566980, at *2 (N.D. Cal. Jun. 6, 2016) (ordering sealed "the

15 identities of Defendants' clients, billing rates, billing amounts, and the subject matter of calls");

16 *Transperfect Global, Inc. v. MotionPoint Corp.*, No. 4:10-cv-02590-CW, 2014 WL 4950082, at *1

17 (N.D. Cal. Sept. 25, 2014) (sealing, *inter alia*, "confidential financial and marketing information");

18 *see also, e.g.*, *McDonnell v. Southwest Airlines Co.*, 292 F. App'x 679, 680 (9th Cir. 2008)

19 (affirming finding that "compelling reasons" supported denying public access to "documents

20 contain[ing] trade secrets and confidential procedures and communications").

21       **C.    Pricing terms, royalty rates and licensing information invariably constitute**
             **sealable trade secrets.**
22

23       More than a decade ago, the Ninth Circuit explained that the private interest in "pricing

24 terms, royalty rates, and guaranteed minimum payment terms found in [a license agreement] . . .

25 plainly falls within the definition of 'trade secrets,'" and so meets the "'compelling reasons'

26 standard" to seal.  *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2009) (reversing district

27 court's refusal to seal licensing terms).  Courts of this District consistently follow the Ninth Circuit

28 in application of *In re Electronic Arts*; they recognize that patent-license information is a trade

secret and so constitutes a compelling reason to seal.  *See generally* Appeal No. 21-1568, Dkt. Nos.

23 at 30-37 (Principal Br.); 36 at 7-10 (Reply Br.); 70-1 (Supp. Auth.) (collecting 40 cases in this District sealing patent licensing information).  This consistent practice has continued following this Court's published opinion on December 22, 2020.[4]  By contrast, EFF has never identified a single contrary example from the Ninth Circuit during eight rounds of briefing and five oral arguments.[5]

At the hearing, the Court indicated it placed no weight on this consistent practice because "most judges -- and I mean the vast majority of judges will rubber stamp anything that the parties stipulate to." Tr. at 11:3-5 (May 12, 2022); *see also id.* at 12:11-13, 13:1-4.  The fact that information was sealed in response to a stipulation does not mean that each of those rulings was "rubber stamped."  For instance, a judge may have independently reviewed the request to seal, determined it was well-supported, and ordered the licensing information sealed without the need for further comment.  However, even assuming some of the orders from this Court's fellow judges of the District were "rubber stamped" in the manner the Court described, this exact information has been consistently sealed in circumstances where the court explicitly reviewed the sealing request on the merits or did so in response to a "contested motion." *Id.* at 11:12-13.

### D. Courts routinely seal licensing information even when sealing is contested or not "rubber-stamped."

This Court previously pointed to *Apple v. Samsung* as a paradigm example of what happens when parties did not oppose one another's motions to seal.  Ex. 23 (Dkt. No. 233) at 4.  However, that case did involve an intervenor—Reuters America LLC—who intervened specifically to oppose the parties' motions to seal.  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 5:11-cv-01846-LHK, Dkt. No. 1257 (N.D. Cal. July 17, 2012) (citation omitted) (attached hereto as Ex. 33).  Judge Koh

---

[4]      Uniloc has identified at least six such instances:  *Illumina, Inc. v. BGI Genomics Co.*, No. 3:20-cv-01465-WHO, Dkt. No.471, slip op. at 27 (N.D. Cal. Sept. 9, 2021) (attached hereto as Ex. 28); *Droplets, Inc. v. Yahoo! Inc.*, No. 12-cv-03733-JST, Dkt. No. 876, slip op. at 2-3 (N.D. Cal. Sept. 2, 2021) (attached hereto as Ex. 29); *In re: Xyrem (Sodium Oxybate) Antitrust Litig.*, No. 20-md-02966-LHK, Dkt. No. 139, slip op. at 5 (N.D. Cal. Aug. 13, 2021) (attached hereto as Ex. 30); *Illumina, Inc. v. BGI Genomics Co.*, No. 3:20-cv-01465-WHO, Dkt. No. 449, slip op. at 18 (N.D. Cal. July 23, 2021) (attached hereto as Ex. 31); *Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2021 WL 783560, at *14 (N.D. Cal. Mar. 1, 2021); *Droplets, Inc. v. Yahoo!, Inc.*, No. 4:12-cv-03733-JST, Dkt. No. 638, slip op. at 3 (N.D. Cal. Jan. 28, 2021) (attached hereto as Ex. 32).

[5]      EFF's final appellate brief did cite *a* case where licensing information was unsealed: *Cinpres Gas Injection Ltd. v. Volkswagen Grp. of Am. Inc.*, No. 12-cv-13000, 2013 WL 11319319 (E.D. Mich. Feb. 14, 2013).  Appeal No. 21-1568, Dkt. No. 31 at 17.  This unpublished opinion from a district court in the Sixth Circuit has no bearing here.

allowed Reuters to intervene the same day that she rejected *thirty-five* of the parties' motions to

seal. *Id.*, Dkt. No. 1256 at 1 (attached hereto as Ex. 34).  In so doing, she specifically credited Your

Honor's admonitions on sealing:

> As Judge Alsup explained in *Oracle America v. Google, Inc*., 10-CV-03561-WHA,
> at ECF No. 540 [(N.D. Cal. Oct. 16, 2011)], "The United States district court is a
> public institution, and the workings of litigation must be open to public view.
> Pretrial submissions are a part of trial."  Accordingly, Judge Alsup advised counsel
> that "unless they identify a limited amount of exceptionally sensitive information
> that truly deserves protection, the motions will be denied outright."

*Id.* at 2.

In her subsequent August 2012 order—after Reuters intervened—Judge Koh considered

Apple's request to seal, *inter alia*, its financial information, source code, market research and, as is

most relevant to us, the "terms of licensing agreements that it has entered into with various third

parties."  In a slip opinion that ran for 29 pages, she denied more requests than it granted.  Indeed,

the word "denied" appeared twice as often as "granted," and the denials included many requests to

seal that were unopposed.  But still,

Judge Koh sealed the licensing terms:

"[T]he Court will follow the Ninth

Circuit's guidance and seal all

information related to the payment

terms of Apple's licensing

agreements."  *Apple Inc. v. Samsung*

*Elecs. Co., Ltd.*, No. 5:11-cv-01846-

LHK, Dkt. No. 1649, 2012 WL

3283478, at *6 (N.D. Cal. Aug. 9,

2012) (citing *In re Elec. Arts, Inc.*,

298 Fed. App'x at 569).  This was no rubber-stamp order.  She wrote:  "The Court has reviewed

each exhibit that Apple seeks to seal.  The following table [included here] reflects the Court's

rulings with respect to Apple's proposed redactions to each trial exhibit.  All rulings are pursuant to

the rationale articulated above."  *Id.*; *see also, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No.

| Trial Exhibit | Ruling |
| --- | --- |
| DX630 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with regards to the proposed redactions to information in the column labeled "Payments," but DENIES Apple's motion with regards to the proposed redactions to information in columns labeled "Licensor," "Title," "Effective Date," "Date Last Signed," "Licensed Products/Technology," "Term," and "Geographic Scope." |
| DX757 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to the royalty rates and payments, but DENIES it with respect to the list of Apple's licensors. |
| DX758 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with respect to the proposed redactions of royalty rates and payments, but DENIES it with respect to the proposed redactions of the list of Apple's licensors. |
| PX76 | GRANTED-IN-PART and DENIED-IN-PART.  The Court GRANTS Apple's motion with regards to the proposed redactions to information in the column labeled "Monetary Consideration," but DENIES Apple's motion with regards to the proposed redactions to information in columns labeled "Apple License Partner," "Effective Date," "Expiration Date," "Term of Agreement," "Includes Rights to UMTS-Related Patents?," "Includes Rights to Other Patents?," and "Cross License?" |
| PX78 | GRANTED.  Apple seeks only to redact quantity, unit price, and amounts due to Intel in this invoice, all of which relate to capacity or financial terms of third-party agreements. |
| DX593 | GRANTED.  Apple seeks only to redact proposed payment terms for a settlement, cross-licensing agreement between Apple and Motorola. |

5:11-cv-01846-LHK, 2012 WL 5988570, at *4 (N.D. Cal. Nov. 29, 2012) (denying more requests to seal than were granted, but still sealing "the pricing, royalty, and payment terms of Exhibits 12-1 and 12-2").

Judge Koh's actions in the *Apple v. Samsung* case mirrored (and followed) this Court's history with respect to sealing licensing terms, both before and after the Orders that led us here.  For example, in *Oracle Am., Inc. v. Google, Inc.*, No. 3:10-cv-03561-WHA, Dkt. No. 687 at 2 (N.D. Cal. Jan. 10, 2012) (attached hereto as Ex. 35), this Court called balls and strikes with respect to both parties' unopposed motions to seal, even without an intervenor.  The Court denied nearly the entirety of both parties' requests, with the exception of just two exhibits.  One such exhibit, "Exhibit J," was described as containing, among other information, "non-public information about licensing arrangements with third-parties, which are protected by confidentiality clauses with those third-parties."  The evidence in support of sealing Exhibit J came by way of a declaration from associate at defendant Google's outside counsel:

> 3.  Exhibit J to the Dearborn Decl. (Dkt. No. 573) is an excerpt from the Expert Report of Dr. Gregory K. Leonard ("the Leonard Report").  The Court previously has granted a

> * * *

> the intellectual property at issue in this lawsuit.  Additionally, the report contains non-public information about licensing arrangements with third-parties, which are protected by confidentiality clauses with those third-parties.  Google does not make this information available to the public.  Public disclosure of this confidential information would cause great and undue harm to Google, and place it at a competitive disadvantage.

*Oracle*, No. 3:10-cv-03561-WHA, Dkt. No. 600 (N.D. Cal. Jan. 10, 2012) (attached hereto as Ex. 36) (highlighting added).  Despite rejecting Oracle's motion with respect to all but two exhibits, this Court sealed Exhibit J.  The Court stressed that "Google does not make this information available to the public.  *Public disclosure of this confidential information would cause great and undue harm to Google, and place it at a competitive disadvantage*."  *Id.* at 1-2 (emphasis added).  So, as is evident, the Court scoured the record, rejected around 80% of the requests to seal, and yet still sealed this licensing information.  This Court did the same in *Plantronics, Inc. v. Aliph, Inc.*, No. 3:09-cv-

1  01714-WHA, Dkt. No. 295 at 2 (N.D. Cal. Dec. 5, 2013) (attached hereto as Ex. 37), and

2  *Rembrandt Patent Innovations, LLC v. Apple Inc.*, No. 3:14-cv-05094 WHA, Dkt. No. 144 (N.D.

3  Cal. Jan. 12, 2016) (attached hereto as Ex. 38).

4        Of particular interest—in both content and timing—is this Court's order in *Finjan, Inc. v.*

5  *Juniper Networks, Inc.*, No. 3:17-cv-05659-WHA.  In *Finjan v. Juniper*, Finjan moved to seal

6  several Juniper documents.  One of Juniper's outside counsel submitted a declaration on April 5,

7  2019, in support of the motion to seal.  As is relevant for present purposes, Exhibit 7 was identified

8  as a "full, unredacted confidential license agreement between Juniper and a third party."  Juniper's

9  outside counsel's declaration stated:

| | Document | Finjan's Designations of Portions to Be Sealed | Juniper's Designations of Portions to Be Sealed | Juniper's Basis for Sealing |
|---|---|---|---|---|
| | | * * * | | |
| 21 22 | Exhibit 7 to Kastens Declaration | Entire Exhibit | Entire Exhibit | Confidential License Agreement |
| | | * * * | | |

| | |
|---|---|
| 8 9 10 11 | 10.    Additionally, I am informed and believe that Exhibit 7 is a full, unredacted confidential license agreement between Juniper and a third party, which is information that falls within the definition of a "trade secret." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008). |

*Finjan v. Juniper*, No. 3:17-cv-05659-WHA, Dkt. No. 418 (N.D. Cal. Apr. 5, 2019) (attached

hereto as Ex. 39) (highlighting added).

20       On May 22, 2019, this Court considered five of the parties' motions to seal.  *Finjan v.*

21  *Juniper*, No. 3:17-cv-05659-WHA, Dkt. No. 485 (N.D. Cal. May 22, 2019) (attached hereto as Ex.

22  40).  The Court reviewed the record to determine what could be sealed and what could not, and in

23  so doing the Court rejected every single request, save for two documents, including Exhibit 7:

> Juniper declares that Exhibit 7, which consists of a confidential license agreement,
> constitutes a trade secret (*id.* ¶ 10).  *See In re Elec. Arts, Inc.*, 298 F. App'x 568, 569
> (9th Cir. 2008). . . . Compelling reasons having been shown, Finjan's motion to seal
> Exhibit 7 in its entirety . . . is GRANTED.

*Id.* at 2.  There are four things of note from this Order:  *First*, despite there being no third-party

intervenor to assist the Court, the Court scoured the record and rejected the most of the parties'

1  requests.  *Second*, though, this Court sealed the license agreement.  *Third*, in sealing that license,

2  the Court cited *In re Electronic Arts*.  And, *fourth*, the Court issued this Order *two weeks after* the

3  Court denied Uniloc's motion for reconsideration in the -360 *et seq.* cases, with EFF attempting to

4  intervene in those cases, and thus presumably still fresh in the Court's mind.

5  **IV.   DISCUSSION**

6      Before turning to the individual documents, there are three points to make.

7      *First*, the information in question is not needed to understand the Court's orders, and so the

8  public's interest in it is *de minimis*.  In its May 9, 2019, Order denying Uniloc's motion for

9  reconsideration, the Court acknowledged that "Apple's motion to dismiss for lack of standing did

10  not directly depend upon information regarding the specific dollar amounts, financial terms, and

11  names of the licensees in the various agreements (with Fortress or third-party licensees)."  Ex. 18 at

12  3 (-360 Case, Dkt. No. 187 (Order)).  This was certainly correct; the individual names and dollar

13  amounts are irrelevant.  Instead, it is the aggregate licensing amount that matters.  So too, in its

14  December 4, 2020, Order dismissing the -358 Case, the Court stated:  "Our facts are uncontested."

15  Ex. 21 at 7 (-358 Case, Dkt. No. 186 (Order)).  The Court, Uniloc and Apple all agree that the total

16  amount of income during the time in question was about $14 million.  And the Court, Uniloc and

17  Apple all agree that $14 million is less than $20 million.  The only question that remained was

18  whether this undisputed math somehow divested Uniloc of standing, based a disputed interpretation

19  of Uniloc-Fortress agreements.  *Id.*

20      Further still, the Federal Circuit affirmatively explained that the individual licensing details

21  were not relevant:  "[T]his is not an antitrust case or an FTC investigation involving unlawful

22  restraint of trade or monopolization.  It is a suit for patent infringement."  *Uniloc II*, 25 F.4th at

23  1024.  And, even if some public evidence is needed for the $14, million figure, "that fact can be

24  proved without opening up all the licenses that the court granted access to."  *Id.*

25      *Second*, even if all of this were not true—even if the individual licensing terms were

26  relevant—the public's interest in the documents is only half of the equation.  For, as the courts of

27  this District, the Ninth Circuit and the Supreme Court have repeatedly made clear, "the right to

28  inspect and copy judicial records is not absolute."  *Nixon*, 435 U.S. at 598.  Rather, "the common-

law right of inspection has bowed before the power of a court to insure that its records are not . . . sources of business information that might harm a litigant's competitive standing." *Id.* (quotation marks omitted). So, even if the to-be-sealed information central to the court's reasoning—even if it is *the only* evidence in support of the Court's decision—it may be sealed. *Id.* And, the harm to the third party's competitive standing is established here by the information asymmetry they would face if their confidential licensing terms were made public.

*Third*, as the cases discussed above make clear, this exact sort of information has been consistently and uniformly sealed, even where an intervenor sought to defend the public's right of access.

**A.    There are compelling reasons to redact the references to third-party licensees and their licensing information.**

**1.    The excerpts of the Settlement and License Agreement between Microsoft and Uniloc should be redacted, as should the references to it in Apple's Reply.**

Apple filed a two-page excerpt from the confidential settlement and license agreement between third-party Microsoft and Uniloc. Ex. 4 (-360 Case, Dkt. No. 147-4 (Settlement and License Agreement Between Microsoft and Uniloc)) ("Microsoft Agreement"). It is redacted to cover only the license payments. So too, Apple's Reply in the -360 Case was redacted to address the Microsoft Agreement. Ex. 3 (-360 Case, Dkt. No. 147 (Apple's Reply)). Even EFF did not ask that these redactions be lifted. And for good reason: The public's interest in the Microsoft Agreement is essentially nil, while the potential harm to Microsoft's competitive standing is established by, *inter alia*, the declaration of its Assistant General Counsel.

The public's right of access is minimal because it has no need to see the payment terms of the Microsoft Agreement in order to understand this Court's rulings on Apple's motions. As the unsealed portion of the Microsoft Agreement makes clear, the agreement was signed in 2012 and the payments were made well before the critical period of April 2016 to March 2017. Ex. 4 at Uniloc_2017_APPLE-ET_003415. Thus, the payments played no role in the calculation of Uniloc's revenue during the critical period or this Court's determination of a default. The public has no interest in this sensitive payment information years before the relevant period.

1    By contrast, Microsoft faces substantial harm from the disclosure of its licensing

2  information.  As detailed in a declaration by Microsoft's Assistant General Counsel, the payment

3  terms constitute valuable information that Microsoft does not disclose.  Disclosure would cause

4  competitive harm to Microsoft in the form of information asymmetry between third-party Microsoft

5  and potential licensing partners.  *See* Ex. 45 (-360 Case, Dkt. No. 168-26 (Microsoft Decl.)).  Such

6  asymmetric disclosure of licensing terms is incredibly and indelibly harmful to the disclosing party.

7  As this Court stated in *Oracle*:  "Public disclosure of this confidential information would cause

8  great and undue harm to [Microsoft], and place it at a competitive disadvantage."  Ex. 36 at 2 (No.

9  3:10-cv-03561-WHA, Dkt. No. 687).

10    In the same vein, page 10 of Apple's Reply in support of its motion to dismiss the -360 Case

11  referred obliquely to the Microsoft Agreement.  Ex. 3.  The to-be-redacted figures on this page—

12  just five boxes, each covering a dollar number and/or percentage—do not directly disclose the

13  terms of the Microsoft Agreement.  But, in conjunction with other information that has been made

14  public, it would effectively disclose the exact dollar figures of those licenses.

15    So, the to-be-redacted terms in the Microsoft Agreement and in Apple's Reply represent

16  valuable, confidential information of third-party Microsoft.  This information constitutes

17  Microsoft's trade secrets, and the public has no need to see those trade secrets to understand the

18  judicial process.  Thus, there exist compelling reasons to redact the identified terms as proposed in

19  the accompanying Administrative Motion to Seal.

20    **2.    The Conformed Revenue Agreement should be redacted.**

21    The Conformed Revenue Sharing and Note and Warrant Purchase Agreement—submitted

22  as the first exhibit to Apple's motion to dismiss in the -360 Case—relates to the financial

23  relationship between third-party Fortress and Uniloc.  Ex. 2 (-360 Case, Dkt. No. 135-2

24  (Conformed Revenue Sharing and Note and Warrant Purchase Agreement)) ("Conformed Revenue

25  Agreement")).  The first twenty-two pages have been made public, so the only remaining issue

26  relates to the last three pages.  *Id.* at UNILOC_APPLE_2017_18337-339.  Those pages include a

27  table listing 109 licenses.  Each row discloses a third-party licensee's name, the date of the license

28  and the amount paid for the license:

SUMMARY OF UNILOC LICENSE AGREEMENTS
Updated May 10, 2017

| Licensee | Date | Lump Sum | Document Type |
|---|---|---|---|

Each such set of information is covered by a separate agreement. Most of these agreements include express confidentiality provisions that were requested by the licensees and in almost every instance founded upon court-issued protective orders. Disclosure of these three pages would make public the confidential financial and business information of more than 100 third-parties. To put it another way: Disclosure of the last three pages of the Conformed Revenue Agreement would be like 100+ instances of the harm described in the Microsoft Declaration. And, as with the Microsoft Agreement, the public's interest in seeing the specific details of each license is outweighed by the competitive harm these third parties would suffer if those details were unsealed.

*First*, the public already has the information it needs to understand the issues presented by Apple's motion and the Court's rulings. The parties and the Court agree—and the public is aware—that Uniloc generated approximately $14 million during the relevant timeframe, less than the $20 million stated in the agreement with Fortress. The public does not need to know *which* individual licensee paid *which* specific amount; indeed, this Court previously acknowledge that that information is irrelevant. Ex. 18 at 3 ("Apple's motion to dismiss for lack of standing did not directly depend upon information regarding the specific dollar amounts, financial terms, and names of the licensees in the various agreements (with Fortress or third-party licensees)."). The Federal Circuit also recognized and validated this exact point:

> The district court did note that a key issue in this case was whether Uniloc had received at least $20 million in royalties needed under licensing agreements to provide it with standing to sue. But that fact can be proved without opening up all the licenses that the court granted access to.

*Uniloc II*, 25 F.4th at 1024. For example, the public already has sworn testimony that confirms the calculation of the licensing revenue at issue. James Palmer, a Fortress director involved with the Uniloc investment, confirmed in an unsealed portion of his deposition that "the total for that time frame of Uniloc's monetization revenue was a little over $14 million . . . ." Ex. 14 at 118:21-24 (-358 Case, Dkt. No. 165-2 (Palmer Deposition)). So, even if the public cannot rely upon

1   undisputed the math of Apple, Uniloc, and the Court, the public has access to sworn testimony that

2   provides the calculation needed to understand Apple's motions and this Court's rulings on them.

3       *Second*, only about one-third of the listed licenses even fall within the relevant date range;

4   the other two-thirds are irrelevant to Apple's motion and its deposition. Releasing the sensitive

5   licensing information of two-thirds of the 100+ licensees serves no public interest other than "mere

6   curiosity," which is not a basis to unseal licensing information. *Apple v. Samsung*, 727 F.3d at 1228

7   ("[T]he public's interest in judicial proceedings . . . does not extend to mere curiosity about the

8   parties' confidential information where that information is not central to a decision on the merits.").

9       *Third*, even for the one-third of licenses that do fall within the date range, the identities of

10  those licensees are irrelevant. *See Foltz*, 331 F.3d at 1135. Whether the proverbial Blackacre

11  Corporation paid Uniloc a peppercorn or $10,000,000 was irrelevant to Apple's motion. The issue

12  behind Apple's motion was whether, *in the aggregate*, Uniloc's licenses hit a certain threshold. Ex.

13  18 at 3 (-360 Case, Dkt. No. 187 (Order)) ("Apple's motion to dismiss for lack of standing did not

14  directly depend upon information regarding the specific dollar amounts, financial terms, and names

15  of the licensees in the various agreements (with Fortress or third-party licensees) . . . ."). The

16  identities of the third parties who made licensing payments to Uniloc are irrelevant to the aggregate

17  sum. The public interest in the judicial process is not furthered by releasing those identities, but

18  third parties would risk competitive injury if those identities were released.

19      *Fourth*, substantial evidence supports the third parties' risk of competitive harm. Following

20  this Court's original refusal to seal this licensing information, Uniloc's counsel reached out to the

21  licensees to ask for their positions as to publication of this information. Ex. 1 ¶ 5 (-360 Case, Dkt.

22  No. 168-2 (Jacobs Revised Redactions Decl.)). Just two of the more than 100 agreed to the

23  disclosure of their information. *Id.* ¶¶ 7-7.b. Eight others agreed to disclose their identities, but

24  asked to maintain the confidentiality of their license payments. Ex. 41 - Ex. 45 (Dkt. Nos. 168-5 -

25  168-8 & 168-26 (third-party declarations)); Ex. 1 ¶¶ 8-8.h.

26      Twenty-three licensees asked that *all* information about them remain confidential; they

27  described their reasons in the accompanying declarations submitted by them or by Uniloc with their

28  explicit requests. Ex. 5 - Ex. 12 (Dkt. Nos. 168-9 - 168-16 (sealed third-party declarations)); Ex. 1

¶¶ 9-9.w.i.  These entities explained that confidentiality, including of their identities, was important to the licensing negotiations.  *See Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 1004 (N.D. Cal. 2018) ("Percentages of royalties sought or secured in negotiations or resulting licensing agreements may remain under seal at this juncture, if those terms are not otherwise publicly known.  *This includes references to the identities of third-parties to those agreements, assuming the existence of the agreement itself is not otherwise publicly known*.") (emphasis added).  They further asserted that the disclosure of their identities and the terms of their licenses would cause them competitive harm.

As the third-party licensees explained, they go to great lengths to maintain the confidentiality of their licensing information.  For, among other reasons, disclosure of their licensing information would be used by other patentees in license negotiations with those third-parties.  This information asymmetry would put these third-parties at a permanent disadvantage. Ex. 41 - Ex. 45; Ex. 5 - Ex. 12; Ex. 1 ¶¶ 8-9.w.i; *see, e.g.*, *Finjan, Inc. v. Sophos, Inc.*, No. 14-cv-01197-WHO, 2016 WL 7911365, at *1 (N.D. Cal. Aug. 30, 2016) (granting patentee's request to protect the identity of its licensees during trial by using codenames when referring to the licensee and redacting the licensee's name from the license agreements submitted as evidence in the trial).

Uniloc is obliged to similarly argue on behalf of any entity that did not respond, or whose response was not sufficiently definite. Ex. 1 ¶ 6.  Their silence does not mean they do not care. Rather, these third parties expressed the desire to protect their commercial interests and avoid future information asymmetry when they negotiated for confidentiality of their licensing terms.  Their silence cannot be taken as a waiver of the protections they previously bargained for and relied upon.

For these reasons, the public already has the aggregate licensing calculation it needs to understand Apple's motion and the Court's rulings.  Revealing the identities and payment information listed in the table on the last three pages of the Conformed Revenue Agreement would harm the competitive standing of the third parties, but would not further the public's understanding of the judicial process.  To the extent any of it is relevant, it represents the valuable, confidential information of those 100+ third parties and compelling reasons support sealing their information, given the amount of information already made public.

### 3. The Jacobs Revised Redactions Declaration should be redacted.

The Jacobs Revised Redactions Declaration was submitted with Uniloc's motion for reconsideration. Ex. 1 (-360 Case, Dkt. No. 168-2 (Jacobs Revised Redactions Decl.)). The to-be redacted portions are those that relate solely to information from third-parties who expressly asked that their information and requests remain confidential. In short, they are the pleas and explanations from twenty-three third-party licensees, asking the Court to seal their licensing information. They have nothing substantive to do with Apple's motions to dismiss. Even EFF did not seek the disclosure of the redacted information.

As detailed in the declarations, this information constitutes trade secrets of those third-party licensees, the disclosure of which would cause competitive harm to them. Ex. 1 ¶¶ 4, 8-11 (Jacobs Revised Redactions Decl.); Ex. 41 - Ex. 45 (five publicly filed third-party declarations); Ex. 5 - Ex. 12 (eight sealed third-party declarations). Disclosure of this information would lead to information asymmetry between those third-parties and potential licensors. *See, e.g.*, *Oracle*, Ex. 36 at 2 (No. 3:10-cv-03561-WHA, Dkt. No. 687) ("Public disclosure of this confidential information would cause great and undue harm to [them], and place [them] at a competitive disadvantage."). Further, refusing to seal this information would likely result in a chilling effect on future third-parties coming forward to advocate for their interests. So, unsealing this information will not inform the public about anything of substance related to this Court's orders on Apple's motions to dismiss; and will, conversely, harm those third-parties that petitioned the district court for its assistance. These constitute compelling reasons shown to redact the confidential, trade-secret information, and so the document should be redacted as proposed in the accompanying Administrative Motion to Seal.

### 4. The sealed declarations should be under seal.

Exhibits G through N of Uniloc's motion for reconsideration were sealed and redacted declarations from third-party licensees. Ex. 5 - Ex. 12 (-360 Case, Dkt. Nos. 168-9 - 168:16 (sealed third-party declarations)). Even EFF did not seek the disclosure of these declarations.

In each declaration, an executive from the given licensee explained in detail the damage that would be caused by publication of the information that relates to it. This information constitutes trade secrets of those third-parties, the disclosure of which would cause competitive harm to those

1  third-parties.  Disclosure of this information would lead to information asymmetry between the

2  third-parties and potential licensors.  And, refusing to seal these declarations would likely result in a

3  chilling effect on future third-parties coming forward to protect their interests.  So, unsealing these

4  declarations will not inform the public about anything of substance related to this Court's orders on

5  Apple's motions to dismiss; and will harm those third-parties that petitioned the district court for its

6  assistance.  These constitute compelling reasons shown to seal the identified information.

7              **5.      The Palmer deposition excerpts should be redacted.**

8          Apple's motion to dismiss in the -358 Case was accompanied by sixty-three pages of

9  excerpts from the deposition of James Palmer, a Managing Director at Fortress Investment Group.[6]

10  Ex. 14 (-358 Case, Dkt. No. 165-2 (Palmer Deposition)).  Uniloc and Fortress sought to seal just a

11  few words across two lines, which disclose the identities of several third-party licensees.  *Id.* at 119.

12  The names of these licensees are irrelevant to the substance of these cases.  *Apple v. Samsung*, 727

13  F.3d at 1228 ("[T]he public's interest in judicial proceedings . . . does not extend to mere curiosity

14  about the parties' confidential information where that information is not central to a decision on the

15  merits.").  And, as other judges of this District have found, licensees' names may be redacted to

16  protect their identities.  *See Huawei Techs.*, 340 F. Supp. 3d at 1004 ("Percentages of royalties

17  sought or secured in negotiations or resulting licensing agreements may remain under seal at this

18  juncture, if those terms are not otherwise publicly known.  *This includes references to the identities*

19  *of third-parties to those agreements, assuming the existence of the agreement itself is not otherwise*

20  *publicly known.*") (emphasis added).  These constitute compelling reasons shown to redact the

21  identified information, and so the document should be redacted as proposed in the accompanying

22  Administrative Motion to Seal.

23      **B.      There are compelling reasons to seal the Fortress Memorandum and redact
              Apple's Motion to Dismiss in the -358 Case.**
24
25      The Fortress Memorandum is a detailed analysis of Uniloc created by third-party Fortress,

26  along with a table listing the same details for fifty-five of the 109 licenses seen in the Conformed

27  Revenue Agreement.  Ex. 15 (-358 Case, Dkt. No. 165-10 (Fortress Memorandum)).  Apple

28  ────────────────────
    [6]      Fortress Investment Group is an affiliate of Fortress Credit Co. LLC, *i.e.*, "Fortress."

1   submitted the Fortress Memorandum as an exhibit to its motion to dismiss the -358 Case, and

2   discussed it at page 15, from lines 13 to 17, of its opening brief.  Ex. 13 at 15 (-358 Case, Dkt. No.

3   165 (Mot. to Dismiss)).  Fortress and Uniloc sought to seal the Memorandum and the four lines in

4   Apple's brief.  Ex. 46 ¶¶ 2-3, 19-23 (-358 Case, Dkt No. 173 (Jacobs Decl.)).

5        Starting with the first two pages of the Fortress Memorandum,[7] the document summarizes

6   Fortress's prior interactions and business dealings with Uniloc; analyzes Uniloc in depth; and

7   proposes additional investments in Uniloc, based upon Fortress's internal, proprietary analyses of

8   Uniloc. Ex. 15.  This information has not been shared outside of Fortress; Uniloc has never seen it.

9   Fortress's proposal includes terms which are not publicly available and which are considered

10  proprietary to Fortress.  Disclosure of the information contained in the Fortress Memorandum

11  would harm Fortress's ability to negotiate and further deal with Uniloc—which has not seen the

12  information—as well as other third-parties with whom Fortress might seek to deal.  Fortress

13  considers its investment criteria among the most valuable—and thus confidential—information

14  available to it.  Indeed, it is easy to imagine the leg-up a third-party borrower would have in future

15  negotiations with Fortress, if this information were to be made public.  Ex. 46 ¶¶ 19-23; *see, e.g.*, *In*

16  *re Koninklijke Philips Patent Litig.*, No. 4:18-cv-01885-HSG, 2020 WL 1865294, at *2 (N.D. Cal.

17  Apr. 13, 2020) (sealing "information related to business operations"); *Arista Networks*, 2018 WL

18  2010622, at *2-3 (sealing "highly confidential and sensitive information relating to Cisco's

19  financial information and internal development strategies," "highly confidential and sensitive

20  information relating to Arista's financial and customer information," and "confidential settlement

21  terms between Cisco and third-party, Huawei Technologies"); *Juicero*, 2017 WL 8294276, at *2

22  (sealing "confidential financial and business information"); *Transperfect Global*, 2014 WL

23  4950082, at *1 (sealing "confidential financial and marketing information").

24       Moreover, disclosure of this information would not aid the public.  Whatever personal

25  interest one might have in reading non-party Fortress's analyses of its existing and potential

26  investments, these particulars will play no part in verifying the propriety of the district court's

27  order. *Center for Auto Safety*, 809 F.3d at 1096 ("The presumption of access is 'based on the need

28

---

[7] Apple takes no position on the first two pages of the Fortress Memorandum.

1   for federal courts, although independent—indeed, particularly because they are independent—to

2   have a measure of accountability and for the public to have confidence in the administration of

3   justice.'"); *Apple v. Samsung*, 727 F.3d at 1228 ("[T]he public's interest in judicial proceedings . . .

4   does not extend to mere curiosity about the parties' confidential information where that information

5   is not central to a decision on the merits."). As such, the public's interest in it is *de minimis, cf.*

6   *Kamakana*, 447 F.3d at 1179, and Fortress has shown compelling reasons to seal these trade secrets.

7        The third page of the Fortress Memorandum includes a list of fifty-five third-party licenses

8   taken from the larger list of 109 licenses in the Conformed Revenue Sharing and Note and Warrant

9   Purchase Agreement. For the reasons discussed above with respect to the larger list, there are

10   compelling reasons to seal this licensing information. *See supra* Argument § IV.A.2.

11        Finally, there are compelling reasons to seal the few marked lines from Apple's brief. Out

12   of Apple's twenty-page brief in support of its motion to dismiss the -358 Case, Apple originally

13   proposed to seal approximately four pages. Fortress and Uniloc waived confidentiality as to all but

14   four lines. Ex. 13 at 15. Those four lines relate to Fortress's investment analyses, information

15   which Fortress has maintained as confidential, and which has not been made public or even shared

16   with Uniloc. This information derives value from its confidentiality, and so meets the definition of

17   a trade secret. Fortress has thus shown compelling reasons to seal this information.

18   **V.   CONCLUSION**

19        For the foregoing reasons, the parties respectfully request that the Court seal the documents

20   as proposed in the accompanying Administrative Motion to Seal.

21   Date: May 26, 2022                         Respectfully submitted,

22
                                               */s/ Aaron S. Jacobs*
23                                             James J. Foster
                                               jfoster@princelobel.com
24                                             Aaron S. Jacobs (CA No. 214953)
                                               ajacobs@princelobel.com
25                                             PRINCE LOBEL TYE LLP
                                               One International Place, Suite 3700
26                                             Boston, MA 02110
                                               617-456-8000
27

28

1                          Matthew D. Vella (CA No. 314548)
mvella@princelobel.com

2                          PRINCE LOBEL TYE LLP
410 Broadway Avenue, Suite 180

3                          Laguna Beach, CA 92651

4                          ATTORNEYS FOR THE PLAINTIFFS

5

6

7                          */s/ Doug Winnard*

8                          Michael T. Pieja (CA Bar No. 250351)
Alan E. Littmann (pro hac vice)

9                          Jennifer Greenblatt (pro hac vice)
Doug Winnard (CA Bar No. 275420)

10                       Andrew J. Rima (pro hac vice)
Emma C. Ross (pro hac vice)

11                       Lauren Abendshien (pro hac vice)

12                       GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP

13                       200 South Wacker Dr., 22nd Floor
Chicago, IL 60606

14                       Tel: (312) 681-6000

15                       Fax: (312) 881-5191
mpieja@goldmanismail.com

16                       alittmann@goldmanismail.com
jgreenblatt@goldmanismail.com

17                       dwinnard@goldmanismail.com

18                       arima@goldmanismail.com
eross@goldmanismail.com

19                       labendshien@goldmanismail.com

20                       Kenneth Baum (CA Bar No. 250719)

21                       GOLDMAN ISMAIL TOMASELLI
BRENNAN & BAUM LLP

22                       100 Wilshire Blvd., Suite 1760
Santa Monica, CA 90401

23                       Tel: (310) 576-6900
Fax: (310) 382-9974

24                       kbaum@goldmanismail.com

25                       Attorneys for Defendant APPLE INC.

26

27

28